1  PAUL HASTINGS LLP
   RAYMOND W. BERTRAND  (SB# 220771)
2  raymondbertrand@paulhastings.com
   JAMES P. DE HAAN  (SB# 322912)
3  jamesdehaan@paulhastings.com
   4747 Executive Drive
4  12th Floor
   San Diego, California  92121
5  Telephone:  1(858) 458-3000
   Facsimile:  1(858) 458-3005
6
   Attorneys for Defendant
7  AT&T MOBILITY SERVICES, LLC

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11 | LUIS M. SALAS RAZO, on his own behalf | **CASE NO.**
   | and on behalf of all others similarly situated, |
12 | | **NOTICE OF REMOVAL OF CIVIL**
   |           Plaintiff, | **ACTION**
13 | |
   | | **JURY TRIAL DEMANDED**
14 |        vs. |
   | | Madera County Superior Court No.
15 | AT&T MOBILITY SERVICES, LLC, a | MCV081925
   | Delaware Corporation; and Does 1 through |
16 | 100, inclusive, |
   | |
17 |           Defendants. |

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION

1   TO THE CLERK OF THE COURT, PLAINTIFF LUIS M. SALAS RAZO, AND PLAINTIFF'S

2   ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that Defendant AT&T MOBILITY SERVICES LLC ("AT&T"

4   or "Defendant"), contemporaneously with the filing of this Notice, hereby effects removal of the

5   below referenced action from the Superior Court of California in and for the County of Madera

6   (the "Superior Court") to the United States District Court for the Eastern District of California

7   pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act), 1446, and 1453.  In support of

8   this Notice, Defendant states as follows:

9   **I.**      **COMPLAINT**

10         On August 27, 2019, Plaintiff Luis M. Salas Razo ("Razo" or "Plaintiff") commenced a

11  civil action in the Superior Court entitled "*LUIS M. SALAS RAZO, on his own behalf and on*

12  *behalf of all others similarly situated, Plaintiffs, v. AT&T MOBILITY SERVICES, LLC, a*

13  *Delaware Corporation; and Does 1 through 100, inclusive, Defendants,*" No. MCV081925 (the

14  "Action").  A true copy of the August 27, 2019 complaint Plaintiff filed in the Action (the

15  "Original Complaint" or "Orig. Compl.") is attached as Exhibit A to the declaration of Raymond

16  Bertrand, submitted in support of this notice.  Plaintiff's Original Complaint only sought penalties

17  available under the Private Attorneys General Act; and thus there was no basis for removal

18  apparent on its face.  *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1124 (9th Cir. 2014)

19  ("PAGA is not sufficiently similar to Rule 23 to establish the original jurisdiction of a federal

20  court under CAFA.").

21         On or about January 8, 2020, Razo filed an amended complaint in the Action (the

22  "Amended Complaint" or "Am. Compl.").  A true copy is attached as Exhibit F to the declaration

23  of Raymond Bertrand, submitted in support of this notice.  The allegations of the Amended

24  Complaint are incorporated into this notice by reference without necessarily admitting the truth of

25  any of them.  Razo's Amended Complaint now seeks remedies both under the Private Attorneys

26  General Act *and* on behalf of a putative class of employees.  In his Amended Complaint, Razo

27  alleges claims for (1) Failure to Pay For All Hours Worked (Labor Code §§ 1197, 1198); (2)

28  Failure to Pay Overtime Wages (Labor Code §§ 510, 1194); (3) Failure to Pay All Wages Due at

1  Separation (Labor Code §§ 201-203); (4) Failure to Provide Accurate Wage Statements (Labor

2  Code § 226); and (5) Unfair Competition (Business & Professions Code §§ 17200 *et seq.*).

3  In addition to bringing this action on his own behalf, as well as on behalf of the Labor and

4  Workforce Development Agency, Razo purports to represent the following proposed class and

5  subclasses of persons (the "Classes"):

6  
7  Plaintiff Class: All persons who have been, or currently are, employed by Defendant and who held, or hold, job positions which Defendant have [sic] classified as "non-exempt" personnel in the State of California.  (The Class Period is the period from August 27,
8  2015, through and including the date judgment is rendered in this matter).

9  Terminated Sub Class: All members of the Plaintiff Class whose employment ended during the Class Period (The Class Period is the period from August 27, 2015, through
10  and including the date judgment is rendered in this matter).

11  Bertrand Decl., Ex. F (hereinafter "Am. Compl."), ¶ 27.

12  Razo claims AT&T has failed to (1) compensate all hours worked (*id.*, ¶¶ 49–56), (2) pay

13  overtime (*id.*, ¶¶ 57–62), (3) pay all earned wages at the time of termination (*id.*, ¶¶ 63–67), (4)

14  issue correct wage statements (*id.*, ¶¶ 68–74); and (5) commit unfair business practices (*id.*, ¶¶

15  75–87).

16  **II.    PAPERS SERVED TO DATE**

17  1.    On September 10, 2019, Plaintiff effected service of process of the summons and

18  the Original Complaint on AT&T.   True copies of the Original Complaint, summons, and all

19  other papers that accompanied the summons and Complaint are attached as Exhibit A to the

20  declaration of Raymond Bertrand, submitted in support of this notice.

21  2.    On October 25, 2019, AT&T demurred to the Original Complaint in the Superior

22  Court.  A true copy is attached as Exhibit B to the declaration of Raymond Bertrand, submitted in

23  support of this notice.

24  3.    On October 25, 2019, AT&T filed a Notice of Related Case.   A true copy is

25  attached as Exhibit C to the declaration of Raymond Bertrand, submitted in support of this notice.

26  4.    On December 4, 2019, the parties filed a Joint Stipulation to Extend Time for

27  Plaintiff to File an Amended Complaint or, Alternatively, Oppose Defendant's Demurrer.   A true

28  copy is attached as Exhibit D to the declaration of Raymond Bertrand, submitted in support of

- 3 -

1     this notice.

2          5.    On December 5, 2019, the Court granted the Joint Stipulation to Extend Time for

3     Plaintiff to File an Amended Complaint or, Alternatively, Oppose Defendant's Demurrer.  A true

4     copy is attached as Exhibit E to the declaration of Raymond Bertrand, submitted in support of this

5     notice.

6          6.    On or about January 8, 2020, Plaintiff filed an amended complaint in the Action

7     (the "Amended Complaint" or "Am. Compl.").   A true copy is attached as Exhibit F to the

8     declaration of Raymond Bertrand, submitted in support of this notice.  The allegations of the

9     Amended Complaint are incorporated into this notice by reference without necessarily admitting

10    the truth of any of them.

11         7.    On or about January 8, 2020, Plaintiff filed his Case Management Statement.  A

12    true copy is attached as Exhibit G to the declaration of Raymond Bertrand, submitted in support

13    of this notice.

14         8.    On or about January 8, 2020, Plaintiff's counsel filed a Notice of Change of

15    Address.  A true copy is attached as Exhibit H to the declaration of Raymond Bertrand, submitted

16    in support of this notice.

17         9.    On January 10, 2020, Defendant filed its Case Management Statement.  A true

18    copy is attached as Exhibit I to the declaration of Raymond Bertrand, submitted in support of this

19    notice.

20         10.   On January 13, 2020, Defendant filed a Notice of Withdrawal of Hearing on

21    Demurrer, vacating the hearing it pre-emptively scheduled for its demurrer.  A true copy is

22    attached as Exhibit J to the declaration of Raymond Bertrand, submitted in support of this notice.

23         11.   On January 23, 2020, the parties filed a Joint Stipulation to Extend Time for

24    Defendant to Respond to Amended Complaint.  A true copy is attached as Exhibit K to the

25    declaration of Raymond Bertrand, submitted in support of this notice.

26         12.   Pursuant to 28 U.S.C. § 1446(a), attached to the Bertrand Declaration as Exhibits

27    A through K are copies of "all process, pleadings, and orders served upon" and by AT&T.

28

NOTICE OF REMOVAL OF CIVIL ACTION

## III.   BASIS FOR REMOVAL

A defendant filing a notice of removal need only plead a short and plain statement of its grounds for removal. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) ("A statement 'short and plain' need not contain evidentiary submissions."). Here, the Court has original jurisdiction over this case pursuant to the Class Action Fairness Act of 2005 ("CAFA").

### A.   CAFA Jurisdiction

CAFA creates federal jurisdiction over (1) class actions; (2) with over 100 putative class members; (3) "in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant;" (4) where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2)(A), (d)(5). This Action satisfies all four prongs.

#### 1.   Razo Has Brought A Class Action

Under CAFA, a class action includes "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Razo has brought "this action on behalf of himself and all others similarly situated as a class action, pursuant to California Code of Civil Procedure § 382;" it thus satisfies the "class action" requirement of CAFA. Am. Compl., ¶ 27.

#### 2.   There Are Well Over 100 Putative Class Members

Razo worked for AT&T as a non-exempt hourly employee in California. Am. Compl., ¶¶ 9–10, 17. And he seeks to represent Class Members who are current and former non-exempt, hourly employees that have worked at Defendant's California locations since August 27, 2015. *Id.*, ¶ 27. Based on employee personnel and payroll records maintained by AT&T during the normal and ordinary course of business, AT&T employed 9,489 non-exempt employees in California between August 31, 2015 and December 31, 2019—well over CAFA's 100 putative class member-threshold. Declaration of Lorena Garcia ("Garcia Decl.") ¶ 3.

NOTICE OF REMOVAL OF CIVIL ACTION

### 3.   **Razo And AT&T Are Residents Of Different States.**

Razo pleads he "is a resident of Madera County, California."[1]  Am. Compl., ¶ 9.  He began working for AT&T while he lived in Salinas, California; and one of the last wage statements AT&T issued to him included a California-based address.  Garcia Decl. ¶ 7, Exs. A–B.  He owns real property in California.  Bertrand Decl. ¶ 16, Ex. L.  Thus, Razo is a California citizen.  *See Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013) ("[A] party with the burden of proving citizenship may rely on the presumption . . . that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change.").

AT&T Mobility is organized under the laws of Delaware with its principal place of business, headquarters, and center of direction, control, and coordination in Atlanta, Georgia.[2]  Declaration of Thomas M. Koch ("Koch Decl.") ¶ 3.  The majority of AT&T Mobility's business decisions are made in Atlanta, Georgia or in Dallas, Texas, including its operational, executive, administrative, and policymaking decisions.  *Id.*  The majority of Defendant's executive officers principally conduct their business from Atlanta or Dallas; and the plurality of AT&T Mobility's officers are in Dallas.  *Id.* ¶ 4.  The majority of administrative functions crucial to Defendant's day-to-day operations are conducted in Atlanta or Dallas, with some additional functions conducted in states outside of California.  *Id.*  None of AT&T Mobility's primary administrative

---

[1] Though the Ninth Circuit has declined to adopt the presumption that "residence [is] prima facie evidence of the person's domicile . . . jurisdictional allegations in the complaint can be taken as a sufficient basis, on their own, to resolve questions of jurisdiction where no party challenges the allegations." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013). Additionally, when "evaluating whether simple diversity has been established by a preponderance of the evidence, the court may consider not only the complaint and the Notice of Removal, but also other evidence in the record;" including evidence that Razo "owns real property" and "has worked . . . consistently" in California. *Harper v. Charter Commc'ns, Inc.*, No. 2:19-cv-00902 WBS DMC, 2019 U.S. Dist. LEXIS 130109, at *6-7 (E.D. Cal. July 31, 2019).

[2] 28 U.S.C. § 1332 (d)(10) (under the CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."); *see also Ferrell v. Express Check Advance of S.C. LLC*, 591 F.3d 698, 700 (4th Cir. 2010) ("[A] limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10) and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business."); *Ramirez v. Carefusion Res., LLC*, 2019 U.S. Dist. LEXIS 112995, at *4 (S.D. Cal. July 1, 2019) (concluding that CAFA's section "1332(d)(10) applies to all types of non-corporate business entities," including LLCs).

- 6 -

functions are conducted within California. *Id.* Accordingly, Defendant is a citizen of Delaware and Georgia. It is not a citizen of California.

Thus, Plaintiff and Defendant are citizens of different states.[3] And because at least one member of the putative class is a citizen of a state different from at least one Defendant, the diversity requirement under CAFA is satisfied.

### 4. The Amount In Controversy Exceeds The $5,000,000 Threshold.

Under CAFA, courts aggregate the putative class members to determine whether the amount in controversy exceeds the $5,000,000 threshold. 28 U.S.C. §§ 1332(d)(2), (d)(6). A removing defendant need only establish that the amount in controversy exceeds $5 million by a preponderance of the evidence. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (a "defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum"). And, for the purposes of removal, the amount in controversy is simply "an *estimate* of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (emphasis added).[4] An estimate that

---

[3] Assuming all the other requirements are met, this Court must exercise jurisdiction under CAFA where, as here, any primary defendant "is not a 'citizen[] of the State in which the action was originally filed[.]" 28 U.S.C. § 1332(d)(2)-(4). AT&T Mobility is the primary defendant, and it is an out of state citizen. Additionally, this Action does not (i) concern "a covered security as defined under 16(f)(3) of the Securities Act of 1993 (15 U.S.C. 78p(f)(3)) and section 28 (f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E))," (ii) relate "to the internal affairs or governance of a corporation or other form of business enterprise," or (iii) relate to the "rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security…." 28 U.S.C. § 1332(d)(9)(A)-(C). Accordingly, jurisdiction is mandatory.

[4] The removing defendant's burden "is not 'daunting,'" and "a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (quoting *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007)); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe."). Indeed, as the Supreme Court has explained, "no antiremoval presumption attends cases invoking CAFA[,]" and "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Thus, "[e]vidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

- 7 -

1    "reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn*
2    *by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis in original).

3        While AT&T denies the validity of Razo's claims and requests for relief, the damages
4    sought by the Amended Complaint far-exceed the jurisdictional minimum. *See Tripp v.*
5    *Crossmark, Inc.*, 2013 WL 5496550, at *3 (N.D. Cal. Oct. 3, 2013) (finding defendant had
6    properly removed the action based on damages calculations of one cause of action and a
7    preliminary assessment of the remaining claims).

8        a.      **Razo's Overtime Claim Places An Estimated $18,723,598.42 In**
9                **Controversy.**

10       Razo alleges AT&T adopted a time keeping program "that did not accurately reflect the
11   start and stop time of hourly employees," resulting in unpaid overtime. Am. Compl., ¶¶ 51, 57–
12   62. As AT&T allegedly used this program enterprise-wide, it follows that every shift a putative
13   class member worked omitted some small amount of time pre and post shift.

14       Though Razo seeks to represent *all* non-exempt employees in California, AT&T has
15   limited its amount-in-controversy estimate to just one sub-group of that putative class; full time
16   Retail Sales Consultants.[5] Between August 31, 2016, and December 31, 2019, AT&T employed
17   5,189 full time Retail Sales Consultants. Garcia Decl. ¶ 4. The *minimum* hourly rate paid to
18   Retail Sales Consultants, based on their September 2016 paystubs, was $27.65. *Id.*

19       Every one of those employees, according to Razo, used the same time-keeping program as
20   him. A program that, according to Razo's complaint, would fail to capture time worked by *every*
21   employee during *every* shift. Assuming *just* three minutes of unlogged work pre and post shift
22   means AT&T failed to compensate a half-an-hour of work every week. *Cf. Arias*, 936 F.3d at
23   923 (finding it was reasonable, for the purposes of calculating the amount-in-controversy for
24   CAFA removal, to use "an assumption of 30 minutes per week (6 minutes per day) of unpaid

25
26

27   [5] AT&T Mobility employs workers with over 100 different job titles in California. *See* Garcia
28   Decl. ¶ 3. However, "Retail Sales Consultants" comprise a sizable portion of Razo's putative
     class; thus, AT&T has confined its estimate to just that group.

overtime wages" based on "allegation that [defendant] 'routinely' failed to pay its employees overtime wages"). Thus, the amount-in-controversy for this claim can be estimated as follows:

$27.65 [minimum hourly rate]*1.5 [overtime multiplier]*.5 hour [unpaid time worked]*174 [# of weeks between August 31, 2016, and December 31, 2019][6]*5,189 [# of Retail Sales Consultants] = **$18,723,598.42**

This estimate does not account for any rate of pay above the $27.65 minimum; and, again, only assumes just six minutes of unlogged time per shift for a subset of the putative class Razo plans to represent. Indeed, one does not even need to use that minimum hourly rate. In 2016, California had a $10 an hour minimum wage.[7] Using that, rather than $27.65, *still* results in an estimated **$6,771,645** in damages. Thus, even within the most conservative parameters, Razo's overtime claim alone exceeds CAFA's $5 million threshold.

> b. **Razo's Waiting Time Penalty Claim Places An Estimated $15,952,944 In Controversy.**

As noted, Razo alleges AT&T's time keeping policy and programs did not capture all time worked, resulting in a failure to compensate all hours worked and pay overtime. Am. Compl., ¶¶ 49–56, 57–62. Under California Labor Code § 203, if an employer fails to pay all wages due upon termination in a timely manner, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced" for up to 30 days. Thus, assuming Razo's allegations are true, AT&T owes every former, non-exempt, hourly employee waiting time penalties based on the uncompensated time worked. *Id.*, ¶¶ 63–67. The statute of limitations for a waiting time claim is three years. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

Between August 31, 2016, and January 23, 2020, 2,404 full-time Retail Sales Consultants left AT&T. *See* Garcia Decl. ¶ 5. These individuals generally worked 8 hours a day. *See id.*

---

[6] This assumes all Retail Sales Consultants worked throughout the relevant period. However, again, CAFA estimates "reflect[] the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927 (emphasis in original).

[7] *See* CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, *History of California Minimum Wage*, https://www.dir.ca.gov/iwc/minimumwagehistory.htm (last visited Jan. 30, 2020).

NOTICE OF REMOVAL OF CIVIL ACTION

1  According to their September 2016 paystubs, AT&T paid a *minimum* base hourly rate of $27.65.

2  *See id.* Because more than thirty days have elapsed since all of these individuals' employment

3  with AT&T ended, and Razo alleges that AT&T had a consistent policy of not paying for all time

4  worked, the amount-in-controversy for his Labor Code § 203 claim can be estimated as follows:

5  30 days*8 hours [length of shift]*$27.65 [minimum hourly rate]*2,404 [# of

6  Retail Sales Consultants] = **$15,952,944**

7  And that number does not even account for any rate of pay above $27.65/hour.  As before,

8  one can reach CAFA's threshold using just the $10/hour minimum wage effective in 2016, which

9  results in an estimated **$5,769,600** in waiting time penalties.  Thus, as with Razo's overtime

10  claim, the waiting time penalties alone easily exceed the CAFA's $5 million amount-in-

11  controversy requirement.

12  c.  **Razo's Wage Statement Claims Put An Estimated $14,873,400**

13  **In Controversy.**

14  Finally, Razo claims the uncaptured time meant AT&T also failed "to accurately report

15  the gross wages earned," "the net wages earned," and "accurately represent the total hours

16  worked" on its wage statements.  Am. Compl., ¶¶ 70–71.  Razo's allegations thus dispute every

17  single wage statement AT&T issued its employees from August 27, 2018 to the present as

18  inaccurately reflecting hours worked and wages earned.

19  Under Labor Code section 226(e)(1), each employee to whom AT&T issued a violative

20  paystub is entitled to penalties of $50 for the initial wage statement, and $100 for each subsequent

21  one.  A "wage statement claim [that] seeks to recover penalties . . . is restricted by a one-year

22  limitations period." *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1025 (E.D. Cal.

23  2015).  Between August 31, 2018, and January 24, 2020, AT&T issued 151,420 wage statements

24  to 5,372 putative class members.  Garcia Decl. ¶ 6.  Thus, the penalties are calculable as follows:

25  $50 [penalty]*5,372 [# of employees receiving statements] = $268,600

26  $100 [penalty]*146,048 [# of wage statements issued, excluding the 5,372 initial

27  violations already counted] = $14,604,800

28  $268,600+$14,604,800 = **$14,873,400**

- 10 -

1   However, the maximum available penalty is $4,000 per individual. *See Arias*, 936 F.3d at

2   927 ("[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably

3   recover.") (emphasis in original). And penalties continue accruing throughout the litigation.

4   Thus, the true amount in controversy for Razo's wage statement claims is at least **$21,488,000.**

5           5.     **AT&T Timely Removed This Action.**

6   A notice of removal may be filed within 30 days after the defendant receives the initial

7   pleading, motion, or other paper from which it may be ascertained that the case is removable. 28

8   U.S.C. § 1446(b). The United States Supreme Court has held that the 30-day period prescribed in

9   section 1446(b) runs from the date of formal service of the complaint. *Murphy Bros., Inc. v.*

10   *Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 355-56 (1999).

11   Though Razo served his original complaint on September 10, 2019, it only forwarded

12   claims for penalties under the Private Attorneys General Act ("PAGA"). Ex. A. Defendants

13   cannot remove pure-PAGA actions under CAFA. *See Urbino v. Orkin Servs. of Cal., Inc.*, 726

14   F.3d 1118, 1123 (9th Cir. 2013) ("The state, as the real party in interest" in a PAGA claim "is not

15   a 'citizen' for diversity purposes"); *Baumann*, 747 F.3d at 1124 ("PAGA is not sufficiently

16   similar to Rule 23 to establish the original jurisdiction of a federal court under CAFA.").

17   Thus, AT&T was unable to remove Razo's action until he first asserted class claims,

18   which he did in the amended complaint filed and served on or about January 8, 2020. Ex. F. And

19   where a case "stated by the initial pleading is not removable, a notice of removal may be filed

20   within thirty days after receipt by the defendant . . . of a copy of an amended pleading . . . from

21   which it may first be ascertained that the case is one which is or has become removable." 28

22   U.S.C. § 1446(b)(3). This notice of removal is, therefore, timely, as AT&T's deadline for

23   removal does not expire until February 7, 2020.

24           6.     **AT&T Removed This Action To The Proper Court.**

25   This Court is part of the "district and division embracing the place where" the State Court

26   Action was filed—Madera, California. 28 U.S.C. § 1441(a); *see also* E.D. Cal. R. 120(d) ("All

27   civil and criminal actions and proceedings of every nature and kind cognizable in the United

28   States District Court for the Eastern District of California arising in . . . Madera . . . count[y] shall

be commenced in the United States District Court sitting in Fresno, California, and in Bakersfield, California, Yosemite National Park, or other designated places within those counties as the Court shall designate when appropriate[.]"). Thus, it is the proper court for removal.

## IV.   NOTICE TO PARTIES AND TO THE STATE COURT

Pursuant to 28 U.S.C. section 1446(d), in addition to serving this Notice of Removal on Razo, AT&T is filing in the Superior Court for the County of Madera and serving upon Razo a separate document entitled "Notice of Filing of Notice of Removal to Federal Court."

## V.   CONCLUSION

Razo, a California-citizen, has brought a class action on behalf of 9,489 putative class members against AT&T Mobility Services, a non-resident employer. The estimated damages associated with his claims for unpaid overtime, waiting time penalties, and wage statements penalties add up to over $49 million—well above CAFA's $5 million threshold. Thus, for the foregoing reasons, all requirements under 28 U.S.C. sections 1332(d), 1446, and 1453 are satisfied; and the Action may be removed to this Court under CAFA.

DATED:  January 31, 2020

PAUL HASTINGS LLP
RAYMOND W. BERTRAND
JAMES P. DE HAAN

By: _____
RAYMOND W. BERTRAND

Attorneys for Defendant
AT&T MOBILITY SERVICES, LLC

- 12 -

NOTICE OF REMOVAL OF CIVIL ACTION