1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LUOS M. SALAS RAZO, on his own          No.  1:20-cv-00172-NONE-HBK
     behalf and on behalf of all others similarly
12   situated,

13                    Plaintiff,             ORDER DENYING MOTION TO DISMISS
                                             OR IN THE ALTERNATIVE TO STAY
14        v.
                                             (Doc. No. 10)
15   AT&T MOBILITY SERVICES, LLC,

16                    Defendant.

17

18                                  **INTRODUCTION**

19          This case proceeds on plaintiff Luis Razo's second amended class action complaint

20   ("SAC"),[1] which alleges generally that defendant AT&T Mobility Services, LLC underpaid him,

21   issued him unlawful wage statements, and withheld wages it owed him after his employment

22   ended, all in violation of various provisions of the California Labor Code.  (Doc. No. 9.)  Plaintiff

23   seeks to represent a class and sub-class made up of similarly situated employees of defendant.

24   (*Id.*, ¶¶ 44–48.)  Before the court for decision is defendant's August 13, 2020 motion to dismiss

25   or to stay this action.  (Doc. No. 10.)  Plaintiff filed an opposition to the motion (Doc. No. 11),

26   and defendant replied (Doc. No. 15).  The matter was taken under submission on the papers

27   _____

28   [1]  Plaintiff's initial complaint was removed to this court on January 21, 2020, on the basis of
     jurisdiction under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2).  (Doc. No. 1.)

                                           1

1  pursuant to Local Rule 230(c).  On August 2, 2021, plaintiff filed a notice of supplemental

2  authority informing the court of a relevant California Supreme Court decision.  (Doc. No. 21.)

3  For the reasons set forth below, defendant's motion to dismiss or stay will be DENIED in its

4  entirety.[2]

**DISCUSSION**

5

6  **A.      Motion to Dismiss for Failure to State a Claim**

7          1.      Legal Standard

8          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

9  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

10  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

11  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

12  F.2d 696, 699 (9th Cir. 1990).  A claim for relief must contain "a short and plain statement of the

13  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though Rule 8(a)

14  does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state

15  a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

16  (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  "A claim has facial plausibility when the

17  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

18  defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility

19  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

20  that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 556).

21          In determining whether a complaint states a claim on which relief may be granted, the

22  court accepts as true the allegations in the complaint and construes the allegations in the light

23  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

24  _____

25  [2]  The undersigned apologizes to the parties for the excessive delay in the issuance of this order.
This court's overwhelming caseload has been well publicized and the long-standing lack of

26  judicial resources in this district long-ago reached crisis proportion.  That situation, which has
continued unabated for over twenty months now, has left the undersigned presiding over 1,300

27  civil cases and criminal matters involving 747 defendants at last count.  Unfortunately, that
situation sometimes results in the court not being able to issue orders in submitted civil matters

28  within an acceptable period of time.  This situation is frustrating to the court, which fully realizes
how incredibly frustrating it is to the parties and their counsel.

1  *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, "[b]are assertions . . . amount[ing]

2  to nothing more than a formulaic recitation of the elements . . . are not entitled to be assumed

3  true." *Iqbal*, 556 U.S. at 681.  Likewise, the presumption of truth does not attach to "allegations

4  that contradict matters properly subject to judicial notice" or to material attached to or

5  incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979,

6  988–89 (9th Cir. 2001); *accord Am. Bankers Mgmt. Co., Inc. v. Heryford*, 190 F. Supp. 3d 947,

7  951 (E.D. Cal. 2016), aff'd, 885 F.3d 629 (9th Cir. 2018)

8         In practice, "a complaint . . . must contain either direct or inferential allegations respecting

9  all the material elements necessary to sustain recovery under some viable legal theory."

10  *Twombly*, 550 U.S. at 562.  It is inappropriate to assume that the plaintiff "can prove facts which

11  it has not alleged or that the defendants have violated the . . . laws in ways that have not been

12  alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S.

13  519, 526 (1983).

14       2.    Analysis

15           a.   *Unpaid Wages Claims*

16               i.     Failure to properly calculate overtime rates

17         Plaintiff alleges that defendant routinely failed to properly calculate overtime and double

18  time pay rates because it failed to include his total compensation (including bonuses and

19  commissions) when calculating the regular rate for purposes of determining overtime wages

20  owed.  (SAC, ¶ 25.)  Defendant moves to dismiss this claim, arguing that plaintiff's own wage

21  statements contradict his allegations of wrongdoing.  (Doc. No. 10-1 at 5–9.)  Defendant asserts

22  that the relevant wage statements may be considered in the context of this motion to dismiss

23  because they have been incorporated by reference into the complaint.  (*Id*. at 6 n.3.)

24         It is true that the SAC specifically references and discusses in some detail wage

25  statements issued to plaintiff for June 1 and June 13, 2018.  (SAC, ¶¶ 26, 28.)  Although the

26  documents are not attached to the SAC, the court may nonetheless consider them because they

27  form a central pillar of plaintiff's allegations and their authenticity has not been questioned.

28  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to

a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (indicating that a court can consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading") (internal quotation marks omitted); *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 812 (N.D. Cal. 2015) (considering wage statements attached by plaintiff to original complaint, even though plaintiff did not attach them to amended pleading because the authenticity of those documents was not in question).

Defendant's motion to dismiss however, does not merely rely on the content of the incorporated wage statements. Defendant's briefs are filled with counsel's own factual assertions and interpretations of the wage statements that are unsupported by any evidence, let alone evidence that can be considered by the court at this stage of the case. For example, defendant asserts that plaintiff's June 1, 2018 wage statement reflects that defendant made required adjustments to plaintiff's overtime pay in a line entitled "OT TRUE-UP ADD'L COMP." (Doc. No. 10-1 at 7.) Although defendant's is not an absurd reading of these words, nothing in the document itself makes this clear, and the record contains no competent evidence interpreting the wage statements. Moreover, just like the complaint itself, documents incorporated by reference must be viewed in a light most favorable to plaintiff in the context of a motion to dismiss. Viewed in such a light, the wage statements do not explain how overtime rates are adjusted nor do they demonstrate that those adjustments are being properly calculated. The motion to dismiss this aspect of plaintiff's failure to pay wages claim will therefore be DENIED.

ii.     Failure to list all hours worked

Plaintiff also alleges that the wage statements fail to properly list all hours worked, providing one example of a wage statement that shows line items adding up to 106.08 hours while indicating only 81.98 total hours were worked. (*Id.*, ¶ 27.) Plaintiff asserts that this resulted in a failure to pay wages for all hours worked at appropriate rates. In support of dismissing this claim, defendant cites to the decision in *Hernandez v. BCI Coca-Cola Bottling Co.*, No. CV 11-9484 SVW SSX, 2012 WL 12272348 (C.D. Cal. Apr. 12, 2012), *aff'd*, 554 F. App'x 661, 662 (9th Cir.

4

2014).  There, the district court considered allegedly defective wage statements in the context of a motion for summary judgment.  *Id*.  The wage statements in question in that case contained two line-items for overtime that split the 150% pay owed into two component parts:  a line accounting for the 100% "base" pay and a line for the 50% "premium" pay added to the base pay.  *Id*. at *1.  At first glance, this caused the total hours worked for all line items to double count any time spent working overtime.  *Id*.  But the wage statement in *Hernandez* also included an obvious line that showed the total hours worked, which did *not* double count the time spent working overtime.  *Id*.  The district court concluded the wage statement in that case was sufficient as a matter of law because the statement showed the total hours worked during the pay period.  *Id*. at *3.

The wage statements at issue here have some similarities to those in *Hernandez* but are noticeably more complicated.  For example, the June 1, 2018 statement has more than a dozen line items.  If only the "regular" and "overtime base" line items are added together, the hours in those line items equal the total hours worked listed at the top of the statement.  But, as plaintiff correctly points out, if all of the hours listed in the line items are added together, they total far more than the listed "total hours worked."  Although the court could make educated guesses as to why certain line items are or are not included in the total hours worked, nothing before the court clearly explains the nature of each category.  Again, the court is not permitted to consider counsel's explanations and arguments as to why the total provided is correctly reflected by the line items.  The court is not moved by the fact that *Hernandez* approved on summary judgment wage statements with somewhat similar, but much less complicated, double-counting issues.  The motion to dismiss this claim will therefore also be DENIED.

            b.    *Unlawful Wage Statements Claim*

Plaintiff next alleges that on a routine basis defendant failed to provide wage statements compliant with California Labor Code § 226 because hours and rates were not properly shown.  (SAC, ¶ 29.)  Defendant argues that these claims are untimely in light of California Code of Civil Procedure § 340, which sets forth a one-year statute of limitations applicable to any action seeking statutory damages.  (Doc. Nos. 1-4 at 2 (original filing in state court); 10-1 at 9 (argument).)  According to defendant, because the SAC alleges that plaintiff ended his

5

1  employment in June 2018, plaintiff had until June 2019 to file an action for penalties owed due to

2  any allegedly unlawful wage statements.  (Doc. No. 10-1 at 9.)

3         Plaintiff responds in two ways.  First, he points out that the SAC indicates that plaintiff

4  continued to receive wage payments and statements as late as August 2018.  (Doc. No. 11 at 9;

5  *see also* SAC, ¶ 35 (alleging "the latest payment date [was] made as late as August 2018").)

6  Defendant acknowledges this in its reply but maintains that the only wage statement issued to

7  plaintiff within the one-year limitations period—a statement for the October 5, 2018 pay period—

8  cannot form the basis of plaintiff's claim because that wage statement was "lawful."  (Doc. No.

9  15 at 10.)  Specifically, defendant contends that because plaintiff did not actually work from

10  September 16 through September 29, 2018 (the period covered by the October 5, 2018 wage

11  statement) the wage statement was not required to provide "applicable hourly rates in effect" and

12  instead properly reflected a miscellaneous payment of $20.00 as a "misc payment-no tax."  (*Id.*)

13  This too is merely an unsupported argument.  Nothing properly before the court explains what the

14  "MISC PAYMENT" was for or why it should or should not reflect an underlying hourly wage.

15  Therefore, to the extent defendant is moving to dismiss any claims premised upon the wage

16  statement for the October 5, 2018 pay period, that motion will be DENIED as well.

17         Second, plaintiff suggests that the one-year statute of limitations period does not apply

18  here at all because he is seeking damages, not just statutory penalties.  (Doc. No. 11 at 9.)

19  Plaintiff is correct that where damages, rather than statutory penalties, are requested, a three-year

20  statute of limitations applies.  *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1025

21  (E.D. Cal. 2015) ("depending on the relief sought, a claim pursuant to Section 226(e)(1) could be

22  subject to a one-year or a three-year limitations period").  The SAC is not a model of clarity in

23  this regard.  It generally requests damages in several places.  (*See* SAC, ¶¶ 53, 55.)  However, the

24  relevant wage statement cause of action specifically requests only "penalties according to proof."

25  (*Id.*, ¶ 94.)[3]  To the extent the SAC is unclear about plaintiff's intent to seek damages in

26  connection with his wage statement claim, leave to amend would be appropriately granted at this

27  ―――――――――――――――――

28  [3]  The same claim does quote language from Cal. Labor Code § 226 that permits a plaintiff to
    either recover damages or statutory penalties for a wage statement violation.  (*Id.*, ¶ 89.)

6

1   early stage of the proceedings—where class discovery has not yet even begun.[4]  The court will

2   permit plaintiff an opportunity to clarify his prayer for relief in an amended pleading.

3                    c.    *Meal Period Premium Claim*

4         Plaintiff asserts that meal period premiums were not paid at the proper rate.  (SAC, ¶ 28.)

5   Defendant moved to dismiss this claim (Doc. No. 10-1 at 11), arguing that the claim is premised

6   upon a "nonactionable theory" rejected by the California Court of Appeals in *Ferra v. Loews*

7   *Hollywood Hotel*, LLC, 40 Cal. App. 5th 1239, 1252 (2019), which held that employers are only

8   obligated to compensate employees with a full extra hour for missed meal/rest breaks at their base

9   hourly rate.  However, that appellate decision was overruled by the California Supreme Court on

10  July 15, 2021, *Ferra v. Lowes Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021), which concluded

11  unanimously that meal and rest break premiums must be calculated at the same "regular rate of

12  pay" used to calculate overtime pay, a calculation that encompasses all nondiscretionary

13  payments, not just hourly wages.  The California Supreme Court's decision in *Ferra* requires

14  denial of this aspect of defendant's motion to dismiss.

15                   d.    *Waiting Time Claim*

16        Finally, plaintiff claims that defendant failed to timely pay him wages due at termination

17  of employment as required by California Labor Code § 201 (or alternatively within 72 hours of

18  resignation as required by § 202) and therefore that defendant owes waiting time penalties under

19  § 203.  (SAC, ¶ 33.)  The SAC specifically alleges that plaintiff's last day of work was in June

20  2018 but that he continued to receive payments as late as August 2018, more than 30 days after

21  his employment ended.  (*Id.*, ¶ 83.)  Defendant argues that this claim should be dismissed because

22  the payments on which plaintiff bases his own waiting time claim were only calculable after his

23  termination.  (Doc. No. 10-1 at 11.)  Defendant correctly points out that the requirement for

24  paying wages at termination may be excused for certain types of pay that are not calculable at the

25  time of termination.  (Doc. No. 15 at 8 (citing *Nordstrom Comm. Cases*, 186 Cal. App. 4th 576,

26  588 (2010)).  But as the decision in *Nordstrom* itself suggests, this is a fact-intensive inquiry.

27  There, the court was considering whether to approve a settlement that included, among other

28  ---
[4]  The court notes that defendant continues to object to class discovery in part because these
motions have remained pending before the court.  (Doc. Nos. 31, 36.)

1   things, a claim regarding the timeliness of post-termination commission payments. *Nordstrom*,

2   186 Cal. App. At 587–88.  The court in *Nordstrom* found there was a *bona fide* dispute over when

3   such commissions became calculable considering the specific facts of that case, including

4   Nordstrom's pre-existing system of computing and paying net commissions at the next pay

5   period. *Id*.

6          Here, the SAC highlights five types of payments that plaintiff allegedly received late:

7   "[1] Cash Awards, [2] Commission, [3] Taxable non-cash Awards, [4] Misc. Payment, and

8   [5] recalculation of overtime differential pay." (SAC, ¶ 84.)  Defendant asserts that "each, on

9   their face, represents payments that cannot be made at termination." (Doc. No. 10-1 at 11.)

10  While this may be self-evident to counsel, it is not to the court.  There is simply no record upon

11  which the court could decide at this stage of the proceedings that the five categories of payments

12  listed were not calculable at termination.  Defendant has not cited, and the court has not located,

13  any authority suggesting that it is plaintiff's burden to affirmatively allege <u>at the pleading stage</u>

14  that payments he received well after termination were in fact calculable at the time of termination.

15  Defendant's motion to dismiss the waiting time claim will therefore also be DENIED.

16  **B.     Motion to Stay Pending Resolution of *Ayala*.**

17         Defendant next moves to stay this case pending the conclusion of an earlier-filed, similar

18  lawsuit pending in the U.S. District Court for the Central District of California:  *Ayala v. AT&T*

19  *Mobility Services, LLC, et al*., No. 2:18-cv-08809-SVW-MRW.  (Doc. No. 10-1 at 12.)

20  Defendant requests that the court exercise its discretion under the "first to file" rule to stay this

21  case.  (*Id*.)  Under that doctrine, a court "analyzes three factors: chronology of the lawsuits,

22  similarity of the parties, and similarity of the issues." *Kohn L. Grp., Inc. v. Auto Parts Mfg.*

23  *Mississippi, Inc*., 787 F.3d 1237, 1240 (9th Cir. 2015).  The *Ayala* action was initiated on August

24  22, 2018 (*Ayala*, Doc. No. 1-4[5]), approximately one year before this matter was initiated in the

25  Madera County Superior Court on August 27, 2019 (Doc. No. 1-4).  The issues raised also appear

26  to be similar.  (*Compare* Ayala, Doc. No. 52 (Ayala's third amended complaint) *with* SAC.)

27  Likewise, the first-to-file rule does not require strict identity of parties, but rather only

28

---

[5]  The court takes judicial notice of the *Ayala* docket and its contents.  Fed. R. Evid. 201(b).

1  "substantial similarity," which may be satisfied in the class context where the two cases propose

2  to represent at least some of the same individuals. *See Adoma v. Univ. of Phoenix, Inc*., 711 F.

3  Supp. 2d 1142, 1147 (E.D. Cal. 2010).  This appears to be the case here, where the proposed class

4  in *Ayala* is made up of call center employees, a subset of the class proposed in this action.

5  (*Compare* Ayala, Doc. No. 52, ¶ 2, *with* SAC, ¶ 45.)

6         Yet even assuming the three requirements of the first-to-file rule are satisfied "it does not

7  follow that application of the rule is appropriate.  The doctrine is discretionary and, accordingly,

8  the court may disregard it in the interests of equity." *Id*. at 1149.  "The circumstances under

9  which an exception to the first-to-file rule typically will be made include bad faith, . . .

10  anticipatory suit, and forum shopping." *Alltrade, Inc. v. Uniweld Products, Inc*., 946 F.2d 622,

11  628 (9th Cir. 1991).  In exercising its "broad" discretion under this doctrine, a court may consider

12  demonstrations of prejudice. *Adoma*, 711 F. Supp. 2d at 1149.  It is for just this reason that the

13  court declines to stay this case at this time.

14         The record now reveals that defendant has settled yet another class action case raising

15  claims similar to those presented here and in *Ayala*.  That case was apparently <u>settled</u> on March

16  29, 2021 but was not <u>filed</u> until June 22, 2021 in San Bernardino County Superior Court (*Wallack*

17  *et al. v. AT&T Mobility*, No. CIVSB2117915).  (*See* Doc. No. 24 at 7, 13.)  Meanwhile, in May

18  2021, defendant refused to produce class wide discovery in this case, while never mentioning that

19  it had already settled a parallel class action.  (*Id*. at 13.)  Generally, plaintiff Razo contends that

20  there are indications of collusion between defendant and class counsel in *Wallack*.  (*Id*. at 23–24.)

21  Although the fairness of the settlement in *Wallack* is not before this court, plaintiff's counsel in

22  this case has moved to be appointed class counsel on an interim basis to facilitate counsel's

23  intervention in the *Wallack* case.[6]  Staying this action at this time would have the effect of

24  significantly impeding plaintiff's efforts to be heard in *Wallack*.  Although the court expresses no

25  opinion on the merit of plaintiff's contentions about the *Wallack* settlement, the court does

26

27

28  _____

[6]  The *Wallack* settlement apparently has carved out plaintiff Razo and named plaintiffs in other earlier-filed actions, limiting the ability of each of those individuals to intervene in *Wallack* or to object to the settlement.  (*See* Doc. No. 24 at 21.)

believe that the San Bernardino County Superior Court likely will want to be made aware of plaintiff's concerns.

**CONCLUSION**

Accordingly, for the reasons explained above:

1.  Defendant's motion to dismiss or to stay (Doc. No. 10) is DENIED; and

2.  Plaintiff is granted leave to file an amended complaint within 30 days of the date of entry of this order to address the issue of a prayer for damages in connection with his wage statement claim.

IT IS SO ORDERED.

Dated:   __October 13, 2021__        _____
UNITED STATES DISTRICT JUDGE