UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS M. SALAS RAZO, on his own behalf of and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AT&T MOBILITY SERVICES, LLC, and DOES 1 through 100<br><br>    Defendants. | Case No.: 1:20-cv-0172 JLT HBK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT<br><br>(Doc. 72) |

Luis Salas Razo asserts AT&T Mobility Services failed to comply with California's wage and hour laws by failing to pay all wages due and provide proper meal and rest breaks. Razo now seeks preliminary approval of a settlement reached in this action. Specifically, Razo seeks: (1) conditional certification of the settlement class; (2) preliminary approval of the settlement terms; (3) appointment of Razo as the class representative; (4) appointment of the firm of Bradley/Grombacher LLP as class counsel; (5) approval of the class notice materials; (6) appointment of Atticus Administration, LLC, as the settlement administrator; and (7) scheduling for final approval. (Doc. 72.)

The Court reviewed the proposed settlement between the parties, as well as the moving papers, and finds the matter suitable for decision without oral arguments pursuant to Local Rule 230(g). For the following reasons, the Court finds conditional certification of a settlement class is not appropriate and preliminary approval of the class settlement is **DENIED**.

1

# I. Background

Razo was employed a sales representative at the AT&T Mobility Store located in Madera, California. (Doc. 41 at 4, ¶ 11.) Razo asserts he worked for AT&T "for approximately eleven years" until his termination in June 2018. (*Id.*) He alleges AT&T "routinely failed to properly calculate the overtime and double time rate of pay." (*Id.* at 6, ¶ 25.) Razo asserts AT&T "failed to include its employees' total compensation including bonuses and commissions when calculating the regular rate for the purposes of determining overtime wages owed and thus routinely underpaid employees for overtime wages owed." (*Id.*) Razo contends this underpayment was "evidenced in [his] paycheck and accompanying wage statement issued June 13, 2018." (*Id.*, ¶ 26.)

He alleges the wage statements also "failed to properly list all hours worked which again resulted in an underpayment of wages including overtime and double time wages to employees." (Doc. 4 at 6, ¶ 27.) He contends, "[t]his resulted in failure to pay wages for all hours worked at appropriate rates, and overtime violations for work performed over eight (8) hours per day and/or forty (40) hours per week." (*Id.*) For example, Razo asserts his wage statement from June 13, 2018, "incorrectly reflects that the total hours worked because the hours associated with all of the line items add up to 106.08, but the total hours worked line item only lists 81.98 hours." (*Id.* at 7, ¶ 27.)

Razo asserts he and others "received paychecks without proper wages, as meal period premiums were not paid at the proper rate, and the regular rate of pay was miscalculated." (Doc. 41 at 7, ¶ 28.) Razo contends AT&T paid premiums for missed meal periods at his "base hourly rate, rather than the regular rate of pay." (*Id.*) According to Razo, the miscalculation was "evidenced in [his] paycheck and accompanying wage statement issued June 1, 2018, which shows the untaken meal break premium is paid at [the] base hourly rate," without incorporating his commission in the premium rate paid. (*Id.*)

Razo contends "on routine basis he and all other aggrieved employees received wage statements in violation of Labor Code §226, as hours and rates were not properly shown on wage statements." (Doc. 41 at 7, ¶ 29 (emphasis omitted).) He alleges, "where there are payments for items such as cash awards, commission, taxable non-cash-awards, miscellaneous payment, or overtime 'true up' payments, there are no specific details as to rate or hours in the description or analysis that make

up the payment." (*Id.*)  He asserts the wage statements also violated California law because: "premium pay for meal period violations were paid at the… base hourly rate, rather than his regular rate of pay; the total hours listed are incorrect because the hours associated with the wage statement's line items exceed the number of total hours worked listed; and the wage statements list improper overtime rates because [AT&T] omitted items such as "COMMISSION (MOBILITY)" when calculating its employee's regular rate of pay." (*Id.* at 7-8, ¶ 31.)

According to Razo, due to the miscalculated wages, AT&T also failed "to pay for all wages due prior to termination." (Doc. 41 at 8, ¶ 32.)  In addition, Razo alleges that his " last day of work was in June 2018, but since such date four additional payments were made with the latest payment made as late as August 2018 well more than thirty (30) days after he ceased employment." (*Id.*, ¶ 35.)  He reports these "payments consisted of the final payment of wages described as (1) Cash Awards, (2) Commission, (3) Taxable non-cash Awards, (4) Misc. Payment, and (5) recalculation of overtime differential pay." (*Id.* at 9, ¶ 36.)  Razo contends that AT&T "knew or should have known, that all other employees, including Plaintiff, were entitled to receive all wages at appropriate rates, all overtime at appropriate rates, and all commissions due at the time their employment ceased," and knowingly and willfully failed to pay the wages due upon termination.  (*Id.*, ¶¶ 36-37.)

On May 29, 2019, Razo provided notice to the Labor and Workforce Development Agency and AT&T "of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations." (Doc. 41 at 9, ¶ 42 (emphasis omitted).)  He asserts the LWDA did not respond to the notice.  (*Id.*, ¶ 43.)

On August 27, 2019, Razo initiated this action by filing a class complaint in Madera County Superior Court, Case No. MCV081925.  (Doc. 1-4 at 5.)  Razo filed an amended complaint in the state court on January 8, 2020.  (Doc. 1-9.)  AT&T initiated the matter before this Court by filing a notice of removal on January 31, 2020.  (Doc. 1.)  Razo further amended the pleadings on July 30, 2020, and October 15, 2021.  (Docs. 9, 41.)  The Third Amended Complaint is now the operative pleading.

Razo identifies the following causes of action in the TAC: (1) failure to pay for all hours worked; (2) failure to pay overtime wages; (3) failure to pay wages due at termination in violation of Cal. Labor Code §§ 201-203; (4) failure to furnish accurate, itemized wage statement in violation of

Cal. Labor Code § 226; (5) unlawful and unfair conduct in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; and (6) civil penalties under California's Private Attorney General Act. (Doc. 41 at 13-23.) Razo asserted the claims were brought on behalf of himself and classes including:

1. "The Plaintiff Class": All persons who have been, or currently are, employed by Defendant and who held, or hold, job positions which Defendant have classified as "non-exempt" personnel in the State of California. (The Class Period is the period from August 27, 2015, through and including the date judgment is rendered in this matter).

2. "The Terminated Sub Class": All members of the Plaintiff Class whose employment ended during the Class Period (The Class Period is the period from August 27, 2015, through and including the date judgment is rendered in this matter).

(*Id.* at 10.) AT&T filed its answer on October 28, 2021. (Doc. 46.)

While this matter was pending, AT&T settled a separate class action addressing "the same claims" as those raised by Razo, in *Samuel Wallack, et al. v. AT&T Mobility Services*, *LLC*, San Bernardino County Superior Court Case No. CIVSB2117915.[1] (Doc. 72 at 4; *see also* Doc. 50 at 2.) The *Wallack* court denied Razo's motion to intervene. (Doc. 49.) The *Wallcack* proposed settlement class included "persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from August 1, 2015 through November 2, 2021. (Doc. 72 at 6.)

On March 8, 2022, Razo filed the motion for preliminary approval of the settlement with AT&T in this action. (Doc. 72.) In seeking approval of the settlement, Razo acknowledged: "[o]nce the *Wallack* Court grants final approval, the only remaining claims in this matter will be those Razo has asserted on behalf of those who worked for Defendant in a non-exempt role in California from November 2, 2021, onwards." (*Id.* at 6.) Thus, Razo and AT&T agreed to settle the claims of a class

---

[1] The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The official records of the Superior Court of San Bernardino County, as contained in the court's official website, are sources whose accuracy cannot reasonably be questioned, and judicial notice may be taken of documents on the website of a state court. *See Harris v. County of Orange,* 682 F.3d 1126, 1132 (9th Cir. 2012) (judicial notice may be taken of "undisputed matters of public record, including documents on file in federal or state courts"); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web"). Accordingly, the Court takes judicial notice of the San Bernardino County Superior Court docket in Case No. CIVSB2117915, including the filing dates and documents publicly available. This docket is available at https://www.sb-court.org, and through the court's online portal at https://cap.sb-court.org.

4

defined as: "All persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from November 2, 2021, to the date the Court grants preliminary approval of this Settlement." (*Id.* at 7; *see also* Doc. 72-4 at 4, Settlement ¶ 2.)

The settlement in *Wallack* received final approval on March 18, 2022, and an "Amended Order Nunc Pro Tunc Granting Joint Motion for Final Approval of Class Action Settlement and Judgment" was issued on April 19, 2022. The *Wallack* class was confirmed to include: "All persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from August 1, 2015 through November 2, 2021." (*Wallack*, Case No. CIVSB2117915, *Amended Order*, p. 2.)

## II.     The Proposed Settlement Terms

Pursuant to the proposed "Class Action and PAGA Action Settlement Agreement ("the Settlement"), the parties agree to a gross settlement amount of $575,000.00 for the class including: "all persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from November 2, 2021, to the date the Court grants preliminary approval of this Settlement." (Doc. 72-4 at 4-5, ¶¶ 2, 6.)

### A.     Payments

The parties propose the settlement fund cover payments to class members, including enhanced compensation to Razo as the Class Representative. (Doc. 74-2 at 9, Settlement ¶ 24.) In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and costs, to the Settlement Administrator, and the California Labor & Workforce Development Agency. (*Id.* at 5, ¶ 6.) Specifically, the Settlement provides for the following payments from the gross settlement amount:

- The Class Representative will receive a service payment of $10,000;
- Class counsel will receive $191,666.76 in attorneys' fees, which equals 33 1/3 % of the gross settlement amount, and expenses up to $10,000.00;
- The California Labor and Workforce Development Agency shall receive $7,500 from the total PAGA payment of $10,000; and
- The Settlement Administrator will receive up to $30,000 for fees and expenses.

(*Id.* at 5, 8-9, Settlement ¶¶ 6, 23-24.) After these payments, the remaining money ("Net Settlement Amount") would be distributed as settlement shares to class members. (*Id.* at 5, Settlement ¶ 10.)

**B.     Releases**

The Settlement provides that Razo and class members, other than those who elect not to participate in the Settlement, shall release AT&T from claims. (Doc. 72-4 at 10-11.) Specifically, the release for class members provides:

> Upon the Court's final approval of this Settlement, the Class Members (other than those who timely and validly elected not to participate in the Settlement) fully release and discharge Defendant and the Released Parties of any and all known and unknown claims as alleged in, and that could have been alleged based on the facts of, the operative Third Amended Complaint. This includes, but is not limited to, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs or expenses, penalties, liquidated damages, unitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, arising out of or based upon any provision of the California Labor Code, California Industrial Welfare Commission Wage Orders, and California Business and Professions Code § 17200, et seq.; including, without limitation, the following categories of allegations, to the fullest extent such claims are releasable by law: (a) all claims for failure to pay wages, including overtime premium pay and the minimum wage; (b) all claims for the failure to provide meal and/or rest periods in accordance with applicable law, including payments equivalent to one hour of the employee's regular rate of pay for missed meal and/or rest period and alleged non-payment of wages for meal periods worked and not taken; (c) all claims for the alleged omission of any kind of remuneration when calculating an employee's regular rate of pay; and (d) any and all claims for recordkeeping or pay stub violations, claims for timely payment of wages and associated penalties, and all other civil and statutory penalties. The Class Members understand and agree that this release includes a good-faith compromise of disputed wage claims.

(*Id.* at 11, Settlement ¶ 30.)

The release for Razo encompasses more claims than those identified for Settlement Class Members, because he agreed to release any claims known and unknown against AT&T, not just those claims constrained to the facts alleged in this lawsuit. Specifically, Razo's release provides:

> In consideration of the Service Payment to Razo, his Settlement payments, and the other terms and conditions of the Settlement, Luis M. Salas Razo hereby releases any and all of his known and unknown claims against Defendant and any of Defendant's present and former parents, subsidiaries and affiliated companies or entities, and their respective officers, directors, employees, partners, shareholders and agents, and any other successors, assigns and legal representatives and its related persons and entities ("Released Parties") and waives the protection of California Civil Code section 1542. Razo understands and agrees that this release includes a good-faith compromise of disputed wage claims.

(*Id.* at 10, Settlement ¶ 29.) Thus, claims released by Razo—but not the Settlement Class—include any claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Employee Retirement Income Security Act.

**C.    Objections and Opt-Out Procedure**

The parties agreed class members would not be required to take any action to receive their settlement shares. (*See* Doc. 74-2 at 10, Settlement ¶ 34.) However, any class member who wishes may file objections or elect not to participate in the Settlement. (*Id.*; *see also* Doc. 72-4 at 29.) The proposed notice for class members explains the procedures to object to the terms or elect not to participate in the Settlement Class, and includes a form to be completed by a class member seeking exclusion. (Doc. 72-4 at 35, 38.)

**III.    Preliminary Approval of a Class Settlement**

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

**A.    Conditional Certification of a Settlement Class**

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). As noted above, the proposed Settlement Class includes: "all persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from November 2, 2021, to the date the Court grants preliminary approval of this Settlement." (Doc. 72-4 at 4-5, ¶¶ 2, 6.)

Razo seeks to "certify a class conditionally for settlement purposes only" pursuant to Fed. R. Civ. P. 23. (Doc. 72 at 13.) Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate … compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). If an action meets the prerequisites of Rule 23(a), the Court

must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### B.    Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156.

#### 1.    Numerosity

This prerequisite requires the Court to consider "specific facts of each case and imposes no absolute limitations." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). Although there is not a specific threshold, joining more than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (finding the numerosity requirement ... "satisfied solely on the basis of the number of ascertained class members"); *see also Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th Cir. 1977) (a proposed class with 110 members "clearly [included] a sufficient number to meet the numerosity requirements"). Razo reports "there are approximately 3,900 class members, all of whom were subject to AT&T's allegedly commonly applied unlawful policies, among other derivative wage and hour claims." (Doc. 72 at 13.) Therefore, joinder of all identified class members as plaintiffs is impracticable, and the numerosity requirement is satisfied.

#### 2.    Commonality

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the plaintiff must demonstrate common points of facts and law. *See Wal-Mart Stores*, 564 U.S. at 350. Thus, "commonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an

8

issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks, citations omitted).

Razo asserts the commonality requirement is satisfied because "the class claims of Defendant's employees turn upon answers to overarching common questions regarding Defendant's policies and procedures that are capable of class-wide resolution for settlement purposes." (Doc. 72 at 14.) According to Razo, "[f]or settlement purposes," the common issues include:

> (1) whether Defendant's timekeeping policies resulted in compensable off-the-clock work and subsequent failure to pay all regular and overtime hours worked; (2) whether Defendant's omission of certain types of remuneration when calculating its employee's regular rate of pay resulting in a failure to pay all wages owed; (3) whether Defendant provided its employees with all requires meal and rest periods; (4) whether Defendant paid its employees a penalty equivalent to one hour of their regular rate of compensation whenever that worker missed a meal or rest period; (5) whether Defendant failed to pay all owed wages timely; and (6) whether Defendant failed to provide employees with wage statements compliant with California law.

(*Id.*) Because it appears resolution of the issues—including whether AT&T's policies violated California wage and hour law—would apply to the claims of each of the Class Members, the Court finds the commonality requirement is satisfied.

### 3. Typicality

This requirement demands that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks, citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when named plaintiffs have the same claims as other members of the class and would not be subject to unique defenses).

Importantly, class membership is a minimal prerequisite to a finding of typicality. *Falcon*, 457 U.S. at 156 ("We have repeatedly held that a class representative must be part of the class"). As a result, "typicality will not be satisfied if[] the class representative is not a member of the class []he purports to represent." *Urena v. Cent. Cal. Almond Growers Assoc.*, 2020 WL 3483280, at *4-5 (E.D. Cal. June 26, 2020), quoting 7 William B. Rubenstein, *Newberg on Class Actions* § 23:23 (5th ed.) (internal quotation marks omitted). Courts cannot certify a proposed class "where the representative plaintiff is not a member of the class." *Jackson v. Nat'l Action Fin. Servs*. 227 F.R.D. 284, 288 (N.D. Ill. 2005), citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Bentley v. Verizon Bus. Global, LLC*, 2010 WL 1223575, at *4 (S.D.N.Y. 2010) ("[a] determination that the named plaintiff is not a member of the class … is dispositive").

Razo asserts the typicality requirement is satisfied because "[he] and the Class Members all worked for Defendant as non-exempt employees." (Doc. 72 at 14.) Significantly, however, Razo does not address—or even acknowledge—the fact that he is not a member of the proposed settlement class. As discussed above, the proposed class includes California non-exempt employees who worked for AT&T "at any time from November 2, 2021." (*See* Doc. 72-4 at 4, ¶ 2 (emphasis added).) Razo reported his employment with AT&T ended in June 2018. (Doc. 41 at 4, ¶ 11; *see also id.* at 8, ¶ 35.) Based upon Razo's identified termination date, he clearly cannot be a member of the class. Because the sole named plaintiff is not a member of the proposed settlement class, the Court is unable to find the typicality prerequisite of Rule 23 is satisfied. *See Dukes*, 564 U.S. at 350 (2011).

4.     Adequacy

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). This prerequisite is satisfied if the representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must evaluate whether the named plaintiff has any conflict of interest with the proposed class, and whether he will "prosecute the action vigorously on behalf of the class" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Significantly, to satisfy the adequacy requirement, a plaintiff must, at a minimum, belong to the proposed class he seeks to represent. *See Falcon*, 457 U.S. at 156; *see also East Tex. Motor*

*Freight Sys. v. Rodriguez*, 431 U.S. 395, 403-404 (1977).  Because Razo is not a member of the proposed settlement class, he is also unable to show the adequacy requirement is satisfied.

### IV.	Conclusion and Order

Razo fails to carry the burden to show the prerequisites of Rule 23(a) are satisfied for the proposed settlement class, and the Court is unable to certify the class.  *See Dukes*, 564 U.S. at 350; *see also Lindblom v. Santander Consumer USA, Inc.*, 2018 WL 573356, at *4 (E.D. Cal. Jan. 26, 2018) ("A bedrock requirement running through the Rule 23(a) framework is that class certification is not appropriate unless one or more class representatives actually belong to the proposed class.").

Based upon the foregoing, the Court **ORDERS**: The motion for preliminary approval of the class settlement (Doc. 72) is **DENIED**.

IT IS SO ORDERED.

Dated:	**May 2, 2022**

_____
UNITED STATES DISTRICT JUDGE