1
2
3
4
5
6
7

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley (SBN 174156)
Kiley L. Grombacher (SBN 245960)
Lirit A. King (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com

8
9
10
11
12

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian, (SBN 146621)
18250 Ventura Boulevard
Tarzana, California 91356
Telephone: (818) 609-0807
Facsimile: (818) 609-0892
E-Mail: sahagii@aol.com

13

Attorneys for Plaintiff and the Proposed Class

14

## UNITED STATES DISTRICT COURT

15

## EASTERN DISTRICT OF CALIFORNIA

16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| LUIS M. SALAS RAZO, on his own behalf and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>       vs.<br><br>AT&T MOBILITY SERVICES, LLC, a Delaware Corporation; and Does 1 through 100, inclusive,<br><br>          Defendants. | **CASE NO. 1:20-cv-00172-JLT-HBK**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF REVISED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA ACTION SETTLEMENT**<br><br>Date:         July 7 ,2022<br>Time:        9:00 AM<br>Courtroom:   4<br><br>Assigned Judge:    Hon. Jennifer L. Thurston<br>Assigned Mag. Judge: Hon. Helena M. Barch- Kuchta<br><br>Complaint filed:    August 27, 2019<br>Removed:        January 31, 2020 |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND............................................. 2

       A.     Plaintiff's Claims And Relevant Background.......................................... 2

       B.     Settlement Negotiations. ........................................................................ 4

III.   SUMMARY OF SETTLEMENT ......................................................................... 4

       A.     The Proposed Class ................................................................................. 4

       B.     Settlement Terms .................................................................................... 5

              i.      Class Representative's General Release Payment ...................... 5

              ii.     Attorneys' Fees and Costs........................................................... 6

              iii.    Payment to the LWDA and PAGA Releasees ............................ 6

              iv.     Settlement Administration Expenses ........................................... 7

              v.      Settlement Payments to Class Members ...................................... 7

              vi.     Funding and Distribution of Settlement Funds ........................... 8

              vii.    Uncashed Checks ........................................................................ 8

              viii.   Released Claims........................................................................... 9

IV.    CONDITIONAL CERTIFICATION SHOULD BE GRANTED ................................. 10

       A.     Rule 23(a) Class Requirements are Met................................................. 11

              i.      Numerosity and Ascertainability ............................................... 11

              ii.     Commonality................................................................................ 11

              iii.    Typicality .................................................................................... 12

              iv.     The Class Representative and His Counsel are Adequate ......................... 12

              v.      Rule 23(b) Standards are Satisfied............................................. 13

              vi.     Plaintiff's Counsel Should be Appointed as Class Counsel .................... 14

V.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED........................... 15

       A.     Court Approval Under Rule 23 Should be Granted. ............................... 15

       B.     The Settlement Resulted From Arm's-Length Negotiations. ............................ 16

C.    The Benefits Of The Proposed Settlement And Risks Of Continued Litigation. .......................................................................................... 17

VI.    THE COURT SHOULD APPROVE THE PAGA SETTLEMENT ................................. 20

VII.    NATURE AND METHOD OF NOTICE ......................................................................... 22

A.    Data to Administrator and Notice Mailing .......................................................... 22

B.    The Notice Method Meets the Requirements of Rule 23 ..................................... 22

VIII.    CONCLUSION .............................................................................................................. 23

TABLE OF CONTENTS

1    **<u>TABLE OF AUTHORITIES</u>**

2    **Cases**

3    *Advertising Specialty National Association. v. Federal Trade Commission*

4        238 F.2d 108 (1st Cir. 1956) ............................................................................ 11

5    *Allen v. American Multi-Cinema Inc.*

6        (Super. Ct. Alameda County, 2011, No. RG-11-585502) ...................................... 20

7    *Amchem Prods., Inc. v. Windsor*

8        521 U.S. 591 (1997) ......................................................................................... 13

9    *Armstrong v. Davis*

10        275 F.3d 849 (9th Cir. 2001) ............................................................................ 11

11    *Atempa v. Pama Inc.*

12        (Super. Ct. San Diego County, 2019, No. 37-2013-00058208-CU-OE-CTL) ........... 20

13    *Brinker Restaurant Corp. v. Superior Court*

14        53 Cal.4th 1004 (2012) .................................................................................... 14

15    *Childers v. Anthony Shenouda Inc.*

16        (Super. Ct. L.A. County, 2013, No. BC517798) ................................................... 20

17    *Chu v. Wells Fargo Investments, LLC*

18        2011 U.S. Dist. Lexis 15821 (N.D. Cal. Feb. 15, 2011) ........................................ 21

19    *Class Plaintiffs v. City of Seattle*

20        955 F.2d 1268 (9th Cir. 1992) ............................................................................ 15

21    *Doninger v. Pacific Northwest Bell, Inc.*

22        564 F.2d 1304 (9th Cir. 1977) ............................................................................ 10

23    *Early v. Superior Court*

24        79 Cal.App.4th 1420 (2000) ................................................................................ 5

25    *Ferra v. Loews Hollywood Hotel, LLC*

26        11 Cal. 5th (2021) ............................................................................ 16, 19, 20

27    *Gautreaux v. Pierce*

28        690 F.2d 616 (7th Cir. 1982) ............................................................................ 15

*Grant v. Capital Mgmt. Servs., L.P.*

  2013 WL 6499698 (S.D. Cal. Dec. 11, 2013, No. 10–cv–2471–WQH (BGS)) ........................ 14

*Hanlon v. Chrysler Corp.*

  150 F. 3d 1011 (9th Cir. 1998).................................................................................. 11, 14, 15, 16

*Heritage Bond Litigation*

  2005 WL 1594403 (C.D. Cal. June 10, 2005, No. 02-ML-1475)............................................. 15

*Kim v. Reins Int'l Cal., Inc.*

  9 Cal. 5th 73 (2020) .............................................................................................................. 21

*Koehl v. Verio, Inc.*

  142 Cal.App.4th 1313 (2006)................................................................................................... 5

*Lazarin v. Pro Unlimited, Inc.*

  2013 WL 3541217 (N.D. Cal. July 11, 2013, No. C11-03609 (HRL)) .................................... 14

*Leyva v. Medline Industries Inc.*

  716 F.3d 510 (9th Cir. 2013).................................................................................................... 13

*Magadia v. Wal-Mart Assocs.*

  384 F. Supp. 3d 1058 (N.D. Cal. 2019) .................................................................................. 21

*Naranjo v. Spectrum Security Services, Inc.*

  40 Cal. App. 5th (2019).......................................................................................................... 19

*Nat'l Rural Telecommunication cooperative v. Directv, Inc.*

  221 F.R.D (C.D. Cal. 2004) .................................................................................................... 16

*Nordstrom Commissions Cases*

  186 Cal.App.4th 576 (2010)..................................................................................................... 21

*Officers for Justice v. Civil Service Com'n of City and Couty of San Francisco*

  688 F.2d 615 (9th Cir.1981)..................................................................................................... 16

*Rodriguez v. Hayes*

  591 F.3d 1105 (9th Cir. 2010).................................................................................................. 12

*Rodriguez v. West Publishing Corp.*

  563 F.3d 948 (9th Cir. 2009).................................................................................................... 16

TABLE OF AUTHORITIES

*Smith v. Am. Greetings Corp.*

    2016 U.S. Dist. Lexis 66247 (N.D. Cal. May 19, 2016) ........................................................... 21

*Staton v. Boeing Co.*

    327 F.3d 938 (9th Cir. 2003) ...................................................................................................... 6

*Surebeam Corporation Securities Litigation*

    2004 WL 5159061(S.D. Cal., Jan. 5, 2004, No. 03 CV 1721JM(POR)) .................................... 12

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*

    593 F.3d 802 (9th Cir. 2010) .................................................................................................... 10

*Whiteway v. Fedex Kinkos Office & Print Services, Inc.*

    2007 U.S. Dist. LEXIS 95398 (N.D. Cal., Dec. 17, 2007, No. 05-2320) .................................... 5

*Williams v. Superior Court*

    3 Cal. 5th 531 (2017) ............................................................................................................... 21

Willner v. Manpower Inc.

    2015 U.S. Dist. Lexis 80697 (N.D. Cal. June 20, 2015) ........................................................... 21

**Other Authorities**

Manual of Complex Litigation (4th ed.2004) ............................................................................ 15

Newberg, 2 Newberg on Class Actions §8.32 ............................................................................ 22

**Rules**

Fed. R. Civ. P. 23(a)(4) .............................................................................................................. 12

Fed. R. Civ. P. 23(b)(3) ........................................................................................................ 13, 14

Rule 23(a) ........................................................................................................................ 11, 12, 13

Rule 23(a)(1) ............................................................................................................................... 11

Rule 23(b)(3) ......................................................................................................................... 10, 13

Rule 23(c)(2) ............................................................................................................................... 22

Rule 23(c)(3) ............................................................................................................................... 22

Rule 23(e) .................................................................................................................................... 15

Rule 23(g) .................................................................................................................................... 14

TABLE OF AUTHORITIES

1    **Codes**

2    Cal. Lab. Code § 2699(e)(2) ................................................................................................. 19, 20

3    Cal. Lab. Code § 2699(i) ...................................................................................................... 21

4    California Labor Code § 218.5 .............................................................................................. 5

5    Code Civ. Proc. § 384 .......................................................................................................... 17

6    Labor Code § 2699(l)(2) ...................................................................................................... 20

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

Plaintiff Luis M. Salas Razo, by and through his attorneys of record, seeks preliminary approval of the class action and PAGA settlement in the above-entitled Action as outlined in the Class Action and PAGA Settlement Agreement ("Settlement Agreement," "Settlement," or "Agreement") individually, on behalf of all others similarly situated, and on behalf of the State of California.[1]

## I.   **INTRODUCTION**

This is a wage and hour class action and representative action initially brought on behalf of all non-exempt employees who worked for Defendant AT&T Mobility Services, LLC, ("AT&T") in California at any time from August 27, 2015 through the date that judgment is entered.  ECF No. 41, ¶¶ 3–4.  while this matter was pending, Defendant settled, and the Superior Court approved the settlement in the matter of *Samuel Wallack, et al. v. AT&T Mobility Services, LLC* (Case No. CVISB2117915)—a separate class and representative action pending before the Hon. David Cohn of the Superior Court of California, County of San Bernardino and asserting the same claims as alleged here on behalf of "[a]ll persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from August 1, 2015 to November 1, 2021."  ECF No. 50.

In light of such settlement, Plaintiff and Defendant agreed to a class-wide, non-reversionary settlement of the Action in exchange for a release of claims from all persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from November 2, 2021, to the date the Court grants final approval of this Settlement ("Class Members"). As this Court astutely noted however, in its Order denying Plaintiff's Motion for Preliminary Approval of Class Settlement, Plaintiff was not a member of the Settlement Class as framed.  (ECF Doc. No. 74 ("Order") at p.11. Plaintiff has remedied this error and, has amended the settlement definition to include, not merely the employees who worked during the time period following the

---

[1] The Settlement Agreement is attached to as Exhibit 1 to the declaration of Kiley L. Grombacher that is filed and served concurrently herewith. This Motion incorporates by reference the definitions in the Settlement Agreement.  To the extent the terms are defined in the Settlement Agreement, all defined terms contained herein shall have the same meaning as set forth in the Settlement Agreement.

*Wallack* settlement, but also those individuals such as Plaintiff, who opted out of the *Wallack* settlement.

The Settlement Agreement provides for a non-reversionary settlement in the amount of $575,000.00 ("Gross Settlement Amount"), inclusive of all payments to the Class Members and Aggrieved Employees, the California Labor and Work Force Development Agency ("LWDA"), Class Counsel, the Settlement Administrator and the Named Plaintiff. Assuming no modifications are made, the class members will receive, on average, a net settlement payment of $85.The Parties have reached the proposed settlement after considerable investigation, extensive formal and informal discovery, and an in-depth investigation and analysis into the facts and legal issues raised in this Action. At all times, the Parties' negotiations were adversarial, non-collusive, and at arm's length.

The Settlement is strongly supported by experienced counsel who carefully considered the strength of asserted claims, AT&T's defenses thereto, as well as the expense, complexity, and risks associated with continued litigation. The proposed Settlement is an "opt-out" and non-reversionary settlement, such that Class Members are not required to file a claim form and no portion of the Settlement will revert to AT&T. Moreover, all aggrieved employees will receive a PAGA payment regardless of whether they chose to opt out of the class settlement. The Settlement is reflective of the strengths and vulnerabilities of Plaintiff's case, the risks of class certification, as well as the risks of proceeding on the merits of the claims. When taking these risks into account, the proposed Settlement is in the best interests of the Class and the State of California. Therefore, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, approve the Class Notice, appoint Atticus Administration, LLC, as the Settlement Administrator, appoint Plaintiff as the Class Representative, appoint Plaintiff's counsel as Class Counsel, and schedule a Final Approval Hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Claims And Relevant Background.

Plaintiff is a former non-exempt employee of AT&T Mobility Services. He alleges that AT&T (a) failed to pay him and the Class for all hours worked, including minimum and overtime

1    wages; (b) omitted certain types of remuneration from its regular rate of pay calculations; (c) failed

2    to provide meal and rest periods; (d) failed to pay him and the Class a penalty equivalent to one

3    hour of their regular rate of compensation whenever that worker missed a meal or rest period; (e)

4    issued unlawful wage statements; (f) failed to timely pay wages; and (g) committed unfair business

5    practices.

6        On May 29, 2019, Razo submitted a written notice of his intent to file a civil action to

7    enforce his rights, and the rights of other allegedly aggrieved current and former non-exempt

8    employees who performed work for Defendant in California, under PAGA to the LWDA and

9    Defendant.  The LWDA did not respond.

10       On August 27, 2019, Razo filed a complaint against Defendant in the Superior Court for the

11   State of California, County of Madera, on behalf of himself individually, all others similarly

12   situated, and the State of California.  ECF No. 1-4.  Defendant filed a demurrer on October 25,

13   2019.  ECF No. 1-5.  Razo filed his First Amended Complaint on January 9, 2020, mooting the

14   demurrer.  ECF No. 1-9.  Defendant removed this Action to the United States District Court for the

15   Eastern District of California on January 31, 2020.  ECF No. 1.

16       After meeting-and-conferring regarding a potential motion to dismiss, the Parties stipulated

17   to Razo filing a Second Amended Complaint on March 6, 2020, which he did on July 30, 2020.

18   ECF Nos. 7, 9.  On August 13, 2020, Defendant filed a motion to dismiss the Second Amended

19   Complaint, which Razo opposed.  ECF Nos. 10–13, 15.  This Court denied Defendant's motion on

20   October 14, 2021, though granted Razo leave to file an amended complaint "to address the issue of

21   a prayer for damages in connection with his wage statement claim."  ECF No. 38, 10:6–8.  Razo

22   filed the operative Third Amended Complaint on October 14, 2021.  ECF No. 41.

23       While this matter was pending, Defendant settled *Samuel Wallack, et al. v. AT&T Mobility*

24   *Services, LLC* (Super. Ct. San Bernardino County (2021) Case No. CVISB2117915) ("*Wallack*")—

25   a separate class and representative action pending before the Hon. David Cohn of the Superior

26   Court of California, County of San Bernardino and asserting the same claims as alleged here.  ECF

27   No. 50.  Razo wished to intervene in *Wallack*; and thus sought—and, on October 27, 2021,

28   received—the appointment of his attorneys at Bradley/Grombacher LLP as interim class counsel.

ECF No. 45. Nevertheless, the *Wallack* Court refused to allow Razo to intervene. ECF No. 49. And, on November 1, 2021, it preliminarily approved the *Wallack* Settlement, which covers "[a]ll persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from August 1, 2015 to November 1, 2021." ECF No. 50, 3:1–4. The settlement in *Wallack* received final approval on March 18, 2022, and an "Amended Order Nunc Pro Tunc Granting Final Approval of Class Action Settlement and Judgment was issued on April 19, 2022.

**B.    Settlement Negotiations.**

Recognizing that the *Wallack* settlement was likely to receive final approval, the Parties turned their attention towards fully, finally, and forever settling the claims that would remain in this Action post-*Wallack*. Defendant provided Class Counsel with several policies and documents—as well as other pieces of data—relevant to Razo's claims. The Parties then engaged in substantial, arms-length settlement negotiations from December 24, 2021 until January 31, 2022. During these negotiations, Defendant shared key data points for those non-exempt employees who have worked at AT&T since November 2, 2021. After considerable negotiations, the Parties reached an agreement in principle to settle the case, the terms of which were negotiated over the following weeks and finalized in Agreement the Parties now ask the Court to preliminarily approve. *See* Declaration of Kiley L. Grombacher, **Exhibit 1** ("Settlement Agreement").

**III.    SUMMARY OF SETTLEMENT**

The principle terms of the Agreement are as follows:

**A.    The Proposed Class**

All persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from November 2, 2021, to the date the Court grants final approval of this Settlement. Settlement Agreement, ¶ 1., and/or All persons who filed a timely Request for Exclusion from the class action settlement in the matter of *Samuel Wallack, et. al. v. AT&T Mobility Services,* LLC, Case Number CIVSB2117915, pending in the Superior Court for the State of California, County of San Bernardino. Settlement Agreement, ¶ 1.

///

## B.    Settlement Terms

Under the Agreement, Defendant will pay $575,000 ("Gross Settlement Amount" or "GSA") to fully and finally settle this matter.  In no event will Defendant be required to pay more than the Gross Settlement Amount, except for the employer's share of payroll taxes, which Defendant will pay separately from and in addition to the Gross Settlement Amount.  No portion of the GSA will revert to Defendant for any reason.  The following deductions from the GSA will be made, subject to the Court's approval:

### i.    Class Representative's General Release Payment

Subject to Court approval, Plaintiff shall receive a Service Enhancement not to exceed $10,000 in consideration for a general release of all claims against Defendant.  The payment shall be made from the GSA.  If the amount awarded is less than the amount requested, the difference shall become part of the Net Settlement Amount ("NSA").  The payment is in consideration for a general release of Plaintiff's claims against Defendant.  *See* Settlement Agreement, ¶¶ 24, 29.

Moreover, as representative for the absent Class Members, Plaintiff risked a potential judgment taken against him for attorneys' fees and costs if this matter had not been successfully concluded.  Case law holds that a losing party is liable for the prevailing party's costs.  *See Early v. Superior Court* (2000) 79 Cal.App.4th 1420, 1433.  And in some wage and hour actions, such as this case, pursuant to *California Labor Code* § 218.5, the prevailing party can be liable for attorneys' fees as well.  Plaintiff would therefore have had a cost bill entered against him leaving him ultimately liable for potentially hundreds of thousands of dollars in the unexpected possibility that Class Counsel did not meet their obligation to cover those costs.  Unfortunately, there have been judgments like this entered against class representatives.[2]  The risk of payment of Defendant's costs, alone, is a sufficient basis for an award of the requested service award.  Few individuals are willing to take this risk, and Plaintiff championed a cause on behalf of others with potentially huge

---

[2] *See*, e.g. *Koehl v. Verio, Inc.*(2006) 142 Cal.App.4th 1313, 1328 (a wage and hour class action where Defendant prevailed at trial, the named Plaintiffs were held liable, jointly and severally for the Defendant's attorneys' fees); *Whiteway v. Fedex Kinkos Office & Print Services, Inc.* (N.D. Cal., Dec. 17, 2007, No. 05-2320) 2007 U.S. Dist. LEXIS 95398 (a wage and hour misclassification case lost on summary judgment, after the case was certified, the named Plaintiff was assessed costs in the sum of $56,788.).

1  monetary risks.

2      Courts have regularly and routinely granted approval of settlements containing such

3  enhancements. *See*, e.g., *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 977. The typical

4  enhancement award in wage and hour cases ranges from $5,000 to $75,000, although some awards

5  may be higher. Additionally, the modern-day work force is mobile, with employees holding several

6  jobs over the span of their career. It is also true that prospective employers in this computer, high-

7  tech age "Google" and/or do extensive background checks and have access to court databases to

8  see if applicants have ever filed a lawsuit or have ever been sued. Here, Plaintiff's conduct will not

9  be lost on a prospective employer who has to choose between an applicant who has never sued an

10  employer and one who has done so. The requested award far from compensates Plaintiff for

11  opportunities he may lose in the future because of the exercise of a Constitutional right to Petition

12  the Courts for redress of a grievance.

13           **ii.    Attorneys' Fees and Costs**

14      Subject to Court approval, Plaintiff's Counsel shall request an award of attorneys' fees in

15  an amount of $191,666.67 (one third of the GSA). *See* Settlement Agreement, ¶ 23. This includes

16  work remaining in documenting the settlement, securing Court approval, ensuring the settlement is

17  fairly administered, and obtaining dismissal of the action. Also, subject to Court approval,

18  Plaintiff's Counsel shall request a reimbursement from the GSA for actual litigation costs in an

19  amount not to exceed $10,000.00. *See* Settlement Agreement, ¶ 23.

20      Class Counsel will submit their fee motion, supporting their request for one third of the

21  GSA 28 days before the Final Approval hearing. Settlement Agreement, ¶ 38(a).

22           **iii.    Payment to the LWDA and PAGA Releasees**

23      Subject to Court approval, the Agreement allots $10,000.00 to PAGA penalties. Seventy-

24  five percent (75% or $7,500.00) of the PAGA Payment shall be paid to the Labor and Workforce

25  Development Agency ("LWDA") and twenty-five percent (25% or $2,500.00) of the PAGA

26  Payment will be distributed to the Aggrieved Employees on a pro rata basis based on the number

27  of workweeks that they worked from November 2, 2021, to the date of Final Approval. *See*

28  Settlement Agreement, ¶ 26(b).

#### iv.     Settlement Administration Expenses

After obtaining competing bids from multiple administrators, the Parties have agreed to the appointment of Atticus Administration, LLC ("Atticus") as the settlement administrator.  Atticus is an experienced class administration company that has acted as claims administrator in numerous wage and hour cases.  The Agreement allots an amount not to exceed $30,000.00 to administer the Settlement.  *See* Settlement Agreement, ¶ 25

The Administration Costs will be paid from the GSA.  If Atticus's actual costs or the amount awarded is less than the amount allotted in the Agreement, the difference shall become part of the NSA and distributable to Participating Class Members.  These costs are reasonable, as Atticus will mail notice packets to the class, maintain a website which has information about the Settlement and links to the settlement documents, and keep track of objections and requests for exclusion from the Settlement.  Should preliminary and final approval be granted by the Court, Atticus will work with the Parties to facilitate the funding of the GSA, disbursement of all Court-approved payments, and disbursement of the NSA to Participating Class Members.

#### v.     Settlement Payments to Class Members

After all deductions have been made, it is estimated that $330,833.33\("Net Settlement Amount" or "NSA") will be available for disbursement to Participating Class Members (all Class Members who do not submit a valid and timely request to exclude themselves from this Settlement).  The money available for payout to these individuals comes out of the NSA, which is what remains of the GSA after subtracting all Court approved attorneys' fees and costs, the Class Representative General Release Payments, Administration Costs, and the PAGA Payment. Each Class Member who does not timely opt-out of the Settlement will receive a *pro rata* share (their "Class Member Payment") of the NSA based on the number of weeks that he or she worked in each position covered by the Settlement from November 2, 2022, to the date of Final Approval. *See* Settlement Agreement, ¶ 26.

Half of the Class Member Payment constitutes wages for the purposes of IRS reporting, and will be reported to the IRS pursuant to form W-2, while the other half constitutes payments for non-wage penalties, damages, and interest and will reported to the IRS pursuant to form 1099.  The

1  Aggrieved Employee Payment constitutes payments for non-wage penalties, damages, and interest

2  and will reported to the IRS pursuant to form 1099.  The Settlement Administrator (and not

3  Defendant) will remit all federal and state taxes owed by Defendant and will issue W2s and 1099s

4  on all funds distributed.  *See* Settlement Agreement, ¶ 27.

5  **vi.    Funding and Distribution of Settlement Funds**

6           Subject to the Court's final approval and provided that there are no objections or appeals to

7  the Court's Final Approval Order and Judgment, Defendant will provide Atticus an updated

8  electronic database for the Class Members, containing each Class Member's name and last-known

9  mailing address, telephone number, the Class Member's Social Security number, and dates of

10 employment, as reflected in Defendant's records, through the date of final approval within 21 days

11 after the Effective Final Settlement Date.[3]  *See* Settlement Agreement, ¶ 40(b).  Within 14 days

12 after Defendant provides the Settlement Administrator with the updated electronic database,

13 Defendant will transfer the Gross Settlement Amount, plus all employer-side payroll taxes due on

14 wage payments made from the Net Settlement Amount to Class Members and the Settlement

15 Administrator's fees, to the Settlement Administrator via wire transfer.  *See* Settlement Agreement,

16 ¶ 40(c).  Within 7 days after the Defendant funds the Settlement, the Settlement Administrator shall

17 distribute checks to all Participating Settlement Employees.  *See* Settlement Agreement, ¶ 40(d).

18 **vii.    Uncashed Checks**

19          Pursuant to the Agreement, a Class Member must cash his or her Class Settlement Share

20 check, and any remaining Aggrieved Employees his or her Aggrieved Employee Payment check,

21

22          [3] "Effective Date" means the date on which this Settlement is deemed final. If no objection

23 is filed to the Settlement from a Class Member, or if an objection to the Settlement is filed by a
   Class Member who lacks standing to object, then the Settlement is final on the date the Court grants

24 final approval of the Settlement. In the event a Class Member with standing to object to the
   Settlement files a timely objection to the Settlement that is overruled by the Court, then the

25 Settlement is final once the time for the filing of any appeal from the Court's judgment approving
   this Settlement expires, assuming no timely appeal is filed by that objecting Class Member. In the

26 event a Class Member with standing to object to the Settlement files a timely objection to the
   Settlement that is overruled by the Court, and that Class Member files a timely appeal from the

27 judgment approving the Settlement, then the Settlement is final on the date the appeal is dismissed
   or withdrawn; or is final after final affirmation of the judgment on appeal if the appeal is not

28 dismissed or withdrawn. *See* Settlement Agreement, ¶ 5.

1    within 90 calendar days after it is mailed to him or her.  If a check is returned to the Settlement

2    Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the

3    Class Member or Aggrieved Employee at his or her correct address.  If any check is not cashed

4    within 90 days after its mailing to the Class Member or Aggrieved Employee, the Settlement

5    Administrator will distribute the unclaimed funds represented by the uncashed check to the

6    California State Controller's Office, Unclaimed Property Division in the name of the Class

7    Member, where the Class Member or Aggrieved Employee can later claim their funds.  *See*

8    Settlement Agreement, ¶ 41.

9                          **viii.    Released Claims**

10              In exchange for Defendant's promise to make the payments provided for in the Agreement,

11    upon the Court's final approval of this Settlement, Participating Class Members will fully release

12    and discharge Defendant and the Released Parties of any and all known and unknown claims as

13    alleged in, and that could have been alleged based on the facts of, the operative Third Amended

14    Complaint.  This includes, but is not limited to, statutory, constitutional, contractual or common

15    law claims for wages, damages, unpaid costs or expenses, penalties, liquidated damages, punitive

16    damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, arising out of or

17    based upon any provision of the California Labor Code, California Industrial Welfare Commission

18    Wage Orders, and California Business and Professions Code § 17200, *et seq*.; including, without

19    limitation, the following categories of allegations, to the fullest extent such claims are releasable

20    by law: (a) all claims for failure to pay wages, including overtime premium pay and the minimum

21    wage; (b) all claims for the failure to provide meal and/or rest periods in accordance with applicable

22    law, including payments equivalent to one hour of the employee's regular rate of pay for missed

23    meal and/or rest periods and alleged non-payment of wages for meal periods worked and not taken;

24    (c) all claims for the alleged omission of any kind of remuneration when calculating an employee's

25    regular rate of pay; and (d) any and all claims for recordkeeping or pay stub violations, claims for

26    timely payment of wages and associated penalties, and all other civil and statutory penalties.  *See*

27    Settlement Agreement, ¶ 30.  Only Plaintiff has agreed to a general release of all claims, including

28    a waiver under California *Civil Code* section 1542.  *See* Settlement Agreement, ¶ 29.

Additionally, upon the Court's final approval of this Settlement, Plaintiff—on behalf of the State of California, the LWDA, and the Aggrieved Employees—will releases and discharge Defendant and the Released Parties of any and all known and unknown claims as alleged in, and that could have been alleged based on the facts of, the operative complaint.  This includes, but is not limited to, all claims for penalties, attorneys' fees, litigation costs, restitution, or equitable relief, recoverable through PAGA and arising out of or based upon any provision of the California Labor Code or California Industrial Welfare Commission Wage Orders; including, without limitation, the following categories of allegations, to the fullest extent such claims are releasable by law: (a) all claims for failure to pay wages, including overtime premium pay and the minimum wage; (b) all claims for the failure to provide meal and/or rest periods in accordance with applicable law, including payments equivalent to one hour of the employee's regular rate of pay for missed meal and/or rest periods and alleged non-payment of wages for meal periods worked and not taken; (c) all claims for the alleged omission of any kind of remuneration when calculating an employee's regular rate of pay; and (d) all claims for recordkeeping or pay stub violations, claims for timely payment of wages and associated penalties, and all other civil and statutory penalties.  *See* Settlement Agreement, ¶ 31.

## IV.    <u>CONDITIONAL CERTIFICATION SHOULD BE GRANTED</u>

A class action may be certified if all four prerequisites under Rule 23(a) are satisfied and at least one subsection under Rule 23(b) is met. *Doninger v. Pacific Northwest Bell, Inc.* (9th Cir. 1977) 564 F.2d 1304.  The requirements of Rule 23(a) are referred to as: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.  *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.* (9th Cir. 2010) 593 F.3d 802, 806. As will be discussed below, these requirements are met here.  In addition, the Parties agreed to certification of the Class under Rule 23(b)(3) which has the added requirement of "predominance." *Id.*  Defendant does not oppose certification for the purpose of settlement only.  As such, the Parties seek provisional certification of the Class.  Should the Settlement not be approved or not become final for any reason, the Parties agree no class will be certified, and Defendant's agreement to certify a class conditionally for settlement purposes only will not be used in connection with any subsequent motion for class

1    certification.

2      **A.**  **Rule 23(a) Class Requirements are Met**

3        **i.**  **Numerosity and Ascertainability**

4      Rule 23(a)(1) is typically referred to as "numerosity" in that it requires a class that is "so

5    numerous that joinder of all members is impracticable." The term "impracticable" does not mean

6    "impossible," and only refers to "the difficulty or inconvenience of joining all members of the

7    class." *Advertising Specialty National Association. v. Federal Trade Commission* (1st Cir. 1956)

8    238 F.2d 108, 119. Here, there are approximately 3,900 class members, all of whom were subject

9    to AT&T's allegedly commonly applied unlawful policies, among other derivative wage and hour

10   claims.  As such, it would not be practical to join so many parties to the lawsuit.  Therefore, as the

11   Court noted in its prior Order, the numerosity requirement is satisfied. (Order at p.8)

12       **ii.**  **Commonality**

13     Rule 23(a) requires that "there are questions of law or fact common to the class." However,

14   "all questions of fact and law need not be common to satisfy the rule...[and] [t]he existence of

15   shared legal issues with divergent factual predicates is sufficient, as is a common core of salient

16   facts coupled with disparate legal remedies within the class. *Hanlon v. Chrysler Corp*. (9th Cir.

17   1998)150 F. 3d 1011, 1019.  The Ninth Circuit has held that commonality exists "where the lawsuit

18   challenges a system-wide practice or policy that affects all of the putative class members."

19   *Armstrong v. Davis* (9th Cir. 2001) 275 F.3d 849, 868.

20     The commonality requirement is satisfied in this action.  Here, the class claims of

21   Defendant's employees turn upon answers to overarching common questions regarding

22   Defendant's policies and procedures that are capable of class-wide resolution for settlement

23   purposes.  For settlement purposes, the common questions raised by employees, include:

24   (1) whether Defendant's timekeeping policies resulted in compensable off-the-clock work and

25   subsequent failure to pay all regular and overtime hours worked; (2) whether Defendant's omission

26   of certain types of remuneration when calculating its employee's regular rate of pay resulting in a

27   failure to pay all wages owed; (3) whether Defendant provided its employees with all requires meal

28   and rest periods; (4) whether Defendant paid its employees a penalty equivalent to one hour of their

regular rate of compensation whenever that worker missed a meal or rest period; (5) whether Defendant failed to pay all owed wages timely; and (6) whether Defendant failed to provide employees with wage statements compliant with California law.  Here, as the Court noted, "it appears resolution of the issues-including whether AT&T's policies violated California wage and hour law-- would apply to the claims of each of the Class Members" thus "the commonality requirement is satisfied." (Order at pp.8-9).

### iii.    Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members.  *Rodriguez v. Hayes* (9th Cir. 2010) 591 F.3d 1105, 1124.  While typicality was not satisfied where, as before, Plaintiff was not a member of the Settlement class, he has remedied such deficiency.  Under the revised settlement class definition, Plaintiff and the Class Members all worked for Defendant as non-exempt employees.  Further, Plaintiff contends that they were all subject to the same allegedly non-compliant policies and practices outlined above.

### iv.    The Class Representative and His Counsel are Adequate

The proposed Class Representatives and their counsel have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy requirement has two prongs, the first being "that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation." *In re Surebeam Corporation Securities Litigation* (S.D. Cal., Jan. 5, 2004 No. 03 CV 1721JM(POR)) 2004 WL 5159061 *5.  In this case, Plaintiff's Counsel, Bradley/Grombacher, LLP, meet this standard and have been appointed class counsel in numerous class actions—including as Interim Class Counsel in this Action.  *See* Grombacher Decl. ¶ 24; ECF Nos. 42, 45.

The second prong of the adequacy test is "that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *In re Surebeam Corporation Securities Litigation* (S.D. Cal., Jan. 5, 2004 No. 03 CV 1721JM(POR)) 2004 WL 5159061, *1-2. Here, there is no evidence of antagonism between the Class Representative's interests and those of

1   the Class.  The Class Representative has litigated this case in good faith and the interests of the

2   Class Representative are aligned with those of the Class as they all share a common interest in

3   challenging the legality of the alleged policies and procedures on which the claims are based.  There

4   is also no evidence of any collusion between the Parties.  Plaintiff's counsel negotiated with

5   Defendant to pay $575,000.00 to settle and counsel was only able to negotiate this sum after

6   extensive exchange and analysis of information and data.  These reasons compel that Plaintiff

7   should be appointed as Class Representative.  Defendant does not oppose the appointment of

8   Plaintiff as Class Representative for settlement purposes only.  At Final Approval, Class Counsel

9   will request final approval of a Class Representative Service Enhancement to compensate Plaintiff

10  for agreeing to a general release of his claims, for his efforts in prosecuting this matter, and for the

11  risks and stigma he now faces for doing so.  Again, while the Court rightly declined to find Plaintiff

12  adequate under the prior motion, Plaintiff has remedied his deficiency and is now a members of the

13  proposed settlement class.

14              **v.      Rule 23(b) Standards are Satisfied**

15                    **1.      Common Issues Predominate**

16          In addition to the Rule 23(a) requirements, a court must find that common issues of law or

17  fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

18  With regard to the requirements of subsection (b), Rule 23(b)(3) allows class certification where

19  common questions of law and fact predominate over individual questions and class treatment is

20  superior to individual litigation.  The predominance inquiry "tests whether proposed classes are

21  sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*

22  (1997) 521 U.S. 591. To determine whether common questions predominate, a court is to consider

23  "the relationship between the common and individual issues." The proposed Class in this case is

24  sufficiently cohesive to warrant adjudication by representation.   Furthermore, because the

25  "predominance" factor concerns liability, any variation in damages is insufficient to defeat class

26  certification.  *Leyva v. Medline Industries Inc.* (9th Cir. 2013) 716 F.3d 510, 514.  As noted above,

27  Plaintiff contends all claims in this litigation are based on allegedly common, class-wide policies

28  and procedures, and that liability could be determined on a class-wide basis.  *Brinker Restaurant*

1  *Corp. v. Superior Court*, (2012) 53 Cal.4th 1004, 1033.

2  **2.    The Class Action Device is Superior**

3      The class action device is "superior to other available methods for the fair and efficient

4  adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Given the size of the Class, it is clear

5  that the "superiority" element is satisfied.  Certification of the Class will allow class members'

6  claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism would

7  provide.  Alternative methods of resolution would be individual claims for relatively small amount

8  of damages. *Hanlon v. Chrysler* (9th Cir. 1998) 150 F. 3d 1011 at 1019-20. These claims "would

9  prove uneconomic for potential plaintiffs because 'litigation costs would dwarf potential

10  recovery.'" *Id.* at 1023.

11  **3.    No Manageability Issues Preclude Certification**

12      Finally, no issues of manageability preclude certification.  A court faced with a request for

13  a settlement-only class need not inquire whether the case would present intractable problems of

14  trial management, even though other requirements under Rule 23 must still be satisfied.  *See, e.g.,*

15  *Lazarin v. Pro Unlimited, Inc.* (N.D. Cal. July 11, 2013 No. C11-03609 HRL)) 2013 WL 3541217,

16  \*5.  Nevertheless, as discussed herein, the proposed plan of distribution and settlement process are

17  efficient and manageable.

18  **vi.    Plaintiff's Counsel Should be Appointed as Class Counsel**

19      Rule 23(g) requires that courts consider the following four factors when appointing

20  settlement class counsel: (1) whether counsel has investigated the class claims; (2) whether counsel

21  is experienced in handling class actions and complex litigation; (3) whether counsel is

22  knowledgeable regarding the applicable law; and (4) whether counsel will commit adequate

23  resources to representing the class. *See Grant v. Capital Mgmt. Servs., L.P.* (S.D. Cal. Dec. 11,

24  2013 No. 10–cv–2471–WQH (BGS)) 2013 WL 6499698, \*2-3. It is clear from the record presented

25  herein that Plaintiff's Counsel should be appointed Class Counsel.  This Court has already found

26  Plaintiff's Counsel satisfied the Rule 23(g) factors when it appointed them Interim Class Counsel.

27  ECF Nos. 42, 45.  Additionally, Plaintiff's Counsel is highly experienced and knowledgeable

28  regarding complex wage and hour class actions like this one.  Grombacher Decl. ¶ 19.  Plaintiff's

1    counsel has prosecuted numerous cases on behalf of employees for California Labor Code

2    violations and thus are experienced and qualified to evaluate the class claims and to evaluate

3    settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses.

4    Grombacher Decl. ¶ 19-24.  In sum, Plaintiff's counsel are fully committed to representing the class

5    in this case, have the skill and expertise to do it properly, and will continue to do so whether or not

6    the settlement is approved.    Accordingly, appointment of Bradley/Grombacher, LLP as

7    Class Counsel is appropriate.

8    **V.       THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

9           **A.       Court Approval Under Rule 23 Should be Granted.**

10          Rule 23(e) provides that any compromise of a class action must receive court approval.  The

11   court has broad discretion to grant approval and should do so where the proposed settlement is

12   "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler* (9th Cir. 1998) 150

13   F. 3d 1011 at 1026.  In deciding whether a settlement should be approved, the Ninth Circuit has a

14   "strong judicial policy that favors settlement, particularly where complex class action litigation is

15   concerned." *In re Heritage Bond Litigation* (C.D. Cal. June 10, 2005 No. 02-ML-1475) 2005 WL

16   1594403. Court approval involves a two-step process in which a court first determines whether a

17   proposed class action settlement deserves preliminary approval and then, after notice is given to

18   class members, whether final approval is warranted.  *Manual of Complex Litigation* (4th ed. 2004)

19   § 21,632.  At the preliminary approval stage, the Court need only "determine whether the proposed

20   settlement is within the range of possible approval." *Gautreaux v. Pierce* (7th Cir. 1982) 690 F.2d

21   616, 621 n.3.  A class action settlement should be approved if "it is fundamentally fair, adequate

22   and reasonable." *Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276.

23          Although at preliminary approval, the Court need not engage in the rigorous analysis

24   required for final approval (see *Manual for Complex Litigation* (4th ed. 2004) § 22.661 at 438), the

25   ultimate fairness determination will include balancing several factors, including:

26          the strength of plaintiffs' case; the risk, expense, complexity and likely duration of

27          further litigation; the risk of maintaining class action status throughout the trial; the

28          amount offered in settlement; the extent of discovery completed, and the stage of

the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement. *Officers for Justice v. Civil Service Com'n of City and Couty of San Francisco* (9th Cir.1981) 688 F.2d 615, 625.

Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunication cooperative v. Directv, Inc.* (C.D. Cal. 2004) 221 F.R. D. 523, 525-26. District courts have wide discretion in assessing the weight and applicability of each factor. *Id.*

**B.    The Settlement Resulted From Arm's-Length Negotiations.**

The Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] Parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. At all times, the Parties' negotiations were adversarial and non-collusive. Moreover, no indicia of potential collusion exists here where there is no reversion to Defendant, no disproportionate service payment to Plaintiff as class representative, and no disproportionately large attorneys' fee award.

In reaching the proposed settlement, Class Counsel's negotiation efforts took into consideration relevant factors such as the size of the class, the information and documents obtained through informal discovery, the common experience of Plaintiff, Defendant's projected liability, the expense of continued litigation, the uncertainty inherent in litigating complex matters, such as obtaining and maintaining class certification, Defendant's policies including its timekeeping and compensation practices, and the potential for appeals. Grombacher Decl. ¶35. Based on Class Counsel's experience handling similar such claims, they are of the opinion that the proposed settlement represents a favorable resolution for the Settlement Class as it provides for compensation to the absent class members in an amount equal to full value for the *Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal. 5th claims alleged as well as significant recovery for the remaining alleged violations without the further expense and uncertainty of further litigation. Grombacher Decl. ¶57.

1    Moreover, the proposed settlement resolves any potential penalties against Defendant for

2    its allegedly unlawful conduct and also compensates Plaintiff fairly for his claims. *See generally*

3    Settlement Agreement. Accordingly, there can be no doubt that the proposed settlement before the

4    Court is the product of thorough arm's length and non-collusive negotiations between the Parties,

5    the Court should presume the fairness of the proposed settlement.

6    **C.    The Benefits Of The Proposed Settlement And Risks Of Continued Litigation.**

7    The factors noted above are commonly considered at preliminary approval.  The factors

8    here, in their respective levels of applicability, favor approval of the Settlement.  Plaintiff submits

9    and Defendant disputes that this case was factually and legally strong.  This matter was settled after

10    substantial informal and formal discovery, which included applicable policies, collective

11    bargaining agreements, and data pertaining to the Class.  Thus, at the point the Settlement was

12    initially agreed to, no one was in a better position than Plaintiff's Counsel to understand the

13    strengths and potential limitations of Plaintiff's case and thus evaluate the reasonableness of the

14    amount offered in settlement.  Grombacher Decl. ¶ 56.

15    Based on Class Counsel's review and analysis of the information and documentation

16    obtained in this Action, Class Counsel anticipates that if this matter were certified as a class action,

17    proceeded to trial, and resulted in a verdict for Plaintiff and the Class Members, they could recover

18    roughly two times the Gross Settlement Amount.  However, for the reasons described below, the

19    Court might ultimately determine the Claims are not suitable for class certification.  After all, the

20    class certification issue was lost in the *Ayala*, highlighting the risks here.  Grombacher Decl. ¶ 56.

21    Under the proposed settlement, Class Members will avoid the risks of litigation (including the

22    possibility that class certification will be denied and no relief will be available to the class members)

23    and receive in exchange for a release of claims a *pro rata* share of the Net Settlement Amount based

24    on the total number of covered workweeks they worked.  Settlement Agreement at ¶ 26(a).

25    Additionally, all unclaimed funds will be remitted to the California State Controller's Office,

26    Unclaimed Property Division in the name of the Class Member.  *Id.* at ¶ 41; *see also* Code Civ.

27    Proc. § 384.

28    Class Counsel is of the opinion that the proposed settlement is fair, reasonable and adequate

1   in light the following: Plaintiff contends that Defendant engaged in a systematic course of illegal

2   employment and payroll practices and policies, which were applied to all current and former non-

3   exempt employees of Defendant in California, and as a result of which, with respect to all Class

4   Members, Defendant failed to timely pay all wages due, including minimum wages and overtime

5   wages, failed to pay all penalties and premiums due, failed to provide meal and rest periods, failed

6   to record meal periods, failed to maintain required records, failed to furnish accurate itemized wage

7   statements, and failed to timely pay all wages owed; Defendant denies Plaintiff's claims;

8   Participating Class Members will receive compensation for Defendant's alleged violations without

9   further delay; the uncertainty of the outcome, risk and expense of litigation in complex class

10  actions; and that no amount of the Class Settlement Amount will revert back to Defendant, among

11  other things.  Grombacher Decl. ¶ 13.  The Settlement accounts for, and is fair and reasonable in

12  light of, the facts and legal arguments that offer support to Defendant's position with respect to

13  each of the claims, as described below.

14      **Meal and Rest Periods.** Defendant maintains that its written policies regarding meal and

15  rest periods comply with California law.  In its written policies, Defendant informed Class Members

16  that they are entitled, encouraged, and expected to take uninterrupted, duty-free meal and rest

17  periods.   Defendant maintains that it prohibits supervisors and managers from impeding or

18  discouraging Class Members from taking meal and rest periods.  Class Members are required to

19  self-report the start and end times of their meal periods on a daily basis, and the company does not

20  round these time entries.  If a Class Member feels unable to take their meal or rest periods because

21  of their work duties, Defendant's policy is that they are required to immediately inform their

22  supervisor to determine whether their duties can be adjusted to allow for a proper meal or rest

23  period.  If for any reason a Class Member is unable to take an uninterrupted, duty-free meal or rest

24  period, Defendant's policy is that they are required to record any time worked as well as the non-

25  compliant meal or rest period and advise their supervisor to ensure proper compensation.

26  Defendant pays (and has paid) premiums to Class Members who are unable to take a compliant

27  meal or rest period.  Defendant's policies include "Q&As" to address in advance any anticipated

28  questions Class Members may have about these processes.   Defendant has also established

complaint procedures for any Class Members who are prevented from taking their meal or rest periods or who do not receive the required premiums when they are unable to do so. Notwithstanding these policies, Plaintiff maintains there are instances in which Class Members are discouraged from or otherwise do not report each instance on which they were unable for any reason to take a compliant, uninterrupted, duty-free meal or rest period.  Because the failure to report such instances goes against Defendant's policy and implicates individualized facts, Plaintiff would face challenges seeking to certify a class with respect to these claims.

**Meal and Rest Period Premium / Regular Rate of Pay.**  Plaintiff also maintains that even when Defendant pays to Class Members a premium for a noncompliant meal or rest period, it fails to properly pay the premium by omitting certain components of compensation such as certain incentive payments, bonuses, or commissions in calculating the premium rate.  California's Supreme Court did not rule such a practice unlawful until July 15, 2021.  *See Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal. 5th 858.  And the bulk of liability that has accrued between July 15, 2021, and the date on which AT&T resolved this issue has been released through *Wallack*. Further, the monetary difference between the hourly rate used by Defendant in paying the premium and the regular rate required under *Ferra* is nominal, so the primary portion of any recovery for these claims consists mostly of statutory penalties under PAGA.  And even there, courts retain the discretion to lower penalties "if, based on the facts and circumstances of the particular case"—such as the sudden and unexpected reversal of the California Appellate Court's decision in *Ferra*— "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."[4] Cal. Lab. Code § 2699(e)(2).  Finally, Plaintiff still faces the challenge of certifying a class and proving damages.  The Settlement thus represents full value for damages arising from this issue and ensures certain relief for the Class Members.

**PAGA Recovery.**  Finally, PAGA permits this Court to "award a lesser amount than the maximum civil penalty amount . . . if, based on the facts and circumstances of the particular case,

---

[4] Any aggrieved employee is also limited to just the penalties available for the meal-and-rest period violations themselves, as presently unpaid meal and rest period premiums "do not entitle employees to pursue the derivative" waiting time or wage statement "penalties." *Naranjo v. Spectrum Security Services, Inc.* (2019) 40 Cal. App. 5th at 474 (*review granted* 257 Cal. Rptr. 3d 188 (2020)).

1    to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."

2    Cal. Lab. Code § 2699(e)(2).  Plaintiff's recovery pursuant to PAGA is thus uncertain not only for

3    the many of the reasons noted above, but also because any award is subject to the Court's discretion.

4         Here, Defendant has been implanting procedures to minimize any *Ferra* violation.  As such

5    it was unlikely that the Court would award maximum penalties for such claim.  Moreover, while

6    Plaintiff was confident in the strength of his claims, as is always the case with a trial, Plaintiff

7    needed to accept that there was a possibility that he would not prevail at trial. While "PAGA trials"

8    are a relatively new phenomenon, a number of PAGA trials have resulted in defense verdicts.  (See

9    e.g., *Childers v. Anthony Shenouda Inc*. (Super. Ct. L.A., County, 2013, No. BC517798) pending

10   in the Superior Court for the State of California, County of Los Angeles (trial of misclassification

11   case under PAGA resulting in a defense verdict after bench trial, the Honorable Elihu Berle

12   presiding); *Allen v. American Multi-Cinema Inc*. (Super. Ct. Alameda County, 2011, No. RG-11-

13   585502), pending in the Superior Court for the state of California, County of Alameda (trial of

14   seating claims under PAGA resulted in a defense verdict following a bench trial, the Honorable

15   George C. Hernandez); *Atempa v. Pama Inc.(Super. Ct. 2019,* No. 37-2013-00058208-CU-OE-

16   CTL), pending in the Superior Court for the State of California, County of San Diego (verdict for

17   plaintiff in the amount of $ 297,723 following bench trial on wage and hour case on behalf of 70

18   aggrieved employees, the Honorable Joel R. Wohlfeil presiding.) Thus, in the face of such

19   uncertainty, settlement was advantageous to Plaintiff, the LWDA and the aggrieved employees as

20   it secured some monetary recovery.

21        The proposed settlement thus provides Class Members with the opportunity to obtain relief

22   in a prompt and efficient matter, rather than through a lengthy litigation process with the potential

23   for appeals. As such, the proposed settlement is reasonable in light of all known facts and

24   circumstances, including the strengths and weakness of the claims and the risks associated with this

25   particular litigation.

26   **VI.    THE COURT SHOULD APPROVE THE PAGA SETTLEMENT**

27        Pursuant to Labor Code § 2699(l)(2), a settlement of a civil action brought under the PAGA

28   statute must be submitted to the LWDA and must be approved by the court, "ensuring that any

negotiated resolution is fair to those affected." *Williams v. Superior Court* (2017) 3 Cal. 5th 531, 549. This settlement meets that threshold.

On or about May 26, 2022, Class Counsel submitted the revised stipulation of class action and PAGA settlement to the LWDA as required by the Labor Code. Grombacher Decl. ¶ 54. The proposed settlement allocates $10,000 for civil penalties pursuant to PAGA, with seventy-five percent (75%) of the allocation to be paid to the LWDA. Settlement Agreement at ¶ 6. The proposed allocation of $10,000 to PAGA is an exceptional outcome in light of all known facts and circumstances as well as the fact that civil penalties under PAGA are discretionary.

"Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action." *Kim v. Reins Int'l Cal., Inc.* (2020) 9 Cal. 5th 73, 81. As a result, "in wage and hour class action cases that settle, which are the overwhelming majority of such cases, very little of the total settlement is paid to PAGA penalties in order to maximize payments to class members." *Magadia v. Wal-Mart Assocs.* (N.D. Cal. 2019) 384 F. Supp. 3d 1058, 1101 (*reversed on other grounds by* 999 F.3d 668 (9th Cir. 2021)); *see also Smith v. Am. Greetings Corp.* (N.D. Cal. May 19, 2016) 2016 U.S. Dist. Lexis 66247 (granting final approval of class action settlement allocating $37,500 of $4 million settlement to PAGA); *Willner v. Manpower Inc.* (N.D. Cal. June 20, 2015) 2015 U.S. Dist. Lexis 80697 (granting final approval of a class settlement allocating $65,655 of $8.75 million settlement to PAGA); *Chu v. Wells Fargo Investments, LLC* (N.D. Cal. Feb. 15, 2011) 2011 U.S. Dist. Lexis 15821 (approving $10,000 PAGA allocation in $6.9 million settlement).

In fact, courts have held that no part of the settlement must necessarily be allocated and distributed to the LWDA. *See, e.g., Nordstrom Commissions Cases* (2010) 186 Cal.App.4th 576, 589 (affirming a settlement allocating $0 of $6.4 million settlement to PAGA). The $7,500 payment to the LWDA is thus more than adequate "to supplement" funding the agency's "enforcement of labor laws" and "education of employers and employees about their rights and responsibilities under" the Labor Code. Cal. Lab. Code § 2699(i).

Furthermore, if a higher amount is allocated to PAGA, the burden to pay civil penalties would effectively shift to the Class Members since a higher allocation would reduce the amount

that the Class Members would ultimately receive under the proposed settlement.    Although this burden shifting may achieve the enforcement objective of the statute, it would do so at the expense of the employees that the statute was designed to protect.    Accordingly, the proposed allocation of $10,000 to PAGA, $7,500 of which is being paid to the LWDA, strikes a balance between the interest of all the parties, including the LWDA and general public, by penalizing the employer and providing relief to the Settlement Class Members.    As such, the proposed settlement is fair, adequate, and reasonable.    Plaintiff thus respectfully requests that the Court approve the proposed LWDA payment.

## VII.    NATURE AND METHOD OF NOTICE

### A.    Data to Administrator and Notice Mailing

The Settlement Employee Data is due to Atticus within 21 days of the Court granting preliminary approval of the proposed Settlement.    *See* Settlement Agreement at ¶ 33(a).    After performing a search based on the National Change of Address Database to update and correct any known or identifiable address changes and performing any necessary skip traces, Atticus will mail the Notice to Class Members via first-class regular U.S. Mail within 14 days after receipt of the Data.    *See* Settlement Agreement at ¶ 33(b).    The Settlement Employees will have 30days from the mailing date of the notice packet to opt-out of or file objections to the Settlement.    *See* Settlement Agreement at ¶ 34.

### B.    The Notice Method Meets the Requirements of Rule 23

Rule 23(c)(2) requires that the notice inform prospective class members of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3) generally requires the same concepts.    "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Newberg, 2 *Newberg on Class Actions* §8.32 at 8-103.    The proposed notice here, which is attached to the Agreement as Exhibit B, meets all of these

1   requirements.  *See* Grombacher Decl. ¶ 3, Ex. 1.  Thus, it is respectfully requested the Court order

2   the Notice adequately notifies the class of the proposed Settlement.

3   **VIII.    <u>CONCLUSION</u>**

4       Based on the foregoing, Plaintiff respectfully requests that the Court grant preliminary

5   approval of the proposed settlement, conditionally certify the Class, enter the proposed Preliminary

6   Approval Order submitted herewith, and set a Final Approval Hearing.

7

8   DATED:  May 27, 2022                    **BRADLEY/GROMBACHER, LLP**
                                            **LAW OFFICES OF SAHAG MAJARIAN, II**

9

10

11                                          By: */s/ Kiley L. Grombacher*
                                                Marcus J. Bradley, Esq.
12                                              Kiley L. Grombacher, Esq.
                                                Lirit A. King, Esq.
13                                              Sahag Majarian II, Esq.

14                                          Attorneys for Plaintiff and Proposed Class

MEM. OF LAW ISO MOT. FOR PRELIMINARY APPROVAL OF CLASS ACTION & PAGA SETTLEMENT