1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11  LUIS M. SALAS RAZO, on his own behalf of )   Case No.: 1:20-cv-0172 JLT HBK
and all others similarly situated,            )

12                                            )   AMENDED ORDER GRANTING PLAINTIFF'S
                                              )   MOTION FOR PRELIMINARY APPROVAL OF
13           Plaintiff,                       )   CLASS SETTLEMENT

14      v.                                    )   (Docs. 75, 79)
                                              )
15  AT&T MOBILITY SERVICES, LLC, and          )
DOES 1 through 100,                           )
16                                            )
             Defendants.                      )
17  _____ )

18          Luis Salas Razo asserts AT&T Mobility Services failed to comply with California's wage and

19  hour laws by failing to pay all wages due and provide proper meal and rest breaks.  Razo now seeks

20  preliminary approval of a settlement reached in this action.  Specifically, Razo seeks: (1) conditional

21  certification of the settlement class; (2) preliminary approval of the settlement terms; (3) appointment

22  of Razo as the class representative; (4) appointment of the firm of Bradley/Grombacher LLP as class

23  counsel; (5) approval of the class notice materials; (6) appointment of Atticus Administration, LLC, as

24  the settlement administrator; and (7) scheduling for final approval.  (Doc. 75.)

25          The Court reviewed the proposed settlement between the parties, as well as the moving papers,

26  and finds the matter suitable for decision without oral arguments pursuant to Local Rule 230(g) and

27  General Order 618.  For the following reasons, the motion for preliminary approval of the class

28  settlement is **GRANTED**.

## BACKGROUND

Razo was employed a sales representative at the AT&T Mobility Store located in Madera, California.  (Doc. 41 at 4, ¶ 11.)  Razo asserts he worked for AT&T "for approximately eleven years" until his termination in June 2018.  (*Id.*)  He alleges AT&T "routinely failed to properly calculate the overtime and double time rate of pay."  (*Id.* at 6, ¶ 25.)  Razo asserts AT&T "failed to include its employees' total compensation including bonuses and commissions when calculating the regular rate for the purposes of determining overtime wages owed and thus routinely underpaid employees for overtime wages owed."  (*Id.*)  Razo contends this underpayment was "evidenced in [his] paycheck and accompanying wage statement issued June 13, 2018."  (*Id.*, ¶ 26.)

He alleges the wage statements also "failed to properly list all hours worked which again resulted in an underpayment of wages including overtime and double time wages to employees."  (Doc. 4 at 6, ¶ 27.)  He contends, "[t]his resulted in failure to pay wages for all hours worked at appropriate rates, and overtime violations for work performed over eight (8) hours per day and/or forty (40) hours per week."  (*Id.*)  For example, Razo asserts his wage statement from June 13, 2018, "incorrectly reflects that the total hours worked because the hours associated with all of the line items add up to 106.08, but the total hours worked line item only lists 81.98 hours."  (*Id.* at 7, ¶ 27.)

Razo asserts he and others "received paychecks without proper wages, as meal period premiums were not paid at the proper rate, and the regular rate of pay was miscalculated."  (Doc. 41 at 7, ¶ 28.)  Razo contends AT&T paid premiums for missed meal periods at his "base hourly rate, rather than the regular rate of pay."  (*Id.*)  According to Razo, the miscalculation was "evidenced in [his] paycheck and accompanying wage statement issued June 1, 2018, which shows the untaken meal break premium is paid at [the] base hourly rate," without incorporating his commission in the premium rate paid.  (*Id.*)

Razo contends "on routine basis he and all other aggrieved employees received wage statements in violation of Labor Code §226, as hours and rates were not properly shown on wage statements."  (Doc. 41 at 7, ¶ 29 (emphasis omitted).)  He alleges, "where there are payments for items such as cash awards, commission, taxable non-cash-awards, miscellaneous payment, or overtime 'true up' payments, there are no specific details as to rate or hours in the description or analysis that make

up the payment." (*Id.*)  He asserts the wage statements also violated California law because: "premium pay for meal period violations were paid at the… base hourly rate, rather than his regular rate of pay; the total hours listed are incorrect because the hours associated with the wage statement's line items exceed the number of total hours worked listed; and the wage statements list improper overtime rates because [AT&T] omitted items such as 'COMMISSION (MOBILITY)' when calculating its employee's regular rate of pay." (*Id.* at 7-8, ¶ 31.)

According to Razo, due to the miscalculated wages, AT&T also failed "to pay for all wages due prior to termination." (Doc. 41 at 8, ¶ 32.)  In addition, Razo alleges that his "last day of work was in June 2018, but since such date four additional payments were made with the latest payment made as late as August 2018 well more than thirty (30) days after he ceased employment." (*Id.*, ¶ 35.)  He reports these "payments consisted of the final payment of wages described as (1) Cash Awards, (2) Commission, (3) Taxable non-cash Awards, (4) Misc. Payment, and (5) recalculation of overtime differential pay." (*Id.* at 9, ¶ 36.)  Razo contends that AT&T "knew or should have known, that all other employees, including Plaintiff, were entitled to receive all wages at appropriate rates, all overtime at appropriate rates, and all commissions due at the time their employment ceased," and knowingly and willfully failed to pay the wages due upon termination.  (*Id.*, ¶¶ 36-37.)

On May 29, 2019, Razo provided notice to the Labor and Workforce Development Agency and AT&T "of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations." (Doc. 41 at 9, ¶ 42 (emphasis omitted).)  He asserts the LWDA did not respond to the notice.  (*Id.*, ¶ 43.)

On August 27, 2019, Razo initiated this action by filing a class complaint in Madera County Superior Court, Case No. MCV081925.  (Doc. 1-4 at 5.)  Razo filed an amended complaint in the state court on January 8, 2020.  (Doc. 1-9.)  AT&T initiated the matter before this Court by filing a notice of removal on January 31, 2020.  (Doc. 1.)  Razo further amended the pleadings on July 30, 2020, and October 15, 2021. (Docs. 9, 41.) The Third Amended Complaint is now the operative pleading.

Razo identifies the following causes of action in the TAC: (1) failure to pay for all hours worked; (2) failure to pay overtime wages; (3) failure to pay wages due at termination in violation of Cal. Labor Code §§ 201-203; (4) failure to furnish accurate, itemized wage statement in violation of

Cal. Labor Code § 226; (5) unlawful and unfair conduct in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; and (6) civil penalties under California's Private Attorney General Act.  (Doc. 41 at 13-23.)  Razo asserted the claims were brought on behalf of himself and classes including:

1.  "The Plaintiff Class": All persons who have been, or currently are, employed by Defendant and who held, or hold, job positions which Defendant have classified as "non-exempt" personnel in the State of California. (The Class Period is the period from August 27, 2015, through and including the date judgment is rendered in this matter).

2.  "The Terminated Sub Class": All members of the Plaintiff Class whose employment ended during the Class Period (The Class Period is the period from August 27, 2015, through and including the date judgment is rendered in this matter).

(*Id.* at 10.)  AT&T filed its answer on October 28, 2021.  (Doc. 46.)

While this matter was pending, AT&T settled a separate class action addressing "the same claims" as those raised by Razo, in *Samuel Wallack, et al. v. AT&T Mobility Services, LLC*, San Bernardino County Superior Court Case No. CIVSB2117915.[1]  (Doc. 72 at 4; *see also* Doc. 50 at 2.) The *Wallack* court denied Razo's motion to intervene.  (Doc. 49.)  The settlement in *Wallack* received final approval on March 18, 2022, and an "Amended Order Nunc Pro Tunc Granting Joint Motion for Final Approval of Class Action Settlement and Judgment" was issued on April 19, 2022.  The *Wallack* class was confirmed to include: "All persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from August 1, 2015 through November 2, 2021."  (*Wallack*, Case No. CIVSB2117915, *Amended Order*, p. 2.)

On March 8, 2022, Razo filed a motion for preliminary approval of the settlement with AT&T in this action.  (Doc. 72.)  In seeking approval, Razo acknowledged: "[o]nce the *Wallack* Court grant[ed] final approval, the only remaining claims in this matter will be those Razo has asserted on

---

[1] The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The official records of the Superior Court of San Bernardino County, as contained in the court's official website, are sources whose accuracy cannot reasonably be questioned, and judicial notice may be taken of documents on the website of a state court. *See Harris v. County of Orange,* 682 F.3d 1126, 1132 (9th Cir. 2012) (judicial notice may be taken of "undisputed matters of public record, including documents on file in federal or state courts"); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web").  Accordingly, the Court takes judicial notice of the San Bernardino County Superior Court docket in Case No. CIVSB2117915, including the filing dates and documents publicly available.  This docket is available at https://www.sb-court.org, and through the court's online portal at https://cap.sb-court.org.

behalf of those who worked for Defendant in a non-exempt role in California from November 2, 2021, onwards." (*Id.* at 6.)  Thus, Razo and AT&T agreed settle the claims of a class defined as: "All persons who worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from November 2, 2021, to the date the Court grants preliminary approval of this Settlement." (*Id.* at 7; *see also* Doc. 72-4 at 4, Settlement ¶ 2.)  On May 2, 2022, the Court determined Razo was not a member of the proposed settlement class, and the conditional class could not be certified.  (Doc. 74.)  Consequently, approval of the settlement was denied.

Following the Court's determination, the parties executed a "Revised Class Action and PAGA Action Settlement Agreement." (Doc. 75-2.)  On May 27, 2022, Razo filed a motion for preliminary approval of the parties' revised settlement.  (Doc. 75.)  AT&T did not oppose or otherwise respond to the motion.

## **THE PROPOSED SETTLEMENT**

Pursuant to the proposed "Class Action and PAGA Action Settlement Agreement ("the Settlement"), the parties agree to a gross settlement amount of $575,000.00 for a class including:

> All persons who either or both: (1) worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from November 2, 2021, to the date the Court grants preliminary approval of this Settlement; and/or (2) filed a timely Request for Exclusion from the class action settlement in the matter of Samuel *Wallack, et. al. v. AT&T Mobility Services, LLC*, Case Number CIVSB2117915, pending in the Superior Court for the State of California, County of California County of San Bernardino.

(Doc. 75-2 at 4-5, ¶¶ 2, 6.)  The settlement funds are non-reversionary, and AT&T shall also pay "the employer's share of payroll taxes … separately from and in addition to the Gross Settlement Amount." (*Id.* at 8, ¶ 22.)

## I.     **Payment Terms**

The parties agree the settlement fund shall cover payments to class members, including enhanced compensation to Razo as the Class Representative.  (Doc. 75-2 at 9, Settlement ¶¶ 22-24.)  In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and costs, to the Settlement Administrator, and the California Labor & Workforce Development Agency.  (*Id.* at 5, ¶ 6.)  Specifically, the Settlement provides for the following payments from the gross settlement amount:

- The Class Representative will receive a service payment of $10,000.00;

- Class counsel will receive $191,666.76 in attorneys' fees, which equals 33 1/3 % of the gross settlement amount, and expenses up to $10,000.00;

- The California Labor and Workforce Development Agency shall receive $7,500.00 from the total PAGA payment of $10,000.00; and

- The Settlement Administrator will receive up to $30,000.00 for fees and expenses.

(*Id.* at 5, 8-9, Settlement ¶¶ 6, 23-25.)  After these payments, the remaining money ("Net Settlement Amount") would be distributed as settlement shares to class members.  (*Id.* at 5, Settlement ¶ 10.)

Settlement shares will be calculated on a *pro rata* basis to Class Members.  (Doc. 75-2 at 9, Settlement ¶ 26.)  Specifically, the Settlement provides: "Each Class Member who does not timely opt-out of the settlement will receive a *pro rata* share of the Net Settlement Amount based on the number of weeks that he or she worked in each position covered by the Settlement from November 2, 2021 to the date of preliminary approval (the 'Class Member Payment')."  (*Id.*)  The Class Member Payment will include an individual's shares of the PAGA Settlement Amount under Cal. Lab. Code § 2699(i).  (*Id.*; *see also id.* at 4-5, ¶ 9.)

The appointed Settlement Administrator will distribute payment by mailing checks to all Class Members and Aggrieved Employees.  (Doc. 75-2 at 19- 20, Settlement ¶ 40; *see also* Doc. 75 at 15.)  Checks must be cashed within 90 days of the mailing.  (Doc. 75-2 at Settlement ¶ 41; *see also* Doc. 75 at 15-16.)  If any check remains uncashed after the 90-period, the money does not revert to AT&T.  Rather, "the Settlement Administrator will distribute the unclaimed funds represented by the uncashed check to the California State Controller's Office, Unclaimed Property Division in the name of the Class Member, where the Class Member or Aggrieved Employee can later claim their funds."  (*Id.*)

## II.     Releases

The Settlement provides that Razo and class members, other than those who elect not to participate in the Settlement, shall release AT&T from claims.  (Doc. 75-2 at 10-11, ¶¶ 29-30.)  Specifically, the releases for all class members and "aggrieved employees" under PAGA provide:

**Class Members**. Upon the Court's final approval of this Settlement, the Class Members (other than those who timely and validly elected not to

6

participate in the Settlement) fully release and discharge Defendant and the Released Parties of any and all known and unknown claims as alleged in, and that could have been alleged based on the facts of, the operative Third Amended Complaint. This includes, but is not limited to, statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs or expenses, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, arising out of or based upon any provision of the California Labor Code, California Industrial Welfare Commission Wage Orders, and California Business & Professions Code § 17200, *et seq.*; including, without limitation, the following categories of allegations, to the fullest extent such claims are releasable by law: (a) all claims for failure to pay wages, including overtime premium pay and the minimum wage; (b) all claims for the failure to provide meal and/or rest periods in accordance with applicable law, including payments equivalent to one hour of the employee's regular rate of pay for missed meal and/or rest period and alleged non-payment of wages for meal periods worked and not taken; (c) all claims for the alleged omission of any kind of remuneration when calculating an employee's regular rate of pay; and (d) any and all claims for recordkeeping or pay stub violations, claims for timely payment of wages and associated penalties, and all other civil and statutory penalties. The Class Members understand and agree that this release includes a good-faith compromise of disputed wage claims.

**Aggrieved Employees**. Upon the final approval by the Court of this Settlement, and in consideration of the PAGA Settlement Amount, Luis M. Salas Razo-on behalf of the State of California, the LWDA, and the Aggrieved Employees-releases and discharges Defendant and the Released Parties of any and all known and unknown claims as alleged in, and that could have been alleged based on the facts of, the operative complaint. This includes, but is not limited to, all claims for penalties, attorneys' fees, litigation costs, restitution, or equitable relief, recoverable through PAGA and arising out of or based upon any provision of the California Labor Code or California Industrial Welfare Commission Wage Orders; including, without limitation, the following categories of allegations, to the fullest extent such claims are releasable by law: (a) all claims for failure to pay wages, including overtime premium pay and the minimum wage; (b) all claims for the failure to provide meal and/or rest periods in accordance with applicable law, including payments equivalent to one hour of the employee's regular rate of pay for missed meal and/or rest periods and alleged non-payment of wages for meal periods worked and not taken; (c) all claims for the alleged omission of any kind of remuneration when calculating an employee's regular rate of pay; and (d) any and all claims for recordkeeping or pay stub violations, claims for timely payment of wages and associated penalties, and all other civil and statutory penalties.

(*Id.* at 10-13, Settlement ¶¶ 30-31.)

The release for Razo encompasses more claims than those identified for Settlement Class Members, because he agreed to release any claims known and unknown against AT&T, not just those claims constrained to the facts alleged in this lawsuit.  Specifically, Razo's release provides:

1
2
3
4
5
6

> In consideration of the Service Payment to Razo, his Settlement payments, and the other terms and conditions of the Settlement, Luis M. Salas Razo hereby releases any and all of his known and unknown claims against Defendant and any of Defendant's present and former parents, subsidiaries and affiliated companies or entities, and their respective officers, directors, employees, partners, shareholders and agents, and any other successors, assigns and legal representatives and its related persons and entities ("Released Parties") and waives the protection of California Civil Code section 1542.  Razo understands and agrees that this release includes a good-faith compromise of disputed wage claims.

7  (*Id.* at 10, Settlement ¶ 29.)  Thus, claims released by Razo—but not the Settlement Class—include any

8  claims arising under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42

9  U.S.C. § 1981, and the Employee Retirement Income Security Act.

10  **III.    Objections and Opt-Out Procedure**

11      The parties agreed class members would not be required to take any action to receive their

12  settlement shares.  (*See* Doc. 75-2 at 10, Settlement ¶ 34.)  However, any class member who wishes

13  may file objections or elect not to participate in the Settlement.  (*Id.*; *see also id.* at 39.)  The proposed

14  notice for class members explains the procedures to object to the terms request exclusion from the

15  Settlement Class.  (*Id.* at 34, 37.)

16  **PRELIMINARY APPROVAL OF A CLASS SETTLEMENT**

17      When parties settle the action prior to class certification, the Court has an obligation to "peruse

18  the proposed compromise to ratify both the propriety of the certification and the fairness of the

19  settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Preliminary approval of a class

20  settlement is generally a two-step process.  First, the Court must assess whether a class exists.  *Id.*

21  (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Second, the Court must

22  "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable."  *Id.*

23  (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)).  The decision to approve or

24  reject a settlement is within the Court's discretion.  *Hanlon*, 150 F.3d at 1026.

25  **I.    Conditional Certification of a Settlement Class**

26      Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure, which

27  provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf

28  of all."  Fed. R. Civ. P. 23(a).  Razo seeks to "certify a class conditionally for settlement purposes

8

only" pursuant to Fed. R. Civ. P. 23.  (Doc. 72 at 13.)  Parties seeking class certification bear the burden of demonstrating the elements of Rule 23(a) are satisfied, and "must affirmatively demonstrate … compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives identified in Rule 23(b).  *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A.      Rule 23(a) Requirements

The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982).  Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the claims or
> defenses of the representative parties are typical of the claims or defenses
> of the class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

Fed. R. Civ. P. 23(a).  These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation.  *Falcon*, 457 U.S. at 156.

#### 1.      Numerosity

This prerequisite requires the Court to consider "specific facts of each case and imposes no absolute limitations."  *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980).  Although there is not a specific threshold, joining more than one hundred plaintiffs is impracticable.  *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (finding the numerosity requirement … "satisfied solely on the basis of the number of ascertained class members"); *see also Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.7 (9th Cir. 1977) (a proposed class with 110 members "clearly [included] a sufficient number to meet the numerosity requirements").

Razo reports "there are approximately 3,900 class members, all of whom were subject to AT&T's allegedly commonly applied unlawful policies, among other derivative wage and hour claims."  (Doc. 75 at 18.)  Therefore, joinder of all identified class members as plaintiffs is

1    impracticable, and the numerosity requirement is satisfied.

2                    2.      Commonality

3          Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

4    To satisfy the commonality requirement, the plaintiff must demonstrate common points of facts and

5    law. *See Wal-Mart Stores*, 564 U.S. at 350. Thus, "commonality requires that the class members'

6    claims depend upon a common contention such that determination of its truth or falsity will resolve an

7    issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the

8    capacity of classwide proceedings to generate common answers to common questions of law or fact

9    that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

10   588 (9th Cir. 2012) (internal quotation marks, citations omitted).

11         Razo asserts the commonality requirement is satisfied because "the class claims of Defendant's

12   employees turn upon answers to overarching common questions regarding Defendant's policies and

13   procedures that are capable of class-wide resolution for settlement purposes." (Doc. 75 at 18.)

14   According to Razo, "[f]or settlement purposes" the common issues include:

15              (1) whether Defendant's timekeeping policies resulted in compensable
                off-the-clock work and subsequent failure to pay all regular and
16              overtime hours worked; (2) whether Defendant's omission of certain
                types of remuneration when calculating its employee's regular rate of
17              pay resulting in a failure to pay all wages owed; (3) whether Defendant
                provided its employees with all requires meal and rest periods; (4)
18              whether Defendant paid its employees a penalty equivalent to one hour
                of their regular rate of compensation whenever that worker missed a
19              meal or rest period; (5) whether Defendant failed to pay all owed wages
                timely; and (6) whether Defendant failed to provide employees with
20              wage statements compliant with California law.

21   (*Id.*) Because it appears resolution of the issues—including whether AT&T's policies violated

22   California wage and hour law—would apply to the claims of each of the Class Members, the Court

23   finds the commonality requirement is satisfied.

24                   3.      Typicality

25         This requirement demands that the "claims or defenses of the representative parties are typical

26   of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to

27   be identical, but rather "reasonably coextensive" with those of the absent class members. *Hanlon*, 150

28   F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether

                                              10

1    the action is based on conduct which is not unique to the named plaintiffs, and whether other class

2    members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d

3    497, 508 (9th Cir. 1992) (internal quotation marks, citation omitted); *see also Kayes v. Pac. Lumber

4    Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (the typicality requirement is satisfied when named plaintiffs

5    have the same claims as other members of the class and would not be subject to unique defenses).

6         Razo asserts the typicality requirement is satisfied because "[he] and the Class Members all

7    worked for Defendant as non-exempt employees."  (Doc. 75 at 19.)  In addition, Razo asserts that he

8    and the Settlement Class Members "were all subject to the same allegedly non-compliant policies and

9    practices…."  (*Id.*)  Because Razo was subjected to the same company policies and wage payment

10   procedures as the Settlement Class Members, the Court finds the typicality requirement is satisfied for

11   purposes of settlement.  *See Hanon*, 976 F.2d at 508; *Kayes*, 51 F.3d at 1463.

12                         4.    Adequacy of Representation

13        Absentee class members must be adequately represented for judgment to be binding upon

14   them.  *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  This prerequisite is satisfied if the representative

15   party "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

16   "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and

17   their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs

18   and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec.

19   Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

20                         a.    *Proposed class representative*

21        Razo seeks appointment as the Class Representative, and AT&T reports it "does not oppose the

22   appointment of Plaintiff as Class Representative for settlement purposes only."  (*See* Doc. 75 at 19-

23   20.)  Razo asserts "there is no evidence of antagonism between the Class Representative's interests

24   and those of the Class."  (*Id.*)  According to Razo, he "has litigated this case in good faith" and "the

25   interests of the Class Representative are aligned with those of the Class as they all share a common

26   interest in challenging the legality of the alleged policies and procedures on which the claims are

27   based."  (*Id.* at 20.)  Neither party identified conflicts between Razo and the Settlement Class

28   members.  (*See id.* at 19-20.)  Thus, the Court finds Razo will fairly and adequately represent the

1  interests of the Settlement Class.

2  　　　　　　　　　　*b.　　Proposed class counsel*

3  　　　　The law firm of Bradley/Grombacher LLP seeks appointment as counsel for the Settlement

4  Class.  (Doc. 75 at 19; *see also* Doc. 75-2 at 8, ¶ 23.)  Counsel report they are "highly experienced and

5  knowledgeable regarding complex wage and hour class actions like this one."  (*Id.* at 21, citing

6  Grombacher Decl. ¶ 19 [Doc. 75-1 at 5].)  According to counsel, they have "prosecuted numerous

7  cases on behalf of employees for California Labor Code violations and thus are experienced and

8  qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis,

9  and to evaluate the viability of the defenses."  (*Id.* at 22, citing Grombacher Decl. ¶¶ 19-24 [Doc. 75-1

10  at 5-6].)  Ms. Grombacher reports she has worked in class action litigation for "more than a decade

11  during which time [she] litigated hundreds of class actions."  (Doc. 75-1 at 5-6, ¶ 20.)  She and her

12  partner, Marcus Bradley, have also both been named "Super Lawyer[s] in the area of class actions by

13  Los Angeles Magazine for multiple years."  (*Id.* at 6, ¶¶ 22-23.)  Thus, their experience and reputation

14  support a conclusion that counsel prosecuted the action vigorously on behalf of the putative class when

15  the action was filed and the now-proposed Settlement Class.

16  　　　　Notably, this Court previously determined Bradley/Grombacher LLP satisfied the requirements

17  of Rule 23 and appointed the firm as interim class counsel.  (Doc. 45.)  Further, AT&T makes no

18  objection to the appointment for purposes of settlement of the pending settlement.  Therefore, the

19  Court finds Bradley/Grombacher LLP satisfies the adequacy requirement.

20  　　　　**B.　　Certification of a Class under Rule 23(b)(3)**

21  　　　　As noted above, once the requirements of Rule 23(a) are satisfied, a class may only be certified

22  if it is maintainable under Rule 23(b).  Fed. R. Civ. P. 23(b); *see also Narouz*, 591 F.3d at 1266.  Razo

23  asserts certification of the settlement class is appropriate under Rule 23(b)(3), which requires a finding

24  that (1) "the questions of law or fact common to class members predominate over any questions

25  affecting only individual members," and (2) "a class action is superior to other available methods for

26  fairly and efficiently adjudicating the controversy."  (*See* Doc. 75 at 17, 20-21.)

27  　　　　Razo argues the predominance requirement is satisfied because "all claims in this litigation are

28  based on allegedly common, class-wide policies and procedures, and that liability could be determined

on a class-wide basis." (Doc. 75 at 20, citing *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1003 (2012).) Razo also contends certification of the Settlement Class is a superior method of adjudicating the issues because it "will allow class members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism would provide." (*Id.* at 21.) Razo observes that resolution through a class action is also superior because "litigation costs would dwarf potential recovery" in individual actions. (*Id.*, quoting *Hanlon*, 150 F.3d at 1023.) Further, there are no issues of manageability identified that would preclude certification. (*See id.*) Therefore, the Court finds conditional certification of the proposed Settlement Class is proper under Rule 23(b)(3).

## II.     Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with the plaintiff's fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). Toward that end, "Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021); *see* Fed. R. Civ. P. 23(e)(2) (effective Dec. 1, 2018). Rule 23(e)(2) now directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseño*, 998 F.3d at 1023-24. The Ninth Circuit determined this revision to Rule 23 requires courts "to go beyond [its] precedent." *Briseño*, 998 F.3d at 1026.[2]

---

[2] Previously, the Ninth Circuit had identified several factors to determine whether a settlement agreement meets these standards, including:
> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the

**A.     Representation of the Class**

To determine adequacy of representation under Rule 23(e)(2), the Court may consider whether the interests of the named plaintiff are "aligned with the interests of the Class Members." *See Cottle v. Plaid Inc.*, 240 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a finding that "Class Counsel are experienced and competent" supports a conclusion that the class is adequately represented.  *Id.*; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").  Thus, the adequacy analysis under Rule 23(e)(2) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively."  *Moreno v. Beacon Roofing Supply, Inc.*, 2020 WL 1139672 *at 5 (S.D. Cal. Mar. 9, 2020).

Razo's interests "are aligned with those of the Class as they all share a common interest in challenging the legality of the alleged policies and procedures on which the claims are based."  (Doc. 75 at 20.)  In addition, Class Counsel are clearly experienced in class action litigation.  (*See* Doc. 71-5 at 5-10, Grombacher Decl. ¶¶ 19-28.)  Because Plaintiff carried the burden to show the adequacy prerequisite was satisfied under Rule 23(a), the Court finds the requirement under Rule 23(e)(2) is also satisfied.  *See Moreno*, 2020 WL 1139672 *at 5 ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

**B.     Negotiation of the Settlement**

Under Rule 23, the Court must consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  The Ninth Circuit also "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in evaluating a proposed class action settlement.

---

amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted).  Although Plaintiff refers to the factors under the Ninth Circuit precedent (Doc. 75 at 22-23), the Court focuses its analysis on the factors enumerated in Rule 23.  *See Briseño*, 998 F.3d at 1026; *see also Herrera v. Wells Fargo Bank, N.A.*, 2021 U.S. Dist. LEXIS 170195, at *21 (C.D. Cal. June 8, 2021) ("The goal of [amended Rule 23(e)] is … to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal") (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others.  *Staton*, 327 F.3d at 960.  The Ninth Circuit observed that "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee."  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks, citations omitted).  Therefore, the Court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining—as Plaintiff asserts (Doc. 75 at 9)— or the product of collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

Where a class action settlement agreement is reached prior to a class being certified, district courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 94; *see also Briseño*, 998 F.3d at 1023.  These "more subtle signs" include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds" and "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *Id.* (internal quotations, citations omitted).

### 1.    Whether there is a disproportionate distribution to counsel

The Settlement provides that Class counsel may request attorneys' fees up to $ 191,666.67, which is one third of the gross settlement fund.  (Doc. 75-2 at 8, Settlement ¶ 23.)  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  Because the fees requested are within the range awarded by the Ninth Circuit from the gross settlement fund, the Court finds the Settlement Agreement does not provide a disproportionate distribution to Class

15

1    Counsel.  *See Millan v. Casvade Water Servs.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015) (finding no

2    disproportionate distribution where class counsel was to receive a third of the settlement fund "although

3    significantly above the benchmark for this Circuit," because it was "not unreasonable as an upper

4    bound" of fees awarded in the Circuit).

5                                2.       Existence of a "clear sailing" agreement

6            In general, a "clear sailing" provision is one in which the parties agree to the "payment of

7    attorneys' fees separate and apart from class funds."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654

8    F.3d at 947. However, the Ninth Circuit recognized also a "clear sailing" arrangement exists when a

9    defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount.

10   *Lane*, 696 F.3d at 832; *In re Bluetooth Headset Prods.*, 654 F.3d at 947.

11           The Settlement Agreement indicates "Defendants will not oppose[] an application to the Court

12   for attorney's fees in an amount equal to 33 1/3% of the Gross Settlement Amount…."  (Doc. 75-2 at

13   8, ¶ 23.)  Thus, the Settlement includes a version of a "clear sailing agreement."  Nevertheless, the

14   existence of a clear sailing provision is not necessarily fatal to final approval.  *See In re Bluetooth*

15   *Headset Prods. Liab. Litig.*, 654 F.3d at 948; *see also In re Toys R Us-Delaware, Inc.–Fair and*

16   *Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("a clear

17   sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded

18   by the fee-setting court so long as the award falls beneath a negotiated ceiling").  Rather, "when

19   confronted with a clear sailing provision, the district court has a heightened duty to peer into the

20   provision and scrutinize closely the relationship between attorneys fees and benefit to the class." *Id*.

21   (citing *Staton*, 327 F.3d at 954).

22           The Court will determine whether the fees are reasonable, based upon evidence submitted by

23   counsel, at the final approval stage.  Consequently, this factor does not weigh against preliminary

24   approval of the settlement.  *See Singh v. Roadrunner Intermodal Servs. LLC*, 2019 WL 316814 at *7-8

25   (E.D. Cal. Jan 24, 2019) (not finding collusion between the parties, despite a clear sailing agreement,

26   where the fee award was analyzed and determined to be reasonable).

27   ///

28                                3.       Whether there is a reversion to Defendant

                                                    16

Finally, the parties did not arrange for any unawarded fees to revert to Defendants.  Instead, the parties acknowledge in the Settlement Agreement that the Gross Settlement Amount is "non-reversionary," and fees shall be paid from the Gross Settlement Amount.  (Doc. 75-2 at 7-8, ¶¶ 22-23.) Because any unawarded fees return to the Settlement Amount for distribution to the class, this factor does not support a finding of collusion between the parties.

### 4.    Findings on collusion

Based upon the factors set forth by the Ninth Circuit, the Court finds the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations."  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).  Thus, this factor under Rule 23 supports preliminary approval of the class settlement.

### C.    Relief Provided to the Class

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  When analyzing an agreement, the Court should examine "the complete package taken as a whole," and the proposed settlement is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625, 628.

The proposed gross settlement amount is $575,000.00.  (Doc. 75-2 at 7-8, Settlement ¶ 22.) After the anticipated deductions from the gross settlement, Razo estimates that $330,833.33 will be dispersed to Participating Class Members.  (Doc. 75 at 14.)  Analyzing the factors identified in Rule 23, as discussed below, the Court finds the amount offered and relief provided to the Settlement Class supports preliminary approval of the Settlement.

### 1.    Costs, risks, and delays

"A[] central concern [when evaluating a proposed class action settlement] … relate[s] to the cost and risk involved in pursuing a litigated outcome."  *Feltzs v. Cox Comm's Cal., LLC*, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) (quoting Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes [modifications in original].)  Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

529 (C.D. Cal. 2004).  If the settlement were to be rejected, the parties would have to engage in further litigation, including seeking class certification and discovery on the issue of damages.

Razo reports the action "was settled after substantial informal and formal discovery, which included applicable policies, collective bargaining agreements, and data pertaining to the Class." (Doc. 75 at 24.)  Razo acknowledges there are risks related to the meal and rest period claims, premium payments, and recovery under PAGA because "Defendant denies Plaintiff's claims" and "the bulk of liability that…has been released through *Wallack*." (*Id.* at 25, 26.)  In addition, Razo notes that AT&T implemented procedures that would "minimize" violations and note it is "unlikely that the Court would award maximum penalties" under PAGA.  (*Id.* at 27.)  Class Counsel observe a class was not certified in a prior action against AT&T, *Natasha Ayala et al. v. AT&T Mobility Services, LLC*, Case No. 2:18-cv-08809 (C.D. Cal.), which they contend "highlight[s] the risks here." (*Id.* at 24.)

With the proposed settlement agreement, "Class Members will avoid the risks of litigation (including the possibility that class certification will be denied and no relief will be available to the class members) and receive in exchange for a release of claims a pro rata share of the Net Settlement Amount based on the total number of covered workweeks they worked."  (*Id.* at 24, citing Settlement ¶ 26(a).)  Further, the "[p]articipating Class Members will receive compensation for Defendant's alleged violations without further delay" and without "the uncertainty of the outcome, risk and expense of litigation in complex class actions."  (*Id.* at 25.)

As Razo observes, the time and expense of continued litigation related to these claims could outweigh any additional recovery.  On the other hand, the proposed settlement provides for immediate recovery on claims presented by Plaintiff on behalf of the class.  Due to the acknowledged risk of the claims of class members, costs of future litigation that may reduce the recovery to class members, and delay in payments if the settlement is not approved, this factor weighs in favor of preliminary approval of the Settlement. *See Rodriguez*, 563 F.3d at 966 (risk, expense, complexity and duration of litigation supports settlement); *Curtis-Bauer v. Morgan Stanley & Co., Inc*., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

2.      Proposed distribution

18

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method," 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.)). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

Class members are not required to take any action, such as submitting a claim form, to receive their settlement share.  (Doc. 75 at 9; Doc. 75-2 at 34.)  Rather, class members need only take specific action if they wish to opt-out of the settlement, object to any of the terms of the settlement, or dispute the amount of their individual settlement share.  Because the class members are not required to submit a claim form, the proposed method of distribution will facilitate payment for legitimate claims and is not "unduly demanding" upon Settlement Class members.  Thus, this factor weighs in favor of preliminary approval of the settlement. *See Jackson v. Fastenal Co.*, 2021 WL 5755583 at *11 (E.D. Cal. Dec. 3, 2021) (finding "the proposed method of distributing relief is effective, and weighs in favor of a finding that the settlement agreement is fair, reasonable and adequate" where the class members did not have to file a claim).

### 3.     Attorneys' fees

Under Rule 23, "courts must scrutinize 'the terms of any proposed award of attorney's fees.'" *McKinney-Drobnis v. Oreshack*, 16 F.14th 594, 607 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit explained, "the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Id.*, quoting *Briseño*, 998 F.3d at 1024.

As discussed above, Class Counsel may request fees in the amount of one third of the settlement fund. (Doc. 75-2 at 8, Settlement ¶ 23.)  This payment shall be made "by wire to Bradley/Grombacher LLP from the Gross Settlement Amount." (*Id.*)  AT&T will transfer the Gross Settlement Amount to the appointed Settlement Administrator within 35 days of any order granting

1   Final Approval of the Settlement, and the Settlement Administrator will transfer the approved fees to

2   Class Counsel within seven days.  (*Id.* at 19-20, ¶ 40.)  In that same seven-day period, the Settlement

3   Administrator will issue the other approved payments, including to Class Members.  (*Id.*)  Thus,

4   counsel will receive payment at the same time as Class Members, and the timing of payment does not

5   weigh against preliminary approval of the Class Settlement.

6        The fees to which the parties have agreed, fall within the range of acceptable attorneys' fees in

7   the Ninth Circuit. *See Powers*, 229 F.3d at 1256.  Importantly, however, any party seeking fees bears

8   the burden of establishing that the fees and costs were reasonably necessary to achieve the results

9   obtained.  *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000).  Therefore, a fee applicant

10  **must provide time records documenting the tasks completed and the amount of time spent on**

11  **the action**.  *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co*., 480

12  F.3d 942, 945-46 (9th Cir. 2007).  Because the identified percentage of the gross fund is within the

13  accepted range outlined by the Ninth Circuit, this amount is approved preliminarily.  The Court will

14  evaluate the reasonableness of the fee request and the exact amount of the fee award upon application

15  by Class Counsel with final approval of the settlement.

16                              4.      Agreement required to be identified

17       The Court must consider any agreement that is required to be identified under Rule 23(e)(3).

18  Fed. R. Civ. P. 23(e)(2)(C)(iv).  Specifically, "parties seeking approval must file a statement

19  identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The parties

20  have identified no such agreement and the Court is not aware of any such agreement.  Therefore, this

21  factor does not weigh against preliminary approval.

22       **D.      Treatment of Class Members**

23       Rule 23 requires the Court to consider whether the proposed settlement "treats class members

24  equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "A distribution of relief that favors some

25  class members at the expense of others may be a red flag that class counsel have sold out some of the

26  class members at the expense of others, or for their own benefit." *Hilsley*, 2020 WL 520616 at *7

27  (citation omitted).

28       The parties agreed that "[e]ach Class Member who does not timely opt-out of the settlement

1   will receive a *pro rata* share of the Net Settlement Amount based on the number of weeks that he or

2   she worked in each position covered by the Settlement from November 2, 2021, to the date of

3   preliminary approval (the 'Class Member Payment')."  (Doc. 75-2 at 9, Settlement ¶ 26.)  The Class

4   Member Payment will also include any "Aggrieved Employee Payment" under Cal. Lab. Code §

5   2699(c).  *Id.*

6          Because the Settlement provides *pro rata* distribution to Class Members based upon the

7   number of workweeks, the agreement treats the Class Members equitably, and the proposed

8   distribution plan supports preliminary approval.  *See Cooks v. TNG GP*, 2021 WL 5139613 at *4 (E.D.

9   Cal. Nov. 4, 2021) (observing that the calculation of payments to class members "on a pro-rata basis

10  based on the number of compensable workweeks each member worked … is fair and treats class

11  members equitably"); *see also Gomez-Gasca v. Future AG Mgmt. Inc.*, 2020 WL 6149688 at *4 (N.D.

12  Cal. Oct. 20, 2020) (noting that in the preliminary approval stage, "the Court approved the proposed

13  plan pro rata allocation based on the number of workweeks the class member performed work during

14  the Class Period"); *In re Regulus Therapeutics Sec. Litig.*, 2020 WL 6381898 at *5 (S.D. Cal. Oct. 29,

15  2020) (finding a *pro rata* distribution plan was equitable and weighed in favor of approving the

16  settlement terms).

17          **E.      Class Representative Service Payment**

18          Incentive awards, service payments, for class representatives are not to be given routinely by

19  the Court.  In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

20          Indeed, '[i]f class representatives expect routinely to receive special
            awards in addition to their share of the recovery, they may be tempted
21          to accept suboptimal settlements at the expense of the class members
            whose interests they are appointed to guard." *Weseley v. Spear, Leeds*
22          *& Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's*
            *Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76
23          F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs
            make what amounts to a separate peace with defendants, grave
24          problems of collusion are raised.").

25  In fact, "'excessive payments to named class members can be an indication that the agreement was

26  reached through fraud or collusion.'"  *Id.* (citation omitted).  In evaluating the enhancement award to a

27  class representative, a court should consider all "relevant factors including the actions the plaintiff has

28  taken to protect the interests of the class, the degree to which the class has benefitted from those

1    actions, …  the amount of time and effort the plaintiff expended in pursuing the litigation … and

2    reasonable fears of workplace retaliation."  *Staton*, 327 F.3d at 977.

3           The Settlement provides that Razo may apply "for [a] service payment of $10,000.00, to be

4    paid out of the maximum Gross Settlement Amount."  (Doc. 75-2 at 24, Settlement ¶ 24.)  Razo

5    asserts the "Service Enhancement … is in consideration for a general release of Plaintiff's claims

6    against Defendant."  (Doc. 75 at 12, citing Settlement ¶¶ 24, 29.)  In addition, Razo contends that he

7    "risked a potential judgment taken against him for attorneys' fees and costs if this matter had not been

8    successfully concluded."  (*Id.*)  He asserts, "[t]he risk of payment of Defendant's costs, alone, is a

9    sufficient basis for an award of the requested service award." (*Id.*)  Further, Razo believes his "conduct

10   will not be lost on a prospective employer who has to choose between an applicant who has never sued

11   an employer and one who has done so."  (*Id.* at 13.)  According to Razo, "[t]he requested award far

12   from compensates Plaintiff for opportunities he may lose in the future because of the exercise of a

13   Constitutional right to Petition the Courts for redress of a grievance."  (*Id.*)

14          Significantly, there is no information related to the actions Razo took *on behalf of the class*, or

15   the time expended.  Without additional information the Court is unable to evaluate the reasonableness

16   of this requested award from the Gross Settlement Amount. Indeed, the risks identified by Razo would

17   also exist if he had filed this action only on behalf himself and did not seek to represent a class.  In

18   seeking final approval, **Plaintiff must provide evidence supporting the requested enhancement**, or

19   the request will be denied. Nevertheless, given the flexibility for an award *up to* $10,000, the request

20   for approval of a class representative service payment is preliminarily approved.[3]

21          **F.      Views of Counsel**

22          Kiley Grombacher, Class Counsel, asserts she "believe[s] the settlement is fair, reasonable and

23   adequate."  (Doc. 75-2 at 1, ¶ 57.)  In addition, AT&T indicates in the Settlement that it "agree[s] the

24   Settlement is fair, adequate and reasonable."  (Doc. 75-2 at 7, ¶ 21.)  These opinions of counsel are

25   entitled to significant weight, and support approval of the settlement agreement.  *See Nat'l Rural*

26   *Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are

27

28   _____

     [3] The Settlement provides: "Should the Court fail to award the full amount of the service payment requested by Razo, any portion that is not awarded will revert back to the Gross Settlement Amount."  (Doc. 75-2 at 8, ¶ 24.)

most closely acquainted with the facts of the underlying litigation").

### G.    Reaction of Class Members to the Proposed Settlement

Razo has agreed to the terms of Settlement Agreement.  (Doc. 75-2 at 26.)  However, because Class Members have not yet received notice, this factor shall be revisited with final approval of the Settlement.  *See Cottle*, 340 F.R.D. at 376 ("The reaction of the class members is best assessed at the final approval hearing since the court can look at how many class members submitted … objections").

## APPROVAL OF PAGA SETTLEMENT

California adopted the Private Attorney General Act to allow individual plaintiffs "to bring a civil action to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies." *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005); *see also* Cal. Lab. Code § 2699(a); *Urbino v. Orkin Servs. of Cal., Inc*., 726 F.3d 1118, 1121 (9th Cir. 2013).  Thus, a PAGA plaintiff now acts "as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).

Pursuant to PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).  PAGA defines an "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." *Id*.  A judgment in a PAGA action "binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Arias*, 46 Cal. 4th at 986.

To bring an action under PAGA, an aggrieved employee must first provide written notice to the employer and the Labor and Work Force Development Agency.  Cal. Lab. Code § 2699.3(a)(1).  Recovery under PAGA is limited to civil penalties, and the civil penalties must be allocated with 75% directed to the LWDA and 25% to aggrieved employees.  *Id*. § 2699(i).  Any proposed settlement of PAGA claims must be submitted to the LWDA, and a trial court must "review and approve" any settlement of PAGA claims. *Id*. § 2699(l)(2); *see also Haralson v. U.S. Aviation Servs. Corp*., 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (because settling a PAGA claim "compromises a claim that could

1  otherwise be brought be the state," it requires that a court "review and approve any settlement of any

2  civil action pursuant to [PAGA]") (citation omitted).

3        Although there is no binding authority establishing the standard of review for PAGA

4  settlements, California district courts "have applied a Rule 23-like standard, asking whether the

5  settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's

6  policies and purposes.'" *Haralson*, 383 F. Supp. 3d at 972.  This standard is derived principally from

7  the LWDA itself.  *See O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016).

8  The LWDA indicated:

9              It is thus important that when a PAGA claim is settled, the relief provided
             for under the PAGA be genuine and meaningful, consistent with the
10             underlying purpose of the statute to benefit the public and, in the context
             of a class action, the court evaluate whether the settlement meets the
11             standards of being "fundamentally fair, reasonable, and adequate" with
             reference to the public policies underlying the PAGA.

12

13  *Id.* (citation omitted).  When a proposed settlement involves overlapping class action and PAGA

14  claims, courts may employ a "sliding scale" in determining if the proposed settlement is

15  "fundamentally fair, reasonable, and adequate with reference to the public policies underlying the

16  PAGA." *O'Connor*, 201 F. Supp. 3d at 1134; *see also Haralson*, 383 F. Supp. 3d at 972 (following

17  *O'Connor*); *Cooks v. TNG GP*, 2020 WL 5535397 at *9-10 (E.D. Cal. Sept. 15, 2020) (same).

18  "[W]here the settlement for the rule 23 class is robust, the purposes of PAGA may be concurrently

19  fulfilled." *Cooks*, 2020 WL 5535397 at *10 (quoting *O'Connor*, 201 F. Supp. 3d at 1134).

20        Class Counsel report they submitted the revised class and PAGA settlement to the LWDA as

21  required by the Labor Code of May 26, 2022.  (Doc. 75 at 28, Grombacher Decl. ¶ 54.)  The

22  settlement of $575,000.00 appears sufficiently robust—with more than $330,000 going to the class

23  members—such that the Court finds the purposes of PAGA to address the alleged labor violations are

24  fulfilled by the proposed agreement.  The Settlement properly designates 75% of the PAGA funds—in

25  the amount of $10,000 from the Gross Settlement Amount— to the LWDA and 25% to aggrieved

26  employees.  (Doc. 75-2 at 4, Settlement ¶ 6.)  Accordingly, the Court finds approval of the PAGA

27  payment is also appropriate.  *See Jamil v. Workforce Resources*, 2020 WL 6544660 at *6 (S.D. Cal.

28  Nov. 5, 2020) (finding a $10,000 PAGA award was fair and adequate as part of a class settlement).

## APPOINTMENT OF SETTLEMENT ADMINISTRATOR

The parties have agreed upon and propose that the Court appoint Atticus Administration, LLC ("Atticus") to serve as the Settlement Administrator.  (Doc. 75-2, Settlement ¶ 12.)  Under the terms of the proposed Settlement:

> [T]he Settlement Administrator will determine each Class Member's estimated number of Covered Workweeks and estimated Settlement Share up to the date of preliminary approval, and send a Class Notice Packet to each Class Member.  The Settlement Administrator will mail this information to all identified Class Members via regular First-Class U.S. Mail, using the mailing address information provided by Defendant, unless modified by any updated address information that the Settlement Administrator obtains in the course of administration of the Settlement. In the event of returned or non-deliverable notices, the Settlement Administrator will make reasonable efforts to locate Class Members and re-send the notices.
>
> [] If a Class Notice Packet is returned because of an incorrect address, the Settlement Administrator will promptly, and not later than 15 days from receipt of the returned packet, search for a more current address for the Class Member using Accurint and other reasonable and cost-effective skip trace methods, and re-mail the Class Notice Packet to the Class Member. The Settlement Administrator will use the Class Member Data and otherwise work with Defendant to find a more current address. The Settlement Administrator will be responsible for taking reasonable steps, consistent with its agreed-upon job parameters, court orders, and fee, as agreed to with Class Counsel and according to the following deadlines, to trace the mailing address of any Class Member for whom a Class Notice Packet is returned by the U.S. Postal Service as undeliverable. These reasonable steps will include, at a minimum, the tracking of all undelivered mail; performing address searches for all mail returned without a forwarding address; and promptly re-mailing to Class Members for whom new addresses are found. If the Class Notice Packet is re-mailed, the Settlement Administrator will note for its own records and notify Class Counsel and Defendant's Counsel of the date and address of each such re-mailing as part of a weekly status report provided to the Parties. All counsel of record will be entitled to receive from the Settlement Administrator any updated address information about a Class Member as the Settlement Administrator obtains such information

(Doc. 75-2 at 13-14, Settlement ¶ 33(b)-(c).)  In anticipation of the administration expenses related to these tasks, $30,000.00 from the gross settlement fund has been designated for the Settlement Administrator.  (*Id.* at 8-9, ¶ 25). Based upon the recommendation and request of the parties, Atticus is appointed as the Settlement Administrator.

///

///

## APPROVAL OF CLASS NOTICE

The class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which provides the notice "must clearly and concisely state in plain, easily understood language" the following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### I.   Content of the Notice

Plaintiff has submitted the proposed Notice Packet. (Doc. 75-2 at 34-45.) The Notice Packet provides information regarding the background of the action and claims asserted by Razo that have resolved because of this settlement. (*Id.* at 35, 37-39.) The Notice also explains the terms and provisions of the Settlement, including payments from the gross settlement fund, and how payments will be received. (*See id.* at 35-36.) The Notice Packet will provide an estimate of the Class Member's share and explains the effect of the judgment and settlement, including the claims released. (*Id.* at 37-39, 43-44.) Finally, the Notice explains the right to object to the Settlement or request exclusion and will include the applicable deadlines. (*Id.* at 36-37, 39-40.) Consequently, the Court finds the content of the Notice Packet is adequate.

### II.   Method and Administration of Notice Packet

Within 21 days of the date of service of this Order, "Defendant will provide to the Settlement Administrator an electronic database for the Class Members, containing each Class Member's name and last-known mailing address, telephone number, the Class Member's Social Security number, and dates of employment, as reflected in Defendant's records (collectively, the 'Class Member Data')." (Doc. 75-2 at 13, Settlement ¶ 33(a).) If any of this information is unknown, "Defendant will use best efforts to deduce or reconstruct the Class Member Data prior to when it must be submitted to the

1   Settlement Administrator."  (*Id.*)

2          Within 14 days of receiving this data, "the Settlement Administrator will determine each Class

3   Member's estimated number of Covered Workweeks and estimated Settlement Share up to the date of

4   preliminary approval, and send a Class Notice Packet to each Class Member."  (Doc. 75-2 at 13, ¶

5   33(b).)  The Settlement Administrator will mail the Notice Packets to "via regular First-Class U.S.

6   Mail, using the mailing address information provided by Defendant, unless modified by any updated

7   address information that the Settlement Administrator obtains in the course of administration of the

8   Settlement."  (*Id.*)  If Notice Packets are returned or undeliverable, "the Settlement Administrator will

9   make reasonable efforts to locate Class Members and re-send the notices."  (*Id.* at 13-14, ¶ 33(b).)  For

10  example, if a Notice Packet is returned due to an incorrect address, the Settlement Administrator will

11  "search for a more current address for the Class Member using Accurint and other reasonable and cost-

12  effective skip trace methods, and re-mail the Class Notice Packet to the Class Member" within 15 days

13  of the return.  (*Id.* at 14, ¶ 33(c).)  Further the Settlement provides:

14              The Settlement Administrator will be responsible for taking reasonable
                steps, consistent with its agreed-upon job parameters, court orders, and
15              fee, as agreed to with Class Counsel and according to the following
                deadlines, to trace the mailing address of any Class Member for whom a
16              Class Notice Packet is returned by the U.S. Postal Service as
                undeliverable. These reasonable steps will include, at a minimum, the
17              tracking of all undelivered mail; performing address searches for all mail
                returned without a forwarding address; and promptly re-mailing to Class
18              Members for whom new addresses are found.

19  (*Id.*)  The Settlement Administrator will provide Class Counsel and Defendant's counsel with a weekly

20  status report, which shall include "whether any Class Notice Packets have been returned and re-mailed

21  and the receipt of any opt-outs to the Settlement."  (*Id.*, ¶ 33(d).)

22          Class members who elect not to participate in the Settlement will have 30 days from date the

23  Notice is mailed to submit a written "Opt Out Notice" from the Settlement.  (Doc. 75-2 at 15, ¶ 34.)

24  The "Opt Out Notice" must: (1) "state clearly that the Class Member has received notice of the

25  proposed settlement and wishes to be excluded from the class and to not participate in the proposed

26  settlement;" (2) "be signed by the Class Member and include their printed name, address, telephone

27  number, and AT&T employee identification number or the last four digits of their social security

28  number;" and (3) "be mailed, faxed, or hand- delivered to the Settlement Administrator."  (*Id.* at 15-16,

¶ 34(b).)  Class Members who properly completes a written Opt Out Notice will not be entitled to a settlement share and will not be bound by the terms of the settlement agreement. (*Id.*)

Similarly, Class Members who wish to object to the Settlement have 30 days to submit a written objection to the Settlement Administrator.  (Doc. 75-2 at 15, ¶ 34(a).)  Any objection "must include the objector's full name, address, telephone number, and a written statement describing all legal and factual arguments in support of the objection." (*Id.*)  Thus, an objector must clearly state the grounds for the objection.  (*Id.*)  In addition, an objection must "indicate whether the Class Member intends to appear at the Final Approval Hearing." (*Id.*)  Class Members will not be permitted to make objections at the Final Approval and Fairness Hearing unless they have submitted a timely written objection that includes that notice of intention to appear.

Before the hearing for final approval, the Settlement Administrator shall serve the parties with "a declaration of due diligence setting forth its compliance with its obligations under th[e] Agreement." (Doc. 75-2 at 14-15, ¶ 33(e).)  The declaration shall include the number of Class Members to whom Notices were sent and the number of Class Members to whom the Notices were delivered.  Further, this declaration shall be filed with the Court with the motion for final approval of the settlement.

**III.    Required Revisions to the Notice Packet**

The Notice Packet must be modified to include information in this Order, including the date and location of the hearing for Final Approval of Class Settlement.  In addition, the Notice must be modified to include the deadlines for requesting exclusion, any opposition to the Settlement, and disputes of the employment information for the class member.  Finally, the Notice Packet must include the contact information, including telephone and fax numbers, for the Settlement Administrator.

If Plaintiff intends to issue a Spanish language translation of the Notice, he is informed that this Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

**CONCLUSION AND ORDER**

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable.  The factors set forth under Rule 23 and Ninth Circuit precedent weigh in favor of preliminary approval of the settlement agreement.  Accordingly, the Court **ORDERS**:

28

1.      Plaintiff's request for conditional certification of the Settlement Class is **GRANTED**, with the class is defined as follows:

> All persons who either or both: (1) worked for AT&T Mobility Services LLC in the State of California, while classified as non-exempt, at any time from November 2, 2021, to the date the Court grants preliminary approval of this Settlement; and/or (2) filed a timely Request for Exclusion from the class action settlement in the matter of Samuel *Wallack, et. al. v. AT&T Mobility Services, LLC*, Case Number CIVSB2117915, pending in the Superior Court for the State of California, County of California County of San Bernardino.

2.      Preliminary approval of the parties' proposed settlement agreement is **GRANTED**.

3.      The proposed PAGA award from the Gross Settlement Amount, including a payment of $7,500 to the LWDA, is **APPROVED**.

4.      The proposed notice plan and related deadlines (Doc. 79) are **APPROVED**.

5.      Luis Salas Razo is **APPOINTED** the Class Representative for the Settlement Class.

6.      The firm of Bradley/Grombacher LLP is **APPOINTED** Class Counsel.

7.      Atticus Administration, LLC, is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement.

8.      The Class Representative enhancement request for Plaintiff is **GRANTED** preliminarily up to the amount of $10,000.00, subject to a petition and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

9.      Class Counsel's request for fees not to exceed 33 1/3% of the gross settlement amount and costs up to $10,000 is **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing.  Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing.

10.      The petition for attorneys' fees and for class representative enhancement fee **SHALL** be filed **no later than November 30, 2022**.

11.      Costs of settlement administration shall not exceed $30,000.

12.      The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file

a finalized Notice with the required revisions for the Court's approval <u>within five days</u> of the date of service of this Order.

13. Defendants **SHALL** provide the Settlement Administrator with the Class Data no later than within **no later than October 12, 2022**.

14. The Settlement Administrator **SHALL** mail the approved Class Notice Packet **no later than October 26, 2022**.

15. A Class Member who wishes to be excluded from settlement shall postmark an Opt Out request within 30 days of the Notice Packet mailing, or no later than **November 25, 2022**.

16. Any objections to or comments on the Settlement Agreement must be submitted to the Settlement Administrator within 30 days of the Notice Packet mailing.

17. A Final Approval and Fairness Hearing is SET for **January 4, 2023** at 9:00 a.m.  At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members.  The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees.

18. Class Members may appear at the hearing on **January 4, 2023**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award.  For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

19. <u>The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court</u> on or before **November 25, 2022**.

20. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members.

///

30

21.     The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:   **September 29, 2022**

UNITED STATES DISTRICT JUDGE