**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq. (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone:     (805) 270-7100
Facsimile:      (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California 91356
Telephone:     (818) 609-0807
Facsimile:      (818) 609-0892
sahagii@aol.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUIS M. SALAS RAZO, on his own behalf and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY SERVICES, LLC, a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>            Defendants. | **CASE NO. 1:20-cv-00172-JLT-HBK**<br><br><u>**CLASS ACTION**</u><br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SERVICE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 4, 2023<br>Time: 9:00 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** on January 4, 2023, at 9:00 a.m., or as soon thereafter as the parties may be heard, this Court for an Order granting a service award in the amount of $10,000 to the named Plaintiff Luis M. Salas Razo. The service award sought is warranted in light Mr. Razo's time and efforts in this case, the personal risks he took on in bringing the lawsuit, Mr. Razo's agreement to a broader release than that applicable to the other Class Members under the Settlement Agreement, and the important public policies underlying the Plaintiff's claims. The requested service award for Mr. Razo also falls comfortably within the range of service awards granted by courts in comparable litigation.

This motion is based on the accompanying Memorandum of Points and Authorities; the Declaration of Luis M. Salas Razo; the Declaration of Kiley L. Grombacher ISO Motion for Reasonable Attorneys' Fees and Costs; such oral argument as may be heard by the Court; and all other papers on file in this action.

Respectfully Submitted,

DATED: November 30, 2022    **BRADLEY/GROMBACHER, LLP**
    **LAW OFFICES OF SAHAG MAJARIAN II**

By: /s/ Kiley Grombacher
    Marcus J. Bradley, Esq.
    Kiley L. Grombacher, Esq.
    Lirit A. King, Esq.
    Sahag Majarian, Esq.

*Attorneys for Plaintiff and the proposed Class*

## **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................1

II. SUMMARY OF PLAINTIFF'S WORK ON THIS CASE ............................................1

III. LEGAL STANDARD......................................................................................................4

IV. THE SERVICE AWARD TO PLAINTIFF IS REASONABLE..................................5

   A.  Plaintiff invested substantial time and effort for the benefit of the class members......5

   B.  The Class Members received a substantial benefit from Plaintiff's service.................6

   C.  The Service Award is justified by the duration of the litigation....................................7

   D.  Plaintiff acted in the best interests of the class ..............................................................7

   E.  Plaintiff took a substantial risk in bringing this class action ........................................8

   F.  The proposed service award has not compromised Mr. Razo's ability to act in the best interests of the class................................................................................................9

   G.  The requested service award promotes the public policies underlying the Labor Code ..............................................................................................................................10

V.  CONCLUSION................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Alberto v. GMRI, Inc.*
   252 F.R.D. 652 (E.D. Cal. 2008) ................................................................................................ 9

*Asare v. Change Grp. N.Y., Inc*.
   2013 U.S. Dist. LEXIS 165935 (S.D.N.Y. 2013) ....................................................................... 8

*Clark v. American Residential Services LLC*
   175 Cal. App. 4th 785 (2009) .................................................................................................... 5

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*
   2008 WL 7863877 (N.D. Cal. 2008) .......................................................................................... 4

*DeWitt v. Darlington Cty*
   2013 U.S. Dist. LEXIS 172624 (D.S.C. 2013) ........................................................................... 8

*Earley v. Superior Court*
   79 Cal.App.4th 1423 (Cal. 2000) ............................................................................................. 10

*Glass v. UBS Fin. Servs., Inc.*
   2007 WL 221862 (N.D. Cal. 2007) ............................................................................................ 4

*In re Toys R Us – Del., Inc. – Fair & Accurate Credit Transactions (FACTA) Litig.*
   295 F.R.D. 438 (C.D. Cal. 2014) ........................................................................................... 7, 8

*Lazarin v. Superior Court*
   188 Cal.App.4th 1560 (Cal. 2010) ........................................................................................... 10

*Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir. 2000) ...................................................................................................... 9

*Millan v. Cascade Water Servs., Inc.*
   2016 WL 3077710 (E.D. Cal. 2016) .......................................................................................... 8

*Murphy v. Kenneth Cole Prods. Inc.*
   40 Cal. 4th 1094 (Cal. 2007) .................................................................................................... 10

*Ontiveros v. Zamora*
   303 F.R.D. 356 (E.D. Cal. 2014) ................................................................................................ 4

*Radcliffe v. Experian Info. Solutions, Inc.*
   715 F.3d 1157 (9th Cir. 2013) .................................................................................................... 9

*Rodriguez v. West Publ'g Corp.*
   563 F.3d 948 (9th Cir. 2009) ...................................................................................................... 4

*Sandoval v. Tharaldson Employee Mgt., Inc.*
   2010 WL 2486346 (C.D. Cal. 2010) .......................................................................................... 9

*Sav-On v. Superior Court*
   34 Cal. 4th 319 (Cal. 2004) ...................................................................................................... 10

*Singer v. Becton Dickinson & Co.*
   2009 WL 4809646 (S.D. Cal. 2009) ........................................................................................... 4

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003)...................................................................................4, 5, 6, 9

*Trujillo v. City of Ontario*
  2009 WL 2632723 (C.D. Cal. 2009) ................................................................................7

*Wren v. RGIS Inventory Specialists*
  2011 WL 1230826 (N.D. Cal. 2011)................................................................................8

## I. INTRODUCTION

Plaintiff Luis M. Salas Razo requests that this Court approve a service award of $10,000 to him for his important and substantial contributions to the Class in both the litigation and settlement of this matter. The requested service award is warranted in light of Mr. Razo's time and efforts in helping Counsel to develop and prosecute this case; the personal risks he undertook in bringing this lawsuit; his commitment to prosecuting the case in the best interests of the Class; the fact that he has executed a broader release than the other Class Members; and the important public policies that he helped to vindicate by stepping forward to be the class representative. Mr. Razo agreed to the proposed settlement without any condition of receiving a service award because he was committed to bringing relief to the Class. Furthermore, the requested service award falls well within the range of service awards granted by the courts.

Mr. Razo has submitted a declaration in support of the settlement and the requested service award, which attests to his efforts and goals in bringing this case and helping Class Counsel to litigate it effectively on behalf of the Class. Mr. Razo worked diligently with Counsel to represent the interests of this class of modest-wage individuals who worked as sales representatives for Defendant AT&T Mobility in its retail stores. Mr. Razo put aside his personal interests and the individual claims he might otherwise have made so that he could represent the best interests of the Class and make the significant relief secured by this case a reality for thousands of other Class Members. He deserves a reasonable award in consideration of the significant benefit that he has conferred on the Class Members by working with Counsel to bring about a strong result, the considerable personal risks he took to serve as a class representative, and his agreement to a broader release of claims than the unnamed Class Members. For the reasons stated herein, Mr. Razo respectfully requests that this Court approve the proposed service award of $10,000.

## II. SUMMARY OF PLAINTIFF'S WORK ON THIS CASE

The procedural history of this case has been well-documented in Plaintiff's motion for preliminary approval of the proposed settlement (ECF No. 75) and Plaintiff's motion for reasonable attorneys' fees, which is being filed contemporaneously with this motion. The

-1-

following is a brief, non-exhaustive summary that details the work Mr. Razo performed.

Mr. Razo worked at an AT&T Mobility Store in Madera, California as a sales representative for eleven years until June 2018. Declaration of Luis M. Salas Razo ("Razo Decl.") at ¶ 3. Shortly after his employment was terminated with AT&T, Mr. Razo reached out to Counsel to share his concerns regarding the manner in which AT&T was compensating its sales representatives and the circumstances surrounding the termination of his employment. *Id*. at ¶¶ 4-5. Mr. Razo's complaints were very similar to the wage and hour complaints of his co-workers. *Id*. They formed the basis for the eventual class action complaint in this case, which alleged wage and hour violations arising from AT&T's failure to properly compensate its workers at their regular hourly rates. *Id*. at ¶ 11; *see also* Complaint (ECF No. 1-4).

After the initial meetings with Counsel in January and May 2019, Mr. Razo stepped forward to be the representative plaintiff to pursue this class action complaint on behalf of his co-workers. In doing so, Mr. Razo chose to forego other potential individual claims he had against Defendant so that he would not risk having a conflict with the class members he would be representing. For example, Mr. Razo strongly believed the termination of his employment as unlawful. Razo Decl. at ¶ 5. Nonetheless, Mr. Razo did not pursue this potential individual claim of wrongful termination, but instead remained committed to the class wage and hour claims that he had in common with the other class members.

In his role as the class representative, Mr. Razo stayed in steady contact with Counsel and provided them with valuable information and assistance in the prosecution of the case at each major stage. *Id*. at ¶ 7; *see also* Declaration of Kiley L. Grombacher ISO Motion for Reasonable Attorneys' Fees and Costs ("Grombacher Decl.") at ¶¶ 81-84. At the initial stage, Mr. Razo provided documents and valuable information during lengthy telephonic interviews to assist Counsel in drafting the pleadings. Razo Decl. at ¶ 9. Thereafter, he reviewed the Private Attorneys General Act Notice to the California Labor Workforce Development Agency (LWDA) before it was submitted on May 29, 2029, and the class action complaint before it was filed in Superior Court on August 27, 2019. *Id.*

On January 31, 2020, Defendant removed the matter to this Court. (ECF No. 1). Shortly

-2-
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SERVICE AWARD;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

thereafter, Mr. Razo worked with Counsel to prepare written discovery requests focused on facts relevant to the criteria for class certification, such as Defendant's policies and procedures. Razo Decl. at ¶ 12.

Mr. Razo also searched for and produced numerous additional documents related to his employment with AT&T. *Id.* at ¶ 8. He also participated in helping to identify other employees who might provide additional information and evidence in support of the case. *Id.* at ¶ 10. Additionally, after learning about the *Wallack* settlement, Mr. Razo reviewed the *Wallack* paperwork and worked with Counsel to intervene in the *Wallack* action, in an effort to ensure that the class would be protected. *Id.* at ¶¶ 13, 15. Around this time, Mr. Razo also declined to accept an individual settlement offer, which would have resulted in substantial recovery for himself, but left the members of the class with nothing. *Id.* at ¶¶ 5, 14.

After it became apparent that the *Wallack* settlement would be approved, Mr. Razo continued to work with Counsel to prosecute the claims in this case and secure additional recovery for the class. *Id.* at ¶ 16. Mr. Razo also authorized Counsel to engage in settlement negotiations with Defendant. *Id.*

During the negotiations, Mr. Razo stayed in steady contact with Counsel. After considerable effort, the negotiations resulted in an agreement on the overarching terms for a class action settlement. Over the months that followed, the parties negotiated the remaining details of the settlement—many significant—and finalized a long-form settlement agreement and notice to the class. Razo Decl. at ¶ 17. Throughout the process, Mr. Razo remained in regular communication with Counsel. *Id.* Once the settlement documents were complete, Mr. Razo executed them after careful review and consultation with Counsel. *Id.*

Under paragraph 29 of the Settlement Agreement, Mr. Razo has agreed to a broad release that encompasses all claims he may have against AT&T. *See* Settlement Agreement at ¶ 29. This stands in contrast to the narrower release for unnamed Class Members, who waive only those wage-and-hour claims that were pled or could have been pled based on the allegations in the Third Amended Complaint. *Id.* at 30.

Serving as a class representative also came with the risk of exposing Mr. Razo in a public

forum as someone willing to lead a major legal challenge to an employer's policies and practices. *Id.* at ¶ 6. Mr. Razo was also aware that Defendant might have been able to recover costs from him if they prevailed on his claims. *Id.* These risks, however, did not stop Mr. Razo from stepping forward and putting his personal interests aside to represent the class. *Id.*

### III. LEGAL STANDARD

Service awards are common in class action cases. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases."); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("named plaintiffs … are eligible for reasonable incentive payments."). The purpose of such awards is "to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action…." *Rodriguez*, 563 F.3d at 958-59; *Staton*, 327 F.3d at 977.

Numerous courts in the Ninth Circuit have approved service awards of $10,000 or more, including in cases which resolved at a similar stage of litigation. *See, e.g Watson v. Tennant Co.*, No. 2:18-CV-02462 WBS DB, 2020 WL 5502318, at *7 (E.D. Cal. Sept. 11, 2020) (approving incentive payment of $25,000 to a single named plaintiff); *Singer v. Becton Dickinson & Co.*, 2009 WL 4809646, at *9 (S.D. Cal. Dec. 9, 2009) (approving $25,000 service award in two-and-a-half-year litigation in part because plaintiff spent considerable time on the action, conducted extensive informal discovery and engaged in day-long mediation); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 7863877, at * 1 (N.D. Cal. Oct. 22, 2008) (approving $25,000 service award because plaintiff took risks in her career by coming forward and for effort she devoted to case); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at * 17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 service award to each of four class representatives because of risk incurred by putting their names on complaint and engaging in extensive informal discovery); *see also Ontiveros v. Zamora*, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (approving $15,000 service award).

In evaluating the appropriateness of service awards, courts consider the following relevant factors: (1) the amount of time and effort spent by the class representative on the litigation; (2) the degree to which the class representative's efforts benefitted the class; (3) the

personal difficulties encountered by the class representative; (4) the duration of the litigation; (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation; and (6) the risk to the class representative in commencing suit, both financial and otherwise. *See Staton*, 327 F.3d at 977; *Watson,* 2020 WL 5502318, at *7; *Clark v. American Residential Services LLC*, 175 Cal. App. 4th 785, 804-07 (2009).

As discussed below, application of these factors demonstrates that the service award requested in the Settlement for Mr. Razo is warranted here.

## IV. THE SERVICE AWARD TO PLAINTIFF IS REASONABLE

### A. Plaintiff invested substantial time and effort for the benefit of the class members

"An incentive award is appropriate where…the 'class representatives remained fully involved and expended considerable time and energy during the course of the litigation.'" *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *19 (C.D. Cal. Nov. 13, 2012). In the Ninth Circuit, an incentive award of $5,000 is presumptively reasonable. *Mejia v. Walgreen Co.*, 2021 WL 1122390, at *9 (E.D. Cal. Mar. 24, 2021)*; Davis v. Brown Shoe Co., Inc.,* 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3, 2015). Here, Mr. Razo requests a service award of $10,000 in light of the actions he has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the sacrifices he has made to achieve significant recovery for the class.

Mr. Razo devoted many hours to this case and made invaluable contributions to its effective prosecution on behalf of the class members. Mr. Razo provided important information to Counsel, engaged in lengthy interviews with Counsel, and engaged in numerous other communications with Counsel throughout the case. Razo Decl. at ¶¶ 7-16. Mr. Razo also assisted in the drafting of pleadings; reviewed the PAGA notice and the Complaint before they were filed; searched for and produced documents; conducted a close review of his wage statements over a period of four years; reviewed the numerous motions in filed in this case and conferred with Counsel regarding strategy; reviewed the settlement documents in the *Wallack* action; communicated regularly with Counsel and Class Members about the case; and reviewed and approved the final settlement papers. *Id*. at ¶¶ 7-19. Mr. Razo kept many of the class members

informed of the status of the case by providing them frequent updates. *Id.* at ¶¶ 10, 19.

Mr. Razo put his personal interests aside and committed himself to representing the interests of the Class as a whole, rather than maximizing just his own personal recovery or asserting other individual claims that were beyond the scope of the class action complaint. Razo Decl. at ¶ 5. Mr. Razo also rejected Defendant's offer to dismiss his case in exchange for an individual settlement payment (*id.* at ¶¶ 5, 14), which would have resulted in significantly higher recovery for Mr. Razo than he stands to gain here, even if awarded the maximum service payment of $10,000 permitted under the settlement agreement. Grombacher Decl. at ¶ 82. Thus, Mr. Razo's conduct in this litigation stands in sharp contrast to the concerns regarding service awards described by the Ninth Circuit in *Staton*, 327 F.3d at 975.

Mr. Razo's dedication and involvement has been a fundamental and essential element of this case. There would be no case or settlement, and certainly no class settlement, without his contributions, service and perseverance.

**B.    The Class Members received a substantial benefit from Plaintiff's service**

In addition to weighing the amount of time and effort expended by the named plaintiffs, courts also consider the degree to which their efforts benefitted the class. *Staton*, 327 F.3d at 977.

Here, Mr. Razo's numerous contributions to this litigation will substantially benefit the Class. Significantly, the case would not have been filed but for Mr. Razo's time and effort in bringing the class complaints to the attention of Plaintiff's Counsel. Moreover, as discussed in the papers in support of Plaintiff's Motion for Preliminary Approval (ECF No. 75) and Final Approval (being filed concurrently herewith), the Class Members stand to receive a substantial benefit from Plaintiff's efforts.

Indeed, the final settlement figure of $575,000.00 represents an excellent result for the Class. Even after the attorneys' fees and costs that Plaintiff seeks here, the highest service award permitted under the Settlement Agreement, the PAGA allocation, and the costs of settlement administration, an estimated Net Settlement Amount of approximately $65.90 would be distributed to the approximately 5,064 participating members of the Settlement Class. This works out to an average share of approximately $65.90 per person, which is a particularly strong result

in light of the modest value of the *Ferra* claims, narrow release, and short liability period of just over 10 months. Bridley (Admin) Decl. at ¶¶ 12-14.[1] The substantial benefit Plaintiff's efforts have secured for the Class weigh in favor of granting the requested service award.

### C.  The Service Award is justified by the duration of the litigation

Perseverance in pursuing litigation on behalf of a class over the course of several years supports the approval of reasonable service awards. Service awards are especially warranted where named plaintiffs persevere through litigation for a number of years. *In re Toys R Us – Del., Inc. – Fair & Accurate Credit Transactions (FACTA) Litig.*, 295 F.R.D. 438, 471 (C.D. Cal. 2014); *see also Trujillo v. City of Ontario*, 2009 WL 2632723, *1, *5 (C.D. Cal. Aug. 24, 2009) (awarding $30,000 each to six class representatives following five years of litigation).

Here, Mr. Razo has worked for the benefit of the class for over three years. *See* Razo Decl. at ¶ 4. Prior to the filing of the complaint, Mr. Razo conducted independent research regarding AT&T's pay practices and participated in a number of meetings and conversations with Counsel. He provided lengthy interviews, searched for documents, and reviewed materials. *Id*. at ¶¶ 7-13, 15-16. Mr. Razo also was committed to persevere through further litigation and trial had the Settlement had not been reached. For these reasons, the "duration" factor weighs in favor of the requested service award.

### D.  Plaintiff acted in the best interests of the class

In stepping forward to represent the class, Mr. Razo put his individual concerns aside and acted in the best interests of the class. Razo Decl. at ¶¶ 4-5. He did not pursue individual claims, but just those that were shared by the other class members. *Id*. Furthermore, as discussed above, Mr. Razo also rejected Defendant's offer to dismiss his case in exchange for an individual

---

[1] The recovery also compares very favorably with other settlements of analogous wage and hour class actions. For instance, the *Wallack* case settled for $4,040,000 for over 12,600 class members and a liability period of over 6 years (from August 1, 2015 through November 1, 2021) amounting in an average individual recovery of approximately $192.60. Grombacher Decl. at ¶ 72. The projected average per-person recovery of approximately $65.90 for a narrow release and short liability period in the instant Settlement compares very favorably with the average per-person recovery of $192.60 per person in *Wallack* which includes a much broader release and longer liability period therein.

settlement payment, which would have resulted in a higher individual recovery for himself, but no recovery at all for the class embers. *Id*. at ¶¶ 5, 14. Moreover, when Mr. Razo accepted the proposed settlement on behalf of the Class, he did so without any condition that he would receive a service award. *See id*. at ¶ 21. His support for the proposed settlement is in no way conditioned upon the promise of a service award. *Id*.

Additionally, Mr. Razo has agreed to a broader release that encompasses all claims he may have against Defendant, not just the wage and hour claims more narrowly released by the other Class Members. *See* Settlement Agreement at ¶¶ 29-31.

### E. Plaintiff took a substantial risk in bringing this class action

Another factor supporting the award of the service payment is whether the class representative's service resulted in personal difficulties and/or whether they undertook significant risks to serve as class representatives. *See, e.g., Millan v. Cascade Water Servs., Inc.* 2016 WL 3077710, at *12 (E.D. Cal. May 31, 2016) (reasoning that service awards "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their present or former employers."). "When a class representative shoulders some degree of personal risk in joining the litigation, such as workplace retaliation or financial liability, an incentive award is especially important." *In re Toys R Us,* 295 F.R.D. at 470. Examples of risks to the plaintiff in commencing the litigation "includ[e] reasonable fears of workplace retaliation, personal difficulties, and financial risks." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011).

Further, it is well established that plaintiffs in the employment context "face[] the risk that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare v. Change Grp. N.Y., Inc*., 2013 U.S. Dist. LEXIS 165935, at *40 (S.D.N.Y. Nov. 15, 2013); *DeWitt v. Darlington City.,* 2013 U.S. Dist. LEXIS 172624, at *38 (D.S.C. Dec. 6, 2013) (noting that incentive payments are especially warranted "where the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken

the risk of adverse actions by the employer or co-workers"); *Guippone v. BH S & B Holdings, LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").

Here, Mr. Razo was a risked his reputation in the community and with regard to future employment opportunities as a result of stepping forward publicly as the named representative in a class action. Razo Decl. at ¶ 6. He has had to devote his own time and expenses to participating in the case. *Id*. at ¶¶ 4-19. Furthermore, he bore the risk that he might have to pay defense costs if he lost the case. *Id*. at ¶ 6.

### F. The proposed service award has not compromised Mr. Razo's ability to act in the best interests of the class

In evaluating proposed service awards, courts compare the overall settlement benefits and the range of recovery available to the class members to the representative plaintiffs' proposed service awards. *See, e.g., Staton*, 327 F.3d at 976-77; *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). The purpose of the inquiry is to ensure that the service awards have not compromised the ability of the representative plaintiff to act in the best interest of the class. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (courts must scrutinize "the awards so that they do not undermine the adequacy of the class representatives"). Courts view more favorably those service awards which constitute "only a tiny fraction" of the total settlement amount. *See, e.g.*, *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457-63 (9th Cir. 2000) (approving combined service awards constituting 0.57% of the $1.725 million settlement); *Sandoval v. Tharaldson Employee Mgt., Inc.*, 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (approving service award of $7,500 where average class member received $749.60, but service award was 1% of gross settlement).

Here, although the service award is not insubstantial compared to the average recovery, there are several unique circumstances that nonetheless render the service award requested appropriate. <u>First</u>, it should be noted that the individual recovery here is modest because it reflects only the difference between the amount of meal and rest period premiums paid at the base hourly rate and each employee's regular rate. <u>Second</u>, here, in light of the *Wallack* settlement, the liability

period is brief: just over 10 months. Third, the recovery achieved represents full value on the primary *Ferra* claims alleged, with modest discounts to the derivative claims. Grombacher Decl. at ¶ 73. And fourth, Defendant has changed its policies going forward to ensure that employees are properly paid meal and rest period premiums at the regular rate. Thus here, while the range of recovery available to the class members is small, the recovery is significant.

Moreover, the facts here do not create or exacerbate actual or potential conflicts between the class representative and the class—the primary ground for denying incentive awards. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013) (finding that an agreement conditioning incentive payment on approving the class action settlement created a conflict between the class and the Plaintiff in denying the incentive award and settlement); *Rodriguez v. Disner*, 688 F.3d 645, 651 (9th Cir. 2012) (finding an agreement conditioning incentive payment requests to the amount recovered by the class to be improper). Here, there is no agreement of any kind that ties Plaintiff's request for an incentive award to any condition.

### G. The requested service award promotes the public policies underlying the Labor Code

Approving the requested service award will promote important public policies underlying Plaintiff's wage-and-hour claims. Plaintiff's claims are brought under the California Labor Code, a remedial statute reflecting a strong remedial scheme and public policy of robust employee rights. *Murphy v. Kenneth Cole Prods. Inc.*, 40 Cal. 4th 1094, 1103 (2007). Furthermore, the State's strong public policy in favor of strict enforcement of minimum wage and overtime laws is well-established and fundamental to the Labor Code's protective purpose. *See Sav-On v. Superior Court*, 34 Cal. 4th 319, 340 (Cal. 2004) (citing *Earley v. Superior Court,* 79 Cal.App.4th 1423, 1429-30 (2000)) (confirming "'a clear public policy ... that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers.'"). Likewise, California's meal and rest period requirements also were designed to protect workers from substantial health and safety risks resulting from employer abuses. *See Lazarin v. Superior Court*, 188 Cal.App.4th 1560, 1582-83 (2010).

Here, Mr. Razo's efforts and service helped to vindicate the important public policies underlying the State's wage and hours laws. Accordingly, this factor weighs heavily in favor of

the requested service award.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's motion for service award.

Respectfully Submitted,

DATED: November 30, 2022         **BRADLEY/GROMBACHER, LLP**
                                 **LAW OFFICES OF SAHAG MAJARIAN II**

By: */s/ Kiley L. Grombacher*
Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.
Lirit A. King, Esq.
Sahag Majarian, Esq.

*Attorneys for Plaintiff and the proposed Class*