1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Lirit A. King, Esq. (SBN 252521)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone:     (805) 270-7100
Facsimile:     (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian, Esq. (SBN 146621)
18250 Ventura Boulevard
Tarzana, California 91356
Telephone:     (818) 609-0807
Facsimile:     (818) 609-0892
sahagii@aol.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS M. SALAS RAZO, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AT&T MOBILITY SERVICES, LLC, a Delaware Corporation; and DOES 1 through 100, inclusive, <br><br> Defendants. | **CASE NO. 1:20-cv-00172-JLT-HBK** <br><br> <u>**CLASS ACTION**</u> <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Date: January 4, 2023** <br> **Time: 9:00 a.m.** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** on January 4, 2023, at 10:00 a.m., or as soon thereafter as the parties may be heard in Courtroom 4, 7th Floor, of the United States District Court for the Eastern District of California located at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California 93721, Plaintiff will move, and hereby does move, this Court for an Order awarding Class Counsel reasonable attorneys' fees of $ $191,666.67 (1/3 of the common fund of $575,000.000), plus reimbursement of out of pocket costs of $4,747.10. Pursuant to the Revised Class Action Settlement Agreement and Release ("Settlement Agreement") (ECF No. 75-2) and California wage and hour law, including but not limited to California Labor Code §§ 225.5, 226(e), 1194(a), 2699, and Federal Rule of Civil Procedure 54, Plaintiff is authorized to apply for an award of reasonable attorneys' fees and costs. Additionally, as discussed herein, Plaintiff's fee request is reasonable under the lodestar-multiplier cross-check method and is well within the range of attorneys' fees awarded to plaintiffs' counsel in comparable wage and hour class actions in the Ninth Circuit and California courts. Plaintiff's out-of-pocket costs are documented, reasonable and recoverable under applicable law as well.

      This motion is based on the accompanying Memorandum of Points and Authorities; the Declaration of Kiley L. Grombacher, and the exhibits attached thereto; such oral argument as may be heard by the Court; and all other papers on file in this action.

      Respectfully Submitted,

DATED: November 30, 2022          **BRADLEY/GROMBACHER, LLP**
                            **LAW OFFICES OF SAHAG MAJARIAN II**

                   By: */s/ Kiley Grombacher*
                      Marcus J. Bradley, Esq.
                      Kiley L. Grombacher, Esq.
                      Lirit A. King, Esq.
                      Sahag Majarian, Esq.

                      *Attorneys for Plaintiff and the proposed Class*

1
2
## TABLE OF CONTENTS
3
I.    INTRODUCTION ................................................................. 1

II.   OVERVIEW OF COUNSEL'S WORK ON THIS CASE ......................................... 2

   A.   Case Investigation and Filing the Complaint ................................ 3

   B.   Resolution of the Pleadings ............................................... 3

   C.   Pre-Certification Discovery and discovery of Reverse Auction Settlement ................ 4

   D.   Motion Practice ........................................................... 6

   E.   Settlement Negotiations and Preliminary Approval .......................... 8

III.  LEGAL BASIS FOR AN AWARD OF ATTORNEYS' FEES AND COSTS ........... 9

   A.   Plaintiff's request for attorneys' fees in the amount of one-third of the common fund is reasonable under controlling California law ................................ 9

   B.   Plaintiff's request for attorneys' fees in the amount of one-third of the common fund is reasonable under Ninth Circuit precedent ................................... 11

IV.   THE FEE OF 33.3% OF THE TOTAL SETTLEMENT AMOUNT IS FAIR AND REASONABLE UNDER THE COMMON FUND DOCTRINE ............................. 14

   A.   The substantial benefit provided to the Class justifies the fee award requested ......... 14

   B.   The risks undertaken by counsel justify the fees requested ....................... 15

   C.   The difficulty of the questions involved, the vigorous opposition by Defendant, and the skill required justify the fee requested ................................. 18

   D.   The requested fees are well within the range of attorneys' fees awarded in similar wage and hour class action settlements ...................................... 20

   E.   The "Lodestar-Multiplier" cross-check confirms the reasonableness of the fee award ........................................................................ 20

      1.   Counsel's lodestar comes directly from the contemporaneous billing records .. 20

      2.   Counsel's time spent on this case was necessary and reasonable in light of the difficulty of the case, including AT&T's uncompromising defense ................. 21

      3.   Counsel's hourly rates are within the market range and have been approved by the courts ........................................................... 22

      4.   The proposed fees requested will result in a "negative multiplier" ................. 23

V.    PLAINTIFF'S REQUESTED COST REIMBURSEMENTS ARE REASONABLE ........................................................................ 23

VI.   CONCLUSION ................................................................. 24
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-iii-

1

## TABLE OF AUTHORITIES

2

### Cases

3

*Amaral v. Cintas Corp. No. 2*
  163 Cal.App.4th 1157 (2008) ................................................................ 16

4

*Barbosa v. Cargill Meat Solutions Corp.*
  297 F.R.D. 431 (E.D. Cal. 2013) ................................................ 2, 13, 20

5

*Bennett v. SimplexGrinnell LP*
  2015 WL 12932332 (N.D. Cal. 2015) .................................................. 13

6

7

*Betancourt v. OS Rest. Servs., LLC*
  83 Cal. App. 5th 132 (2022) .................................................................. 17

8

*Blum v. Stenson*
  465 U.S. 886 (1984) .............................................................................. 22

9

*Boeing Co. v. Van Gemert*
  444 U.S. 472 (1980) .............................................................................. 11

10

11

*Boyd v. Bank of Am. Corp.*
  2014 WL 6473804 (C.D. Cal. 2014) .................................................... 14

12

*Bush v. Cheaptickets, Inc.*
  425 F.3d 683 (9th Cir. 2005) .................................................................. 9

13

*Camacho v. Bridgeport Fin., Inc.*
  523 F.3d 973 (9th Cir. 2008) ................................................................ 22

14

15

*Campbell v. Best Buy Stores, L.P.*
  2016 WL 6662719 (C.D. Cal. 2016) .................................................... 13

16

*Chalmers v. City of L.A.*
  796 F.2d 1205 (9th Cir. 1986)
  amended by
  808 F.2d 1373 (9th Cir. 1987) .............................................................. 24

17

18

19

*Chavez v. Netflix, Inc.*
  162 Cal. App. 4th 43 (2008) ................................................................. 10

20

*Cooley v. Indian River Transp. Co*
  2019 WL 2077029 (E.D. 2019) ..................................................... 13, 20

21

22

*Cotchett, Pitre & McCarthy v. Universal Paragon Corp.*
  187 Cal. App. 4th 1405 (2010) ............................................................. 10

23

*Fernandez v. Victoria Secret Stores, LLC*
  2008 WL 8150856 (C.D. Cal. 2008) .................................................... 11

24

25

*Ferra v. Loews Hollywood Hotel, LLC*
  11 Cal. 5th 858 (2021) .................................................................. passim

26

*Fischel v. Equitable Life Assurance Soc'y of U.S.*
  307 F.3d 997 (9th Cir. 2002) ................................................................ 16

27

28

*Garcia v. Gordon Trucking, Inc.*
2012 WL 5364575 (E.D. Cal. 2012) ................................................................. 12, 17

*Harp v. California Cemetery & Funeral Servs., LLC*
2022 WL 1658716 (E.D. Cal. 2022) ....................................................................... 23

*Hensley v. Eckerhart*
461 U.S. 424 (1983) .................................................................................... 14, 21

*In re Activision Sec. Litig.*
723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................................ 12

*In re Animation Workers Antitrust Litig.*
2016 WL 6663005 (N.D. Cal. 2016) ........................................................................ 21

*In re Media Vision Tech. Sec. Litig.*
913 F.Supp. 1362 (N.D. Cal. 1996) ........................................................................ 23

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000) ............................................................................... 14

*In re Pac. Enterprises Sec. Litig.*
47 F.3d 373 (9th Cir. 1995) ................................................................................ 14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*
19 F.3d 1291 (9th Cir. 1994) ............................................................................... 11

*Laffitte v. Robert Half Int'l Inc.*
1 Cal. 5th 480 (2016) ....................................................................................... 10

*Lee v. JPMorgan Chase & Co.*
2015 WL 12711659 (C.D. Cal. 2015) ...................................................................... 13

*Maciel v. Bar 20 Dairy, LLC,*
2020 WL 5095885 (E.D. Cal. 2020) .............................................................. 2, 12, 20

*Mangold v. Calif. Public Utilities Comm'n*
67 F.3d 1470 (9th Cir. 1995) ................................................................................. 9

*Miller v. CEVA Logistics USA, Inc.*
2015 WL 4730176 (E.D. Cal. 2015) ........................................................................ 13

*Naranjo v. Spectrum Sec. Servs., Inc.*
13 Cal. 5th 93 (2022) ....................................................................................... 17

*Parker v. City of L.A.*
44 Cal. App. 3d 556 (1974) ................................................................................. 10

*Paul, Johnson, Alston & Hunt v. Graulty*
886 F.2d 268 (9th Cir. 1989) ............................................................................... 11

*Romero v. Producers Dairy Foods, Inc.*
2007 WL 3492841 (E.D. Cal. 2007) ................................................................. 13, 20

*Salgado v. T-Mobile USA, Inc.*
2020 WL 3127931 (E.D. Cal. 2020) ........................................................................ 23

*Serrano v. Priest*
20 Cal. 3d 25 (1977) ........................................................................................ 18

TABLE OF AUTHORITIES

*Singer v. Becton Dickinson and Co.*
  2010 WL 2196104 (S.D. Cal. 2010)...................................................................13, 14

*Stuart v. Radioshack Corp.*
  2010 WL 3155645 (N.D. Cal. 2010) .....................................................................13

*Swedish Hosp. Corp. v. Shalala*
  1 F.3d 1261 (D.C. Cir. 1993) ................................................................................12

*Van Vranken v. Atlantic Richfield Co.*
  901 F. Supp. 294 (N.D. Cal. 1995) .......................................................................13

*Vasquez v. Coast Valley Roofing, Inc.*
  266 F.R.D. 482 (E.D. Cal. 2010)...........................................................................12

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) ...........................................................................9, 12

*Watson v. Tennant Co.*
  2020 WL 5502318 (E.D. Cal. 2020) ..............................................................2, 12, 20

*Wilcox v. City of Reno*
  42 F.3d 550 (9th Cir. 1994) ..................................................................................14

*Wren v. RGIS Inventory Specialists*
  2011 WL 1230826 (N.D. Cal. 2011) ....................................................................13

TABLE OF AUTHORITIES

1

## I.    INTRODUCTION

Plaintiff Luis M. Salas Razo respectfully submits this application for an award of attorneys' fees and costs to compensate Plaintiff's Counsel for their extensive work over more than three years in achieving a $575,000.00 class action settlement on behalf of employees of Defendant AT&T Mobility Services. The Settlement brings substantial relief to the class members, but did not come without extensive effort, skill, delay, and risk.  At the same time, the fees Plaintiff's seek—one third of the common fund—would result in a "negative" multiplier of 93% their lodestar at hourly rates which have been reduced to reflect the prevailing market rate for the Eastern District of California, Fresno Division. The out-of-pocket costs are also documented and reasonably incurred in litigating this case through settlement.  Both the fees and costs sought are reasonable and warranted under the facts of the case and applicable law.

This was an important but difficult case that Plaintiff's counsel successfully prosecuted over a protracted period to achieve a $575,000.00 non-reversionary settlement for a class of 5,064 modest wage workers in California over a short liability period of less than one year, from November 2, 2021 through September 21, 2022.  The average *net* settlement share for each class member is projected to be over $65.00 per person.  This is the amount *after* payment of the attorneys' fees and costs sought, the proposed service award for the named Plaintiff, the allocation to the California Labor and Workforce Development Agency, and the costs of settlement administration.

As detailed further below, Plaintiff's Counsel worked skillfully and diligently to achieve this excellent outcome for the members of the settlement class.  Indeed, it was only through investigation, discovery, legal research, extensive motion practice, and negotiation that Plaintiff's Counsel were able to secure the evidence and present the legal arguments that persuaded Defendant to ultimately agree to the class-wide relief.

When Plaintiff and his Counsel agreed to take this case as a class action, the result was not certain.  As discussed below, it presented many risks and potential roadblocks that could have resulted in little or no recovery for the Class or the attorneys. Nonetheless, Counsel accepted the case on a wholly contingent fee basis, pursuing it with diligence before achieving the strong result

-1-

now before this Court.  As a result of Counsel's advocacy and willingness to proceed in the face of substantial risk, Class Members will receive a meaningful recovery without having to wait through considerably more years of litigation and attendant delays.

Plaintiff requests attorneys' fees $191,666.67, which is one-third of the $575,000.00 settlement amount.  This request is well within the accepted range for comparable cases.  While higher than the 25% benchmark for the Ninth Circuit, fee awards of 33.33% of the Gross Settlement Amount are "not uncommon for wage-and-hour class actions in the Eastern District of California." *Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-00902 DAD SKO, 2020 WL 5095885, at *17 (E.D. Cal. Aug. 28, 2020) (citing *Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts approved attorneys' fees of about one-third of the total settlement)).  Indeed, "a review of California cases . . . reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fun[d] under $10 million." *Watson v. Tennant Co.*, No. 2:18-CV-02462 WBS DB, 2020 WL 5502318, at *7 (E.D. Cal. Sept. 11, 2020) (citations omitted).

Moreover, the requested award is fair, reasonable, and appropriate in light of the favorable results obtained by Plaintiff's Counsel, the complexities of the litigation, the contingent risk, and the lodestar incurred. As discussed in more detail below, Plaintiff's Counsel delivered significant benefits to the Class in the face of adverse conditions and assumed substantial risk in litigating this action on a contingency basis, having invested over 540 hours of their time toward the zealous prosecution of the class's claims. Plaintiff's fee request is amply supported by the strong results achieved, skill of counsel in achieving them, risks undertaken in bringing the case, and the other factors that inform the determination of reasonable fee awards.  As further discussed below, Plaintiff's fee request also is reasonable under the lodestar-multiplier cross-check method. The out-of-pocket costs and expenses also are reasonable and well-documented. For these reasons and as further discussed below, Plaintiff respectfully requests that the Court grant the Motion.

## II.   OVERVIEW OF COUNSEL'S WORK ON THIS CASE

The procedural history of his action has been well documented in prior briefs, including the Motion for Preliminary Approval of Settlement. (ECF 75).  For purposes of this Motion,

Plaintiff has broken the case down chronologically to focus on the specific work projects:

### A.    Case Investigation and Filing the Complaint

In May of 2019, Plaintiff's Counsel began investigating a claim from Luis M. Salas Razo that AT&T Mobility was not paying its sales associates properly. Declaration of Kiley L. Grombacher In Support of Motion for Reasonable Attorneys' Fees and Costs, at ¶ 7. Counsel spent significant time speaking with Mr. Razo to ascertain the legal merit of the complaints, as well as the extent to which they presented common questions of fact and law. *Id.* Counsel also conducted thorough research regarding AT&T Mobility and its operations, to determine the most appropriate venue to file suit. *Id.* Counsel's investigation indicated that AT&T was not properly paying meal and rest period wages or providing proper wage statements to its employees. *Id.*

At the time, Plaintiff's Counsel was aware that a decision from the Los Angeles County Superior Court concluding that meal and rest period premiums under § 226.7 need only be paid at the base hourly rate was being considered by the California Court of Appeal in *Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal. App. 5th 1239 (Oct. 9, 2019), *rev'd*, 11 Cal. 5th 858 (July 15, 2021). Despite this challenge, Counsel remained confident about the merits of the case and that class-wide evidence would support the claims. Grombacher Decl. at ¶ 8.

On May 29, 2019, Plaintiff submitted a letter to Labor and Workforce Development Agency (LWDA) providing notice of the law enforcement action for civil penalties under PAGA, California Labor Code section 2699 *et seq.*

On August 27, 2019, Plaintiff filed a complaint in the Superior Court for the County of Madera. (ECF No. 1-2).

On October 19, 2019, the California Court of Appeal issued its Order in *Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal. App. 5th 1239, *rev'd*, 11 Cal. 5th 858 agreeing with the trial court's conclusion that employers need only compensate employees at their base hourly rate for working through a 30-minute meal period, or for working through a 10-minute rest break, not at their regular rate of pay. *Id.* at 1252.

### B.    Resolution of the Pleadings

On October 25, 2019, Defendant filed a demurrer to Plaintiff's Complaint. Grombacher

-3-

1  Decl. at ¶ 11.  After Plaintiff's Counsel prepared Plaintiff's opposition to the demurrer, the Parties

2  stipulated to the filing of a First Amended Complaint, which Plaintiff filed on January 9, 2020.

3  *Id.*

4  On January 31, 2020, AT&T removed the action to the Eastern District of California.

5  (ECF No. 1.) Plaintiff filed a Second Amended Complaint on July 30, 2020. (ECF No. 9.)  AT&T

6  moved to dismiss the Second Amended Complaint or, in the alternative, stay this case on August

7  13, 2020.  (ECF No. 10). Plaintiff filed his opposition on August 25, 2020 (ECF No. 11); and

8  AT&T filed its reply on September 8, 2020. (ECF No. 15).

9  On July 15, 2021, the California Supreme Court issued its decision in *Ferra v. Loews*

10  *Hollywood Hotel, LLC,* 11 Cal. 5th 858, 489 P.3d 1166 (2021) ("*Ferra*"), unanimously holding

11  that employers are required to pay meal and rest break violation premiums at the same "regular

12  rate of pay" they use for paying overtime and confirming that the decision applies retroactively

13  to meal and rest break violation premium payments previously made or owed.

14  On August 2, 2021, Plaintiff filed a notice of supplemental authority in opposition to

15  Defendant's motion to dismiss, identifying *Ferra*. (ECF No. 21.). On October 14, 2021, this Court

16  denied AT&T's motion to dismiss and permitted Plaintiff to amend his prayer for damages in

17  connection with his wage statement claim. (ECF No. 38). Plaintiff filed his Third Amended

18  Complaint (TAC) the next day on October 15, 2021. (ECF No. 41). Defendant filed its Answer

19  to Plaintiff's TAC on October 28, 2021. (ECF No. 46).

20  **C.    Pre-Certification discovery and discovery of the Reverse Auction**
   **Settlement**

21  After the case was removed to federal court, the parties engaged in a Rule 26 conference

22  and on September 14, 2020, filed a Joint Rule 26 Report (Dkt. No. 16). In the Report, the Parties

23  proposed September 14, 2021 as the deadline for Plaintiff to file his class certification motion;

24  proposed November 9, 2021 as the deadline for Defendant to oppose class certification; and

25  December 7 2021 as the deadline for Plaintiff to file his Reply to the opposition. On September

26  21, 2020 the Court, the Honorable Jeremy D. Peterson then-presiding, conducted a scheduling

27  conference. (ECF No. 18). On September 22, 2020, the Court issued a Scheduling Order setting

28

-4-

forth deadlines in the case, but did not expressly adopt or reject the Parties' proposed class certification schedule. *Id*.

Meanwhile, on July 28, 2020, Plaintiff propounded his first sets of document requests and special interrogatories on Defendant. Grombacher Decl. at ¶ 17. The discovery was focused at developing a sufficient factual record for Plaintiff to prevail on his then-forthcoming motion class certification. *Id*. The parties exchanged initial disclosures on October 14, 2020. *Id*. at ¶ 16. After a series of extensions, Defendant served its objections and responses to Plaintiff's discovery requests on February 22, 2021. *Id*. at ¶ 18. On April 7, 2021, Plaintiff sent Defendant detailed 12-page meet and confer letter outlining the deficiencies with respect to Defendant's discovery responses, along with a proposed stipulated protective order and proposed ESI Protocol. *Id*. On May 14, 2021, Defendant responded to Plaintiff's letter, standing by its refusal to produce class wide discovery and other discovery on the purported bases that Plaintiff had not made a sufficient *prima facie* showing that the class action requirements are satisfied and that Defendant's motion to dismiss remained pending. *Id*.

On August 3, 2021, Plaintiff noticed the deposition of Defendant's corporate witness(es) pursuant to Federal Rule of Civil Procedure 30(b)(6). *Id*. at ¶ 19. Also on August 3, 2021, Plaintiff's Counsel sent a follow up email to Defense Counsel in an effort to further narrow the scope of the Parties' discovery disputes before presenting them to the Court. *Id*. Plaintiff's Counsel also provided Defense Counsel with the Court's discovery conference procedures and requested Defense Counsel's availability for a discovery conference the following week. *Id*. However, in light of the unavailability of Defense Counsel, the Parties were unable to schedule a call until August 25, 2021. *Id*.

On August 11, 2021, Defendant served its objections and responses and Plaintiff's Notice of Deposition of Defendant. *Id*. at ¶ 20. Also on August 11, 2021, Plaintiff's Counsel reached out to Defense Counsel regarding ambiguity with respect to the class certification briefing deadlines proposed by the Parties in the Parties' Joint Rule 26 Report filed on September 14, 2020. (ECF No. 16). Counsel for AT&T responded the same day that he would touch base with his client on the matter but did not disclose that a motion for preliminary approval of a proposed settlement

-5-

was being filed in a state court action that day (*Wallack et al. v. AT&T Mobility* (San Bernardino Superior Court, Case No. CIVSB2117915) (hereinafter "*Wallack*")), seeking to resolve all of the class claims in this action. *Id.* at ¶ 21.

On August 18, 2021, the Parties in this case submitted a joint stipulation to extend the class certification briefing deadlines previously proposed by 90 days. (ECF No. 22). The Court granted the Parties' stipulation on August 22, 2021, and set the deadline for Plaintiff to file his motion for class certification for December 1, 2021. (ECF No. 23).

On August 25, 2021, the Parties engaged in a telephonic meet and confer for the purpose of discussing Defendant's refusal to produce class wide discovery prior to bringing the issue to the Court. Grombacher Decl. at ¶ 23. However, during the call, Counsel for AT&T informed Plaintiff's counsel that AT&T had reached a settlement with other plaintiffs' counsel in another action (*Wallack*) to settle the class claims in this case. *Id.* Counsel for AT&T stated that in light of the proposed settlement, AT&T would not be producing class discovery but would consider an individual settlement for Plaintiff only. *Id.* Plaintiff declined to settle individually. *Id.*

Following the call, at Plaintiff's Counsel's request, Counsel for AT&T emailed a copy of the preliminary approval briefing in the *Wallack* matter. *Id.* at ¶ 24.

On September 17, 2021, the parties submitted briefs outlining the scope of the discovery dispute between the parties. (ECF Nos. 30-31). On September 20, 2021, the Court held an informal discovery conference during which the Court indicated it was inclined to grant Plaintiff's requested discovery under Fed. R. Civ. P. 26(b), finding it relevant and directed at the core of class certification issues. (ECF No. 31). The Court permitted Plaintiff to file a motion to compel and set a briefing schedule on the motion.

**D.    Motion Practice**

On September 3, 2021, Plaintiff filed a motion to appoint Bradley/Grombacher, LLP as interim Class Counsel pursuant to Federal Rule of Civil Procedure 23g to safeguard the substantive rights of the absent class members from the *Wallack* settlement, which Plaintiff argued was collusive and provided inadequate recovery for the broad release of claims over an extensive liability period. (ECF No. 24).

On September 17, 2021, Plaintiff filed an ex parte application to intervene in *Wallack* on the basis of indicia of collusion and numerous red flags of a reverse auction with respect to the proposed settlement. Grombacher Decl. at ¶ 26.

Meanwhile, on September 24, 2021, Plaintiff filed a motion to compel discovery and request for sanctions. (ECF No. 34). Defendant filed its opposition on October 8, 2021 and Plaintiff filed his reply on October 12, 2021. (ECF Nos. 36-37).

As noted above, on October 14, 2021, this Court denied AT&T's motion to dismiss. (ECF No. 38).

On October 15, 2021, Magistrate Judge Helena M. Barch-Kuchta issued findings and recommendations to grant Plaintiff's motion to appoint Bradley/Grombacher, LLP as interim Class Counsel (ECF No. 42), which the Court adopted over Defendant's objections (ECF No. 43) on October 27, 2021 (ECF No. 45).

On October 29, 2021, the *Wallack* court adopted its tentative ruling denying Mr. Razo's motion (with which Ms. Ayala and Mr. Shaw (the named Plaintiffs in the *Ayala* case) joined) on the basis that [a]s non-[settlement] class members, they cannot, by definition, have their ability to protect their own interests impaired or impeded by the disposition of the case." (ECF No. 49-1). The court however noted that "it can reasonably be argued that the parties designed the settlement to exclude Razo, Ayala, and Shaw from the settlement for the purpose of eliminating their ability to object—the more common vehicle for a class member to claim collusion." (*Id.*).

On October 29, 2021, the *Wallack* Court posted its tentative decision on *Wallack's* motion for preliminary approval in which it noted its intention to grant preliminary approval was predicated on modification of the settlement class definition to remove the excluded individuals, including Mr. Razo, to provide them an opportunity to object to the settlement if they choose to and to point out in better detail why they believe the settlement is collusive and not in the best interests of the class. (ECF No. 50-1).

Also on October 29, 2021, in this case, this Court permitted Defendant to file an amended response to Plaintiff's motion to compel discovery in light of the Court's orders denying Defendant's motion to dismiss and adopting the findings and recommendations to grant Plaintiff's

-7-

motion to appoint interim class counsel. (ECF No. 48). Defendant filed its amended response on November 4, 2021 (ECF No. 51) and Plaintiff filed his reply on November 11, 2021. (ECF No. 53).

On November 18, 2021, Plaintiff filed a motion to strike AT&T's Fifth Affirmative Defense of Settlement and Release to the extent it was based on the settlement in *Wallack*. (ECF No. 54). Defendant filed its opposition on December 7, 2021, and Plaintiff replied on December 14, 2021. (ECF Nos. 59-60).

On November 19, 2021, Plaintiff filed a renewed motion to intervene in *Wallack* on the basis that the *Wallack* court's preliminary approval order adding Mr. Razo as a class member gave him standing to intervene. On December 29, 2021, the *Wallack* court issued its tentative ruling denying Mr. Razo's renewed motion and noted that Mr. Razo may opt-out or object to the alleged *Wallack* settlement if he thinks it is not in the best interest of the class. (*See* ECF No. 63-8). The Court adopted its tentative on December 30, 2021. (ECF No. 63-8).

In this case, on December 17, 2021, the Court issued an Order granting Plaintiff's motion to compel discovery and request for sanctions against Defendant in the amount of $8,280 reflecting 10.5 hours of Plaintiff's Counsel's time devoted to bringing the motion.[1] (ECF No. 61).

On January 3, 2022, Defendant filed a request for reconsideration of the Court's order on Plaintiff's motion to compel. (ECF No. 63). Plaintiff filed a response to Defendant's request on January 10, 2022. (ECF No. 65).

### E. Settlement Negotiations and Preliminary Approval

Recognizing that the *Wallack* settlement was likely to receive final approval, the Parties turned their attention towards fully, finally, and forever settling the claims that would remain in this action post-*Wallack*. Grombacher Decl. at ¶ 38. Defendant provided Class Counsel with several policies and documents—as well as other pieces of data—relevant to Mr. Razo's claims. *Id*. The Parties then engaged in substantial, arms-length settlement negotiations from December

---

[1] Plaintiff's counsel has excised this amount from the fee request here. Grombacher Decl. at ¶¶ 40, 59.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

24, 2021 until January 31, 2022. During these negotiations, Defendant shared key data points for those non-exempt employees who have worked at AT&T since November 2, 2021. *Id.* After considerable negotiations, the Parties reached an agreement in principle to settle the case, the terms of which were negotiated over the following weeks and finalized in Agreement. *Id.*

The settlement in *Wallack* received final approval on March 18, 2022, and an Amended Order Nunc Pro Tunc Granting Final Approval of Class Action Settlement and Judgment was issued on April 19, 2022.

In May of 2022 the parties executed the Revised Class Action and PAGA Action Settlement Agreement ("Settlement Agreement") that was submitted to the Court with Plaintiff's Revised Motion for Preliminary Approval. (ECF No. 75). Under the Settlement Agreement, AT&T will pay $575,000.00 to settle the claims asserted in this action on behalf of all individuals who worked for AT&T in California during the time period of November 2, 2021 and September 21, 2022, and/or who opted out of the *Wallack* Settlement. Settlement Agreement at ¶ 1.

## III.   LEGAL BASIS FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

### A.   Plaintiff's request for attorneys' fees in the amount of one-third of the common fund is reasonable under controlling California law

In diversity actions, federal courts apply state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).[2]

As reinforced by the California Supreme Court, California law authorizes the percentage

---

[2] Class actions, such as this one, removed under the Class Action Fairness Act of 2005 (CAFA) are diversity actions. *See Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 684 (9th Cir. 2005) (CAFA "broadens diversity jurisdiction for certain qualifying class actions and authorizes their removal…"). As the Ninth Circuit observed, "even after CAFA's enactment, Erie-related doctrines ensure that, for the most part, removal of a CAFA case from state to federal court produces a change of courtrooms and procedure rather than a change of substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

method for awarding attorneys' fees in common fund cases. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016) ("*Laffitte II*") (joining other jurisdictions in holding that the trial court "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."). Although California has no benchmark—in fact, the California Supreme Court considered, but did not adopt, the Ninth Circuit's benchmark approach (*see Laffitte II*, 1 Cal. 5th at 495)—California courts routinely award attorneys' fees equal to one-third or more of the common fund's total potential value. *See, e.g., Laffitte I*, 231 Cal. App. 4th at 871 ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits"); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (accord); Eisenberg & Miller, Attorney Fees in Class Action Settlements: An Empirical Study, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide conclude that fees representing one-third of the total recovery is consistent with market rates).[3] Notably, the California Supreme Court in *Laffitte II* affirmed a fee award representing one-third of a non-reversionary fund. *See id.* at 506.

A fee award in the amount of one-third of the common fund is also reasonable because it best reflects the market rate for contingency fees. *See Lealao*, 82 Cal. App. 4th at 47 ("attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace"). This is because such a request reflects the rate negotiated in "typical contingency fee agreements [which] provide that class counsel will recover 33% if the case is resolved before trial and 40% if the case

---

[3] *See also e.g., Parker v. City of L.A.* 44 Cal. App. 3d 556, 567-68 (1974) (one-third of recovery); *Willey v. Techtronic Industries North America, Inc.,* No. RG 16806307 (Alameda Super. Ct. Aug. 4, 2017) (same); *Garrett v. Bank of Am., N.A.* No. RG13699027, 2016 WL 11431499 (Alameda Cnty. Super. Ct., Nov. 1, 2016) (same); *Longstreth v. PAQ, Inc.* (San Luis Obispo Cnty. Oct. 20, 2016) 15-cv-0206, 2016 WL 7163981, at *2 (same); *Lacy T. v. The Oakland Raiders* (Alameda Cnty. Super. Ct. March 3, 2015) No. RG147108 15, 2015 WL 13701077 (32% of common fund), *affirmed in* (Cal. Ct. App. Dec. 13, 2016) A144707, 2016 WL 7217584; *I Penalozav. PPG Indus. Inc.* (L.A. Cnty. Super. Ct. May 20, 2013) No. BC471369, 2013 WL 2917624 (one third); *Saberi v. BFS Retail & Commercial Operations, LLC* (Alameda Cnty. Super. Ct. Sept. 19, 2010) No. RG0806555, 2010 WL 5172447 (same). *See also, Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* 187 Cal. App. 4th 1405, 1421 (2010) (fees typically range from 33 to 40% of class benefit).

is tried." *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (citing an academic study collecting contingency fee agreements and finding that a fee award constituting 34% of the fund is reasonable on that basis). Because the negotiated fee structure mimics the marketplace, it is reasonable and should be approved.

**B.      Plaintiff's request for attorneys' fees in the amount of one-third of the common fund is reasonable under Ninth Circuit precedent**

Although this motion is governed by California law, Plaintiff's fee request is also reasonable under federal law. The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

The federal common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefitting. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These criteria are "easily met" where—as here—"each [class member] has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf.'" *Id*. (citing *Van Gemert*, 444 U.S. at 479).

District courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly billing) or the percentage method proposed here. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994). Where, as here, fees are requested from a certain and calculable common fund, the percentage-of-the-fund method is appropriate. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Courts recognize that the percentage method offers important advantages over the lodestar method, particularly when an ascertainable fund exists:

> [I]n class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage

-11-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Indeed, in *Bluetooth*, the court recognized that one important advantage of the common fund method is that fees are "easily quantified," making a fee determination simpler than the "often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("[A] percentage-of-the-fund approach is less demanding of judicial resources than the lodestar method.").

In non-diversity actions, the Ninth Circuit has established 25% of a common fund as a "benchmark" award for attorney fees. *Vizcaino,* 290 F.3d at 1047. However, the Ninth Circuit states that the benchmark is the "starting point for analysis" and notes that "it may be inappropriate in some cases." *Id.* at 1048. The "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id*. The district court's duty is to not presume benchmark percentage applies, but simply "whether in arriving at its percentage it considered all the circumstances of the case and reached a reasonable percentage." *Id*.

Thus, the "exact percentage [awarded] varies depending on the facts of the case, and **in most common fund cases, the award exceeds that benchmark**." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added). Indeed, fee awards of 33.33% of the Gross Settlement Amount, while higher than the 25% benchmark for the Ninth Circuit, are "not uncommon for wage-and-hour class actions in the Eastern District of California." *Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-00902 DAD SKO, 2020 WL 5095885, at *17 (E.D. Cal. Aug. 28, 2020); *see Watson v. Tennant Co.*, No. 2:18-CV-02462, 2020 WL 5502318, at *7 (E.D. Cal. Sept. 11, 2020) ("a review of California cases . . . reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fun[d] under $10 million."); *Garcia v. Gordon Trucking, Inc*. 2012 WL 5364575, at *10 (E.D. Cal. 2012)  (awarding one-third of the common fund where counsel "achieved a good result" and faced "uncertainty in California law as it related to Plaintiffs' meal break claims.");

-12-

1   *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450-51 (E.D. Cal. July 2, 2013)

2   (awarding one-third of the settlement fund in a wage and hour class action because there were

3   "sufficient reasons to exceed [the benchmark] considering the risk of the litigation, the contingent

4   nature of the work, the favorable reaction of the class, and the fee awards in other wage-and-hour

5   cases"); *Cooley v. Indian River Transp. Co.*, No. 1:18-CV-00491, 2019 WL 2077029, at *8 (E.D.

6   Cal. May 10, 2019) (fee award of 33% of the common fund in class action alleging missed meal

7   and rest breaks); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL

8   3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving fee award of 33% of the class recovery in

9   wage and hour class action involving allegations of unpaid wages and missed meal and rest

10  breaks); *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-cv-01321, 2015 WL 4730176, at *8 (E.D.

11  Cal. Aug. 10, 2015) (approving award of 33 percent.).

12          Similarly, other district courts within this circuit routinely award attorneys' fees of one-

13  third or more of the common fund, particularly for wage and hour class action settlements. *See,*

14  *e.g., Bennett v. SimplexGrinnell LP*, 2015 WL 12932332, *6-7 (N.D. Cal. Sept. 3, 2015) (order

15  approving attorneys' fees of 38.8% of settlement in prevailing wage case); *Lee v. JPMorgan*

16  *Chase & Co.*, 2015 WL 12711659, *7-9 (C.D. Cal. Apr. 28, 2015) (approving one-third of class

17  million settlement in misclassification case); *Wren v. RGIS Inventory Specialists* 2011 WL

18  1230826, at *29 (N.D. Cal. April 1, 2011), (42% of the common fund in another wage and hour

19  class action alleging "off the clock" claims); *Stuart v. Radioshack Corp.*, 2010 WL 3155645, at

20  *6 (N.D. Cal. 2010) (one-third award where lodestar was approximately the same as fee request,

21  and hours expended reflected "the length of the lawsuit and the vigorous disputes over the course

22  of the litigation..."); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, *8 (S.D. Cal. 2010)

23  (awarding 331/3% and citing awards ranging from 30.3% to 40%); *Van Vranken v. Atlantic*

24  *Richfield Co.*, 901 F. Supp. 294, 297-298 (N.D. Cal. 1995) (citing "73 district court opinions in

25  which fees in the range of 30-50 percent of the common fund were awarded."); *Campbell v. Best*

26  *Buy Stores, L.P.*, 2016 WL 6662719, at *10 (C.D. Cal. Apr. 5, 2016) (awarding one-third of

27  $674,500 in attorneys' fees in a California Labor Code action and observing that "[v]iewed

28  collectively, the information relevant to the lodestar analysis provides a substantial basis for the

approval of the proposed attorney's fees [and when] considered in connection with . . . [the] analyses as to the percentage of the fund approach, final approval of the fee request is warranted"); *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one-third in fees in a wage and hour class action); *Singer v. Becton Dickinson & Co*., 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (noting that the amount of one-third of the common fund for a wage and hour class action settlement "falls within the typical range" of fee awards).[4]

Here, under the terms of the Settlement Plaintiff is seeking attorneys' fees at the one-third of the $575,000.00 common fund, which is $191,666.67. As discussed below, an award of 33.3% of the common fund is reasonable and warranted in light of the contingency risk and difficulty of the representation here, as well as the results achieved under the circumstances. Furthermore, the "Lodestar-Multiplier" cross-check supports the reasonableness of Plaintiff's fee request.

## IV.    THE FEE OF 33.3% OF THE TOTAL SETTLEMENT AMOUNT IS FAIR AND REASONABLE UNDER THE COMMON FUND DOCTRINE

### A.    The substantial benefit provided to the Class justifies the fee award requested

Courts have recognized consistently that the result achieved is a major factor to be considered with a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983); *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994). Here, the final settlement figure of $575,000.00 represents an excellent result for the Class. Even after the attorneys' fees and costs that Plaintiff seeks here, the highest service award permitted under the Settlement Agreement, the PAGA allocation, and the costs of settlement administration, an estimated Net Settlement Amount of approximately $331,539.23 would be distributed to the approximately 5,064 members of the Settlement Class. This works out to an average share of approximately $65.90 per person. Bridley Decl. at ¶ 14. The approximate $65.90 per-person recovery is particularly strong in light of the narrow release

---

[4] Awards of one-third are likewise routinely upheld by the Ninth Circuit. *See, e.g., In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund); *In re Pac. Enterprises Sec. Litig.,* 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming one-third of a $12 million common fund).

and short liability period of just over 10 months. [5] Indeed, the settlement provides for compensation to the absent class members in an amount equal to full value for the *Ferra* claims, the primary claims alleged in this case, and provides significant recovery for the remaining alleged violations.

The recovery also compares very favorably with other settlements of analogous wage and hour class actions. For instance, the *Wallack* case settled for $4,040,000 for over 12,600 class members and a liability period of more than 6 years (from August 1, 2015 through November 1, 2021) amounting in an average individual recovery of approximately $192.60. Grombacher Decl. at ¶ 72. The projected average per-person recovery of approximately $65.90 for a narrow release and short liability period in the instant Settlement compares very favorably with the average per-person recovery of $192.60 per person in *Wallack*, which includes a much broader release and longer liability period than those here.

Furthermore, the comparatively excellent recovery here is in large part attributable to Plaintiff's Counsel's skilled advocacy and determination to litigate in pursuit of a better recovery for the Class. Indeed, unlike in *Wallack*, Plaintiffs' Counsel did not agree to resolve the claims for a substantially lower amount before formal discovery, despite the risks of litigating *Ferra* claims during the shifting legal landscape. Considered against the risks of continued litigation, and the importance of the employment rights at issue and a speedy recovery, the relief provided under the Settlement represents an excellent result for the Class, and therefore justifies an upward adjustment of the benchmark.

**B.    The risks undertaken by counsel justify the fees requested**

Plaintiff's Counsel have been the only counsel to represent class members in this matter and have borne the entire risk and costs of litigation for more than three years purely on a contingency basis. Grombacher Decl. at ¶ 62. Indeed, as this Court has already acknowledged, Plaintiff's Counsel's outlay of time and money in this case has been significant:

Bradley/Grombacher, LLP has done significant work identifying and

---

[5] Many of the members of the putative class have already recovered additional sums under the *Wallack* settlement covering the period of August 1, 2015 through November 1, 2021.

investigation the claims at issue in this case as the matter. This case was initiated in state court over two years ago, and Bradley/Grombacher, LLP has since investigated the claims, framed the complaint and three times amended it, successfully opposed a motion to dismiss or stay, and actively engaged in discovery ahead of moving for class certification.

Findings and Recommendations to Grant Plaintiff's Motion to Appoint Interim Class Counsel (ECF No. 42 at p. 12); *Razo v. AT&T Mobility Servs., LLC*, 2021 WL 4847834, at \*6 (E.D. Cal. Oct. 15, 2021), report and recommendation adopted, 2021 WL 4988866 (E.D. Cal. Oct. 27, 2021).

The risks associated with the contingent nature of this action justify the requested fees. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). By undertaking a class action on a contingency fee basis, counsel not only must turn away other income-generating opportunities but must take on a substantial risk of "never receiving compensation at all." *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1217-18 (2008).

Counsel take their cases on a contingent fee basis and rely on attorneys' fee awards to continue their work for the enforcement of labor standards. Grombacher Decl. at ¶ 63. Indeed, Counsel did not charge the Plaintiff or the Class Members any fees or costs to litigate and bring this case to a successful conclusion. *Id*. As of November 29, 2022, Counsel has invested more than 540 attorney hours in this case and have not yet received any payment for them. *Id*. at ¶¶ 40, 59. In addition, Counsel has to date incurred \$4,747.10 out-of-pocket costs, which have not yet recouped. *Id*. at ¶¶ 40, 76. During the course of this case, Counsel also had to forego requests by other prospective clients to bring other cases with merit to ensure that they could continue to adequately and successfully represent the Plaintiff and the class in this matter. *Id*. at ¶ 62. Consequently, there were other meritorious cases presented to Plaintiff's Counsel that would have generated substantial fees, but were declined, during the pendency of this action in order to devote the attention necessary to achieve the highly favorable results in the Settlement. *Id*.

Like other important and complex employment class actions, this case carried a risk of no recovery at all for either the class or the attorneys representing them. For example, Plaintiff faced risk that he may not prevail on a contested motion for class certification, particularly in light

of the denial of certification in a case alleging similar claims, *Ayala et al. v. AT&T Mobility Services, LLC*, Case No. 2:18-cv-08809 (C.D. Cal.). If Plaintiff's wage claims were not certified, all or many of those eligible to recover under this settlement would have lost significant compensation and may have been left with nothing at all. Grombacher Decl. at ¶ 65. Plaintiff also faced considerable risk that he would not prevail on the merits of the *Ferra* claim during a substantial portion of the time this case was pending. Indeed, until July 15, 2021, the law was contrary to Plaintiff's position that meal and rest period premiums must be paid at the employee's regular rate of compensation. *See Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal. App. 5th 1239 (Oct. 9, 2019), *rev'd,* 11 Cal. 5th 858 (July 15, 2021). Further, even after the Supreme Court affirmed in *Ferra* that employers must pay meal and rest period at the employee's regular rate of pay, there still would be uncertainty in terms of the damages that would be proved and collected. Grombacher Decl. at ¶ 66.

Finally, even if Plaintiff prevailed at trial and collected damages, Plaintiff's Counsel faced the risk that they would not be entitled to attorneys' fees for their work on this case prior to the recent decision of the California Supreme Court in *Naranjo v. Spectrum Sec. Servs., Inc*., 13 Cal. 5th 93 (2022) that extra pay for missed breaks constitutes wages and the even more recent decision of the California Court of Appeal in *Betancourt v. OS Rest. Servs., LLC*, 83 Cal. App. 5th 132 (2022) affirming the availability of attorneys' fees for meal and rest break claims.

Despite these layers of contingent risk, Plaintiff's Counsel committed their time and resources into vigorously representing the Class over the course of several years, holding out until they could achieve an excellent result, even though a lesser settlement would still have been reasonable under the circumstances. *See Garcia v. Gordon Trucking, Inc*. 2012 WL 5364575, at *10 (E.D. Cal. 2012) (awarding one-third of the common fund where counsel "achieved a good result" and faced "uncertainty in California law as it related to Plaintiffs' meal break claims.")

Furthermore, one or more appeals would be likely given the nature of this case and quantity of disputed issues. Grombacher Decl. at ¶ 68. Assuming Plaintiff prevailed on certification and liability, Defendant might appeal any number of determinations regarding certification, liability, evidentiary rulings, damages, and penalties, causing potentially years of

-17-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1    further delay. *Id*.

2         As is the nature of contingency work, Plaintiff's Counsel sometimes recover very little

3    or nothing at all for their work, even for cases that may be meritorious, due to a variety of factors

4    that may or may not have anything to do with the merits. Grombacher Decl. at ¶ 63.   When

5    Counsel do succeed in vindicating statutory and employment rights on behalf a class of

6    employees, such as in this case, they depend upon reasonable percentage-of-the-fund fee awards

7    to enable them to take on similar risks in future cases. *Id*. Otherwise, they could not continue to

8    represent employees who are denied wages, but whose cases may be time-consuming and difficult

9    to prove. *Id*.

10        The instant case is one in which Plaintiff's Counsel's skill, efforts, and patient

11   representation of the Class over a more three-year period secured substantial benefits for the Class

12   Members.  From the first meetings with the named Plaintiff in 2019, through the filing of the case

13   and early discovery in 2019-2020, through the substantial motion practice in 2021, through the

14   complex settlement process in 2022, Plaintiff's Counsel worked hard to ensure that the relief

15   being sought by the case would be realized.  *Id*. at ¶ 74.  They did so on a wholly contingent basis,

16   effectively loaning their services to the Class Members during this time and taking on the risk of

17   recovering nothing or close to nothing in light of the difficulties and uncertainties of class

18   litigation. *Id*. at ¶ 75. Given all these considerations, a fee award amounting to one-third of the

19   common fund settlement is fair and reasonable.

20   **C.    The difficulty of the questions involved, the vigorous opposition by Defendant, and the skill required justify the fee requested**

21        Counsel who skillfully overcome difficult issues or uncompromising opposition in the

22   litigation are entitled to a fee enhancement. *Serrano v. Priest,* 20 Cal. 3d 25, 49 (1977)*; Edgerton*

23   *v. State Pers. Bd.,* 83 Cal. App. 4th 1350, 1363 (2000); *Salgado v. T-Mobile USA, Inc*., No. 1:17-

24   CV-0339-JLT, 2020 WL 3127931, at *18 (E.D. Cal. June 12, 2020) ("The complexity of issues

25   and skills required may weigh in favor of a departure from the benchmark fee award.")

26        Here, as noted above, during the course of this action the law underlying Plaintiff's

27   claims was continually evolving, and for the majority of the time was counter to Plaintiff's

28   position in this case. Additionally, in challenging the *Wallack* settlement, Plaintiff presented and

-18-

briefed a number of novel issues such as whether the appointment of interim class counsel is appropriate to protect the class in instances where competing or overlapping cases are not consolidated before a single court and whether Defendant's attempt to compromise the *Ferra* claims for less than full value in the *Wallack* action ran afoul of Labor Code Section 206.5. (*See* ECF Nos. 24, 33, 54, 60).

In addition, the demands presented by the complexities of this case and AT&T's staunch defense required Counsel to invest substantial time into this case that it could not invest in other pending matters and in developing and bringing other potential cases. Grombacher Decl. at ¶ 62. Before eventually agreeing to the Settlement, Defendant's vigorous defense, included stiff resistance to class discovery. Counsel brought their skills to bear on the discovery process, including by negotiating with highly sophisticated Defense Counsel and bringing a discovery dispute to the Court in order to obtain crucial information supporting the claims. Although the magistrate "expressly advised the parties during the September 20, 2021 informal discovery conference that the Court's preliminary review of the requested discovery indicated it was relevant and discoverable," Defendant nonetheless forced Plaintiff to bring a motion to compel. (*See* ECF 61 at pp. 29-30). Plaintiff's motion to compel was granted by this Court. (*Id*.)

Furthermore, in the midst of the discovery dispute, Defendant disclosed for the first time the existence of a fast-tracked settlement and subsequent filing of the *Wallack* state court action designed with an extensive liability period for the purpose of settling out the class claims being prosecuted in this case. (*See*, ECF No. 24). Thus, in addition to briefing the discovery dispute, Plaintiff's Counsel was forced to file a motion to appoint Bradley/Grombacher, LLP as interim Class Counsel under Federal Rule of Civil Procedure 23(g) to safeguard the important substantive rights of the absent class members. (ECF No. 24). Plaintiff also moved to intervene in *Wallack* (twice), which the Superior Court denied on the basis that Mr. Razo's opt out and/or right to object were sufficient to protect his interests and those of the class. (*See*, ECF no. 63-8 at p. 1). Plaintiff's Counsel also brought a motion to strike AT&T's Fifth Affirmative Defense of Settlement and Release in this case to the extent it was based on the settlement in *Wallack*. (ECF No. 54).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Any of these obstacles may well have prevented recovery completely if not for Plaintiff's Counsel's thoroughness and skill in prosecuting the claims.

**D.    The requested fees are well within the range of attorneys' fees awarded in similar wage and hour class action settlements**

As discussed in Section III.B. above, fee awards of 33.33% of the Gross Settlement Amount, while higher than the 25% benchmark for the Ninth Circuit, are "not uncommon for wage-and-hour class actions in the Eastern District of California." *Maciel,* 2020 WL 5095885, at *17; *Watson*, 2020 WL 5502318, at *7 ("a review of California cases . . . reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fun[d] under $10 million."); *Garcia,* 2012 WL 5364575, at *10 (awarding one-third of the common fund where counsel "achieved a good result" and faced "uncertainty in California law as it related to Plaintiffs' meal break claims.");  *Barbosa,* 297 F.R.D. at 450-51 (awarding one-third of the settlement fund in a wage and hour class action because there were "sufficient reasons to exceed [the benchmark] considering the risk of the litigation, the contingent nature of the work, the favorable reaction of the class, and the fee awards in other wage-and-hour cases"); *Cooley*, 2019 WL 2077029, at *8 (fee award of 33% of the common fund in class action alleging missed meal and rest breaks); *Romero*, 2007 WL 3492841, at *4 (approving fee award of 33% of the class recovery in wage and hour class action involving allegations of unpaid wages and missed meal and rest breaks); *Miller,* 2015 WL 4730176, at *8 (approving award of 33 percent.). Here, Plaintiff is seeking a fee award one-third of the common fund. That the requested fees are well within the range of attorneys' fee awarded in similar wage and hour class action settlements supports the reasonableness here.

**E.    The "Lodestar-Multiplier" cross-check confirms the reasonableness of the fee award**

        1.    <u>Counsel's lodestar comes directly from the contemporaneous billing records</u>

Counsel's practice is to record their time in tenth-of-an-hour increments, and to do so as contemporaneously as possible with the expenditure of the time. Grombacher Decl. at ¶ 58. The declaration of counsel affirming the time and tasks reflected in the billing records, as well as describing their billing procedures, provides ample support for Counsel's lodestar. *See e.g. In re*

-20-

1    *Animation Workers Antitrust Litig.*, 2016 WL 6663005, at *5 (N.D. Cal. Nov. 11, 2016).

2          2.    <u>Counsel's time spent on this case was necessary and reasonable in</u>
              <u>light of the difficulty of the case, including AT&T's uncompromising</u>
3              <u>defense</u>

4          The lodestar method requires the Court to determine a "touchstone" or lodestar figure based

5    on a compilation of time spent and reasonable hourly compensation for each attorney.  *See, e.g.,*

6    *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941-42. Generally, hours are reasonable

7    if they were "reasonably expended in pursuit of the ultimate result achieved in the same manner

8    that an attorney traditionally is compensated by a fee-paying client." *Hensley v. Eckerhart*, 461

9    U.S. 424, 431 (1983).

10         Counsel undertook significant work to prosecute this case. This included investigations;

11   drafting of pleadings; legal research on complex issues; lengthy written discovery; numerous

12   lengthy meet and confers towards resolving discovery disputes; substantial motion practice for

13   the benefit of the class both in this case and in the California Superior Court; and lengthy

14   settlement negotiations. *See generally* Grombacher Decl. Indeed, as described above, motion

15   practice included successfully opposing Defendant's motion to dismiss, successfully moving to

16   compel discovery (which involved supplemental briefing), and successfully moving to be

17   appointed interim class counsel. *See generally* Grombacher Decl. at ¶¶ 7-38

18         Thus, Counsel has invested over 540.5 hours of work into this case, for a lodestar of

19   approximately $205,527.50 A breakdown of the hours worked and corresponding lodestar on a

20   timekeeper-by-timekeeper basis is present in the Grombacher declaration and Counsel's billing

21   records are attached as **Exhibit A** thereto. As the declaration makes clear, the time reported was

22   devoted to necessary and worthwhile tasks and was calculated at billing rates adjusted to reflect

23   the prevailing market rate for the Eastern District of California, Fresno Division. *See* Grombacher

24   Decl. at ¶¶ 53-59. Additionally, tasks were delegated to associate attorneys or legal assistants

25   when reasonable. *Id.* Plaintiff's counsel also exercised billing judgment to winnow down the

26   hours by removing all entries for paralegals and legal secretaries and for individuals who billed

27   less than 10 hours of work on the case. Grombacher Decl. at ¶ 59.

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND
COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

3.  Counsel's hourly rates are within the market range and have been approved by the courts

The general principle for determining the reasonableness of hourly rates is that they "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). This rule applies even when, as here, the attorneys representing the plaintiffs performed the work on a contingent fee basis. *See, e.g., Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989). Plaintiff's Counsel sets their rates on an annual basis through a process of continual monitoring of prevailing market rates charged by both defense and plaintiffs' law firms, for individuals with similar levels of skill and experience who are doing comparable work as our attorneys and staff. *See* Grombacher Decl. at ¶ 54.

Numerous federal and state courts in California have approved the rates charged by Bradley/Grombacher LLP. *See, e.g.*, *Jose Lugo v. Michael Nicholas Designs, Inc.* (Orange Cnty. Super. Ct. June 2, 2022) Case No. 30-2020-01150039-CU-OE-CXC (approving rates of $950 for partner Bradley, $850 for partner Grombacher, and $775 for associates King and Joyner); *Jorge Arroyo v. Rocker Solenoid Company*, (Los Angeles Cnty. Super. Ct., October 31, 2022) Case No. 21STCV14411(same); *Garcia v. XPO Logistics Freight, Inc.,* (San Bernardino Cnty. Super. Ct. April 19, 2021) Case No.: CIVDS2015538 (approving 2020 rates); *Smith v. Hoag Memorial Hospital* (Orange Cnty. Super. Ct. Mar. 6, 2020) Case No. 30-2017-00952013 (approving 2019 rates); *Haro v. Laboratory Corp. of America*, (C.D. Cal. Nov. 18, 2020) Case No. 2:18-cv-09091-AB-RAO (approving 2019 rates); *Maldonado v. Dayton Superior Corp.* (Riverside Cnty. Super Ct. September 10, 2019) Case No. RIC1615240 (approving 2018 rates).

Indeed, this Court has accepted Bradley/Grombacher LLP's hourly rates of $850 for Partner Grombacher and $775 for Associate Joyner in awarding Plaintiff attorneys' fees on his motion to compel discovery. (ECF Nos. 34-1 (Grombacher Declaration), 35 (Joyner Declaration), 61 (Order) at p. 28, 31).[6] This Court also recently found a billable rate of $695.00 reasonable for

---

[6] As noted above and in the declaration of Kiley, L. Grombacher, Plaintiff's Counsel has reduced the number of hours work and fees incurred by 10.5 hours and $8,280 for the purposes of the lodestar crosscheck here.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

attorney admitted in 1997. *See, Harp v. California Cemetery & Funeral Servs., LLC*, No. 121CV01118JLTBAK, 2022 WL 1658716, at *5 (E.D. Cal. May 25, 2022).

Nevertheless, Plaintiff's Counsel recognizes that in the context of a request for attorneys' fees and costs from a common fund settlement, the Eastern District of California, Fresno Division has generally utilized rates that are lower. *See e.g. Salgado v. T-Mobile USA, Inc*., No. 1:17-CV-0339-JLT, 2020 WL 3127931, at *20 (E.D. Cal. June 12, 2020) (noting in 2020 that a survey previously conducted by this Court "determined 'courts in the Eastern District of California Fresno Division have approved hourly rates ranging from $200.00 to $550.00 per hour.'"). Accordingly, for the purposes of this motion, Plaintiff Counsel's hourly rates have been adjusted downward to reflect those previously approved by this Court. Grombacher Decl. at ¶ 57. The adjusted rates are reasonable and within the market range for attorneys of comparable experience and skill in the Eastern District of California, Fresno Division and under the circumstances of the settlement achieved here. *Id*. at ¶¶ 57, 59.

4.     The proposed fees requested will result in a "negative multiplier"

As of November 29, 2022, the lodestar for Plaintiff's Counsel *at their reduced rates* is $205,527.50 after removing all billing entries by for staff and individuals who recorded fewer than 10 hours on the case. Grombacher Decl. at ¶¶ 40, 57. A fee award of $205,527.50 would result in a "negative multiplier." *Id*. at ¶ 41. Indeed, the fees requested equate to 93% of the lodestar *after exercising billing judgment to substantially winnow down the hours* and Counsel estimates that this percentage will decrease even more by the end of the case. *Id.*

## V.     PLAINTIFF'S REQUESTED COST REIMBURSEMENTS ARE REASONABLE

Plaintiff's Counsel are entitled to recover the out-of-pocket costs and litigation expenses they reasonably incurred in investigating, prosecuting, and resolving the case. *Staton v. Boeing Co*., 327 F.3d 938, 974 (9th Cir. 2003); *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D. Cal. 1996); *see also* 29 U.S.C. § 216(b); Fed. R. Civ. P. 54(d)(1) ("Costs Other Than Attorney's Fees"); Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and *related nontaxable expenses*….") (emphasis added)). Even though not normally taxable as costs, out-of-pocket expenses incurred by an attorney that would normally be charged to a fee-paying client

-23-

are recoverable as attorneys' fees. *Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), amended by 808 F.2d 1373 (9th Cir. 1987). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp.*, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Here, as set forth in the accompanying Grombacher Declaration, Plaintiff's reimbursable out-of-pocket expenses include the following: (1) filing fees, court fees, and service of process; (2) overnight and bulk mail; (3) appearance fees in the *Wallack* action and (4) copies and postage. Grombacher Decl. at ¶ 77.  In order to increase the class recovery here, Plaintiff's Counsel are not seeking recovery for a number of significant additional costs they incurred in prosecuting this case, such as Westlaw legal research fees, fees associated with appealing the denial on the motion to intervene in *Wallack* and other similar costs incurred. *Id.* at ¶ 80.

The total reimbursable costs incurred in this case and for which Plaintiff's Counsel is seeking to recover amount to $4,747.10. *Id.* at ¶¶ 76-80, Exh. B (item-by-item listing of costs). In any event, the expenses set forth above were reasonable, were necessary to the prosecution of the case, and are customarily billed to fee-paying clients.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's motion for attorneys' fees and costs.

Respectfully Submitted,

DATED: November 30, 2022          **BRADLEY/GROMBACHER, LLP**
                                  **LAW OFFICES OF SAHAG MAJARIAN II**

By: */s/ Kiley L. Grombacher*
Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.
Lirit A. King, Esq.
Sahag Majarian, Esq.

*Attorneys for Plaintiff and the proposed Class*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT